**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DAVID WOULARD, ATTACK THE SOUND LLC, an Illinois limited liability company, STAN BURJEK, JAMES BURJEK, BERK ERGOZ, HAMZA JILANI, MAATKARA WILSON, ARJUN SINGH, MAGNUS FIENNES, and MICHAEL MELL, each individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SUNO, INC. and UNKNOWN DEFENDANTS, <br><br> Defendants. | Case No. 25-cv-12684 <br><br> District Judge Andrea R. Wood <br><br> Magistrate Judge Heather K. McShain |

**DEFENDANT SUNO, INC.'S MOTION**
**TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**
**OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ................................................................................................1

II.    BACKGROUND AND FACTS ALLEGED ......................................................3

III.   LEGAL STANDARD .......................................................................................6

IV.    ARGUMENT .....................................................................................................6

      A.     This Case Should Be Dismissed For Lack of Personal Jurisdiction ......................6

            1.     Suno Is Not Subject to General Jurisdiction in Illinois .............................7

            2.     Suno Is Not Subject to Specific Personal Jurisdiction in Illinois ...............7

      B.     This Case Should Be Dismissed for Improper Venue ...........................................12

      C.     Alternatively, This Case Should Be Dismissed (or Stayed) Pursuant to the First-to-File Doctrine ....................................................................................13

      D.     Alternatively, This Case Should Be Transferred to the District of Massachusetts .........................................................................................17

            1.     The District of Massachusetts Is the Proper Forum ...................................17

            2.     The Private Interest Factors Collectively Favor Transfer to the District of Massachusetts ..................................................................18

            3.     The Public Interest Factors All Favor Transfer to the District of Massachusetts ..............................................................................24

V.     CONCLUSION ...............................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
  751 F.3d 796 (7th Cir. 2014) ............................................................9, 10

*Art Akiane LLC v. Mardel, Inc.*,
  2021 WL 3269837 (N.D. Ill. July 30, 2021).............................................9

*Askin v. Quaker Oats Co.*,
  2012 WL 517491 (N.D. Ill. Feb. 15, 2012) ...............................14, 15, 16

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
  571 U.S. 49 (2013).........................................................................12

*B.D. v. Samsung SDI Co., Ltd.*,
  143 F.4th 757 (7th Cir. 2025) ............................................................7

*Bartz v. Anthropic PBC*,
  787 F. Supp. 3d 1007 (N.D. Cal. 2025) .............................................5

*be2 LLC v. Ivanov*,
  642 F.3d 555 (7th Cir. 2011) .........................................................8, 9

*Bouas v. Harley-Davidson Motor Co. Grp., LLC*,
  2020 WL 2334336 (S.D. Ill. May 11, 2020)......................................16

*Brownell v. Alcon Ent., LLC*,
  2017 WL 11884028 (N.D. Ill. Dec. 19, 2017).....................17, 19, 23, 25

*Bureau of Consumer Fin. Prot. v. Fifth Third Bank, N.A.*,
  2021 WL 534658 (N.D. Ill. Feb. 12, 2021) .......................18, 19, 21, 25

*Carter v. Pallante*,
  256 F. Supp. 3d 791 (N.D. Ill. 2017) ................................................10

*Concord Music Group, Inc. v. Anthropic PBC*,
  738 F. Supp. 3d 973 (M.D. Tenn. 2024).....................................9, 10, 12

*Cruz-Acevedo v. Unilever U.S., Inc.*,
  2016 WL 9460633 (D.P.R. Sept. 26, 2016).........................................16

*Curry v. Revolution Lab'ys, LLC*,
  949 F.3d 385 (7th Cir. 2020) ............................................................6

*ePlus, Inc. v. Lawson Software, Inc.*,
   789 F.3d 1349 (Fed. Cir. 2015).................................................................................10

*George & Co. LLC v. Target Corp.*,
   2021 WL 2948910 (N.D. Ill. July 14, 2021)......................................................... *passim*

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)...................................................................................................7

*Healthcare Dev. Partners LLC v. Signet Health Corp.*,
   2025 WL 904361 (N.D. Ill. Mar. 25, 2025)............................................................11

*Ill. Comput. Rsch., LLC v. Harpercollins Publishers, Inc.*,
   2010 WL 4877501 (N.D. Ill. Nov. 22, 2010) ...........................................18, 19, 21

*Illinois v. Hemi Grp. LLC*,
   622 F.3d 754 (7th Cir. 2010) ....................................................................................8

*In re Extended Stay Hotel Antitrust Litig.*,
   2024 WL 5089159 (N.D. Ill. Dec. 12, 2024)............................................17, 22, 24

*In re Sheehan*,
   48 F.4th 513 (7th Cir. 2022) ...................................................................................11

*Jaramillo v. DineEquity, Inc.*,
   664 F. Supp. 2d 908 (N.D. Ill. 2009) .......................................................14, 23, 25

*Justice v. Suno, Inc.*,
   No. 25-cv-11739 (D. Mass. June 14, 2025)............................................................2, 4

*Kadrey v. Meta Platforms, Inc.*,
   788 F. Supp. 3d 1026 (N.D. Cal. 2025) ...................................................................5

*Matlin v. Spin Master Corp.*,
   921 F.3d 701 (7th Cir. 2019) ................................................................................7, 8

*McReynolds v. Merrill Lynch & Co., Inc.*,
   694 F.3d 873 (7th Cir. 2012) ..............................................................................13, 14

*Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co., Inc.*,
   8 F.3d 441 (7th Cir. 1993) ......................................................................................12

*Mohammed v. Uber Techs., Inc.*,
   237 F. Supp. 3d 719 (N.D. Ill. 2017) ......................................................................11

*Muhammad v. State Farm Indem. Co.*,
   719 F. Supp. 3d 397 (D.N.J. 2024) .........................................................................14

*N. Grain Mktg., LLC v. Greving*,
    743 F.3d 487 (7th Cir. 2014) ........................................................................6

*NBA Props., Inc. v. HANWJH*,
    46 F.4th 614 (7th Cir. 2022) ........................................................................8

*Nicholson v. Nationstar Mortg. LLC of Delaware*,
    2018 WL 3344408 (N.D. Ill. July 6, 2018)..............................................14, 15, 16

*North v. Ubiquity, Inc.*,
    72 F.4th 221 (7th Cir. 2023) ......................................................................11

*POET Rsch, Inc. v. Hydrite Chem. Co.*,
    2025 WL 2696411 (N.D. Ill. Sept. 22, 2025) ...............................................13

*Ridge Gold Standard Liquors v. Joseph E. Seagram & Sons, Inc.*,
    572 F. Supp. 1210 (N.D. Ill. 1983) .............................................................14

*Rosen v. Spirit Airlines, Inc.*,
    152 F. Supp. 3d 1055 (N.D. Ill. 2015) .........................................................24

*Rotec Indus. Inc. v. Aecon Grp., Inc.*,
    436 F. Supp. 2d 931 (N.D. Ill. 2006) ............................................................6

*Rsch. Automation, Inc. v Schrader-Bridgeport Int'l, Inc.*,
    626 F.3d 973 (7th Cir. 2010) ................................................................13, 24

*Sassy, Inc. v. Berry*,
    406 F. Supp. 2d 874 (N.D. Ill. 2005) ..........................................................17

*Serlin v. Arthur Andersen & Co.*,
    3 F.3d 221 (7th Cir. 1993) ...................................................................13, 14

*Shenzhen AJI Fashion Tech. Co. Ltd. v. WhaleCo Inc.*,
    2024 WL 2845974 (N.D. Ill. June 5, 2024) ...............................................18, 20

*Simonian v. Hunter Fan Co.*,
    2010 WL 3975564 (N.D. Ill. Oct. 7, 2010)..................................................23

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) ...................................................................6, 7

*Telemedicine Sols. LLC v. WoundRight Techs., LLC*,
    27 F. Supp. 3d 883 (N.D. Ill. 2014) .............................................................9

*Thompson v. Glob. Mktg. Rsch. Servs., Inc.*,
    2016 WL 233702 (E.D. Pa. Jan. 20, 2016) ...................................................16

*Time Warner Cable, Inc. v. USA Video Tech. Corp.*,
520 F. Supp. 2d 579 (D. Del. 2007) ..........................................................................14

*Trippe Mfg. Co. v. Am. Power Conversion Corp.*,
46 F.3d 624 (7th Cir. 1995) ......................................................................................14

*uBID, Inc. v. GoDaddy Group*,
623 F.3d 421 (7th Cir. 2010) ......................................................................................9

*UMG Recordings, Inc. v. Archive*,
2023 WL 8520587 (S.D.N.Y. Dec. 8, 2023) ............................................................20

*UMG Recordings, Inc. v. Suno, Inc.*,
No. 24-cv-11611 (D. Mass. June 24, 2024) ...............................................................3

*Walden v. Fiore*,
571 U.S. 277 (2014) ...............................................................................................7, 11

*Willis v. Caterpillar Inc.*,
199 F.3d 902 (7th Cir. 1999) ....................................................................................17

*Wright v. Walden Univ., LLC*,
2017 WL 1435717 (D. Minn. Apr. 21, 2017) ...............................................14, 15, 16

## STATUTES

735 ILCS 5/2-209(c) ........................................................................................................6

17 U.S.C. § 106(2) ...........................................................................................................5

28 U.S.C. § 1391(b) ....................................................................................................2, 12

28 U.S.C. § 1391(b)(2) ..............................................................................................13, 17

28 U.S.C. § 1400(a) ..............................................................................................2, 12, 17

28 U.S.C. § 1404(a) .................................................................................................. *passim*

28 U.S.C. § 1406(a) ........................................................................................................13

28 U.S.C. § 1631 .......................................................................................................11, 12

## RULES

Fed. R. Civ. P. 11 .............................................................................................................8

Fed. R. Civ. P. 12(b)(2) .........................................................................................1, 2, 6, 11

Fed. R. Civ. P. 12(b)(3) ...........................................................................................1, 2, 6

## OTHER AUTHORITIES

*U.S. District Court — Judicial Caseload Profile* (June 30, 2025),
https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile
0630.2025.pdf; ................................................................................................................24

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and (b)(3), Defendant Suno, Inc. moves to dismiss for lack of personal jurisdiction and improper venue; alternatively, Suno seeks dismissal or a stay pursuant to the first-to-file rule, or transfer to the District of Massachusetts under 28 U.S.C. § 1404(a).

## I.     INTRODUCTION

This case does not belong in the Northern District of Illinois. Plaintiffs filed a putative nationwide class action against a Massachusetts-based company with no meaningful ties to Illinois or this District. This lawsuit effectively replicates two other lawsuits already pending in the District of Massachusetts—one of which is an earlier-filed class action with claims and a proposed class that substantially overlap with those asserted here. The Complaint concedes that Suno's principal place of business is in Massachusetts and alleges no facts specifically connecting Suno or its conduct to Illinois, let alone to this District. Plaintiffs' claims center on Suno's acquisition, maintenance, and use of audio and lyric files to train its artificial intelligence ("AI") tool—and the process by which that tool generates original music, Dkt. 1 ¶¶ 70–123—but the Complaint does not allege that Suno undertook any of that conduct in Illinois. Plaintiffs' ancillary claims based on far-fetched theories of liability do not excuse their forum-shopping. There is no legal basis to permit this case to proceed here. The Court should dismiss this case, stay it pending resolution of the Massachusetts class action, or, alternatively, transfer it to the District of Massachusetts.

The absence of any nexus between Illinois and Plaintiffs' allegations is dispositive under Rule 12(b)(2). Plaintiffs' claims target Suno's alleged acquisition and maintenance of its training corpus in Massachusetts, the development and training of Suno's AI models in Massachusetts, and the operation of Suno's platform from Massachusetts. The Complaint describes a uniform, nationally available service accessible to users everywhere, with no allegations that Suno

specifically targets Illinois users. There is no allegation of Illinois-specific marketing and no claim of any Illinois-specific contractual terms or product features. And there is no allegation that any specific allegedly infringing "outputs" of the model were made or received in Illinois. The personal jurisdiction inquiry is defendant-focused and requires well-pleaded claims of suit-related, forum-directed activity by Suno. Plaintiffs' conclusory allegations of harm "felt in this District" based on the residence of certain class members are therefore insufficient to establish personal jurisdiction over Suno. Dismissal is required under Rule 12(b)(2).

Venue in this District is equally improper. In a copyright action, venue is proper where the defendant resides or "may be found," which for a corporation means a district in which it is subject to personal jurisdiction. *See* 28 U.S.C. § 1400(a). Plaintiffs cannot meet that standard here. Nor can they satisfy the alternative, general venue provision, *id.* § 1391(b), which looks to where a substantial part of the operative events occurred; the Complaint pleads none in this District. The necessary consequence is dismissal for improper venue under Rule 12(b)(3).

Even if personal jurisdiction and venue were proper, this later-filed case should be dismissed or stayed under the first-to-file doctrine given the ongoing, substantially similar putative class action in *Justice v. Suno, Inc.*, No. 25-cv-11739, (D. Mass. June 14, 2025). The two actions target the same alleged conduct by the same defendant, advance materially overlapping nationwide copyright infringement theories about Suno's generative AI models and alleged use of copyrighted works, and seek the same forms of relief. The first-to-file rule—which does not require identical pleadings—exists to conserve judicial resources, avoid duplicative litigation and piecemeal appeals, and prevent inconsistent rulings. Those concerns are squarely presented here. Respecting the first-filed Massachusetts action therefore warrants dismissal, or at minimum a stay, pending that action's resolution.

Alternatively, if the Court does not stay or dismiss, it should transfer this case to the District of Massachusetts under 28 U.S.C. § 1404(a).  Venue is proper there, and both convenience and the interests of justice overwhelmingly favor transfer: Suno is headquartered in Massachusetts, the key witnesses and documentary evidence are centered there, and related litigation is already pending in that District, which is therefore familiar with the overlapping facts and governing law. Transfer offers the same judicial economy benefits as the first-to-file rule while also allowing a controversy involving a Massachusetts-based company to be adjudicated in its home forum.  The District of Massachusetts is the more convenient and appropriate forum.

Accordingly, Suno respectfully requests dismissal for lack of personal jurisdiction or improper venue; alternatively, dismissal or a stay under the first-to-file rule, or transfer to the District of Massachusetts.

## II.        BACKGROUND AND FACTS ALLEGED

Suno is a Massachusetts-based generative AI company that allows users to create original music in seconds using text prompts.  Dkt. 1 ¶¶ 41, 49–50.  From its public launch in July 2023, *id*. ¶ 49, Suno's AI tool has democratized the creative process, allowing artistic experimentation by musical novices, seasoned songwriters, and musicians alike and facilitating the creation of new expressive works.  Suno's model was constructed by analyzing tens of millions of examples of different kinds of music.  *Id.* ¶ 70.  Based on that analysis, the model derived statistical insights about music.  *Id*.  When users enter a prompt asking for a particular genre, instrument, or other specified elements, Suno generates new music based on that learning.  *Id*. ¶¶ 50, 70.

In June 2024, the major record labels sued Suno in the District of Massachusetts, alleging that the way Suno trained its AI model constituted copyright infringement.  *UMG Recordings, Inc. v. Suno, Inc.*, No. 24-cv-11611, ECF No. 1 (D. Mass. June 24, 2024) ("*UMG* Case"; "*UMG*

Compl.") (Ex. A hereto). Like Plaintiffs here, the *UMG* plaintiffs assert Suno infringed their copyrights by using their music to teach the model patterns about what different types of music sound like, which then form the parameters Suno uses to generate new songs. Dkt. 1 ¶¶ 1, 6; *UMG* Compl. ¶¶ 9, 41, 43–44. The *UMG* plaintiffs have also moved to amend to add a claim under Section 1201 of the Digital Millenium Copyright Act ("DMCA") for the alleged circumvention of online access restrictions by downloading music from a streaming platform, *UMG* Case, ECF Nos. 134, 134-3 (D. Mass. Oct. 8. 2024) ("*UMG* Proposed Am. Compl.") (Exs. B, C hereto)—a claim Plaintiffs likewise assert here, Dkt. 1 ¶¶ 205–215.

In June 2025, a collection of independent artists filed a tag-along suit in the District of Massachusetts on behalf of a putative nationwide class. *Justice v. Suno, Inc.*, No. 25-cv-11739, Compl., ECF No. 1 (D. Mass. June 14, 2025) ("*Justice* Case"). Like the *UMG* plaintiffs, the *Justice* plaintiffs allege that Suno violated the Copyright Act by copying their music to train its model. *See Justice* Case, ECF No. 27 ("*Justice* Am. Compl.") ¶ 130 (Ex. D hereto). The *Justice* plaintiffs further allege Suno's model violates the Copyright Act by producing compositions too similar to the asserted works, assert a DCMA Section 1201 claim for alleged circumvention of access controls, and allege that Suno violated an out-of-state consumer protection law by using their "distinctive identifiers," including voices, to create outputs that "misappropriate their brands and identifies [sic]" to compete with the plaintiffs' and putative class members' works. *Id.* ¶¶ 452–455, 462–466, 479–483. The *Justice* case was assigned to District Judge Saylor and Magistrate Judge Levenson, who were already overseeing the *UMG* case. *See Justice* Case, ECF No. 4.

In both Massachusetts cases, Suno has raised a fair use defense to the copyright infringement claims, the same defense at issue in dozens of infringement cases against other generative AI companies across the country, and the same defense that Suno will assert in response

to Plaintiffs' claims here. *See, e.g.*, *UMG* Case, ECF No. 28 at 5 (asserting fair use defense); *Justice Case*, ECF No. 32 at 4 (noting Suno's intent to assert fair use defense); *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1033 (N.D. Cal. 2025) (holding use of copyrighted works to train large language model was fair use); *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1060 (N.D. Cal. 2025) (same); *cf.* Dkt. 1 ¶¶ 109–123 (assuming Suno will likely assert a fair use defense and attempting to plead around it). That defense will be a primary focus of each of these cases.

Indeed, Plaintiffs here—another group of independent musicians and songwriters from California, Illinois, and Georgia who hope to represent a nationwide class (and other overlapping classes) of independent artists—have jumped on the bandwagon with a reprise of the twice-pending challenge to "Suno's practice of systematically copying and storing works by independent artists to fuel a commercial, mass-market music generation engine." Dkt. 1 ¶ 1; *see also UMG* Compl. ¶ 9, *Justice* Am. Compl. ¶ 130 (both making nearly identical claims of copying music "*en masse*" for training). In addition to repeating the *UMG* and *Justice* model training claims, Plaintiffs here also assert the same DMCA Section 1201 "access control" claim. *See UMG* Proposed Am. Compl. ¶¶ 110–117; *Justice* Am. Compl. ¶¶ 461–475; Dkt. 1 ¶¶ 205–215. Plaintiffs' musical composition claims also echo the *Justice* plaintiffs' claims. *See, e.g.*, *Justice* Am. Compl. ¶ 450 (asserting claim under 17 U.S.C. § 106(2) based on musical compositions); Dkt. 1 ¶¶ 170–172 (asserting reproduction and derivative works claims based on copyrighted lyrics); *id.* ¶¶ 181–184 (asserting reproduction and derivative works claims based on their copyrights in non-lyric musical compositions).

Even Plaintiffs' Illinois Biometric Information Privacy Act ("BIPA"), Illinois Right of Publicity Act ("IRPA"), and Illinois Uniform Deceptive Trade Practices Act ("UDPTA") claims are variations on the *Justice* plaintiffs' consumer protection claim. *See Justice* Am. Compl.

¶¶ 476–485; Dkt. 1 ¶¶ 250–289. Plaintiffs implicitly acknowledge the original authors of their claims, conspicuously excluding the Massachusetts named plaintiffs (but not the absent putative class members) from their proposed class definitions and overlapping allegations here. Dkt. 1 ¶ 124. All three complaints even cite some of the same alleged examples of the model generating outputs that allegedly sound similar to elements of pre-existing music. *Id.* ¶ 102; *Justice* Am. Compl. ¶¶ 274, 283; *UMG* Compl. ¶¶ 73–74.

### III.   LEGAL STANDARD

On Rule 12(b)(2) and 12(b)(3) motions to dismiss, the plaintiff bears the burden of establishing personal jurisdiction and proving that venue is proper. *See N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (personal jurisdiction); *Rotec Indus. Inc. v. Aecon Grp., Inc.*, 436 F. Supp. 2d 931, 933 (N.D. Ill. 2006) (venue). Though the court must view the pleadings and affidavits in a light most favorable to the plaintiff, Plaintiffs nonetheless must make a prima facie showing of jurisdictional facts and the court may examine facts outside the complaint. *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 393 (7th Cir. 2020).

Motions to transfer venue are governed by 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

### IV.   ARGUMENT

#### A.   This Case Should Be Dismissed For Lack of Personal Jurisdiction

This Court lacks personal jurisdiction over Suno. To establish personal jurisdiction, Plaintiffs must plead facts alleging that exercising jurisdiction is consistent with federal due process principles and the Illinois long-arm statute. *See Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); *see also* 735 ILCS 5/2-209(c). Here, "the state statutory and federal constitutional

6

inquiries merge" because the Illinois long-arm statute permits the exercise of personal jurisdiction to the extent due process allows, so the Court need only determine whether exercising personal jurisdiction would violate Suno's due process rights. *Tamburo*, 601 F.3d at 700–01. Within that limit, the Court may exercise general or specific jurisdiction, but Plaintiffs have failed to plead facts sufficient to show that either would be appropriate here.

### 1. Suno Is Not Subject to General Jurisdiction in Illinois

Plaintiffs do not allege that Suno is subject to general jurisdiction, and for good reason: Suno is not "at home" in Illinois. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). A corporate defendant is at home in the state where it is incorporated and in "the state where it principally conducts its business." *B.D. v. Samsung SDI Co., Ltd.*, 143 F.4th 757, 765 (7th Cir. 2025). Suno is incorporated in Delaware with its principal place of business in Massachusetts, where it is headquartered. Shulman Decl. ¶¶ 5–6 (Ex. E hereto). Nor have Plaintiffs alternatively alleged that Suno's contacts with Illinois are "so continuous and systematic as to render [it] essentially at home" there. *B.D.*, 143 F.4th at 765 (alteration in original) (quoting *Goodyear*, 564 U.S. at 919). Accordingly, Suno is not subject to general jurisdiction in Illinois.

### 2. Suno Is Not Subject to Specific Personal Jurisdiction in Illinois

Nor do Plaintiffs allege facts sufficient to establish specific personal jurisdiction. Due Process requires that a defendant has sufficient "minimum contacts" with the forum state and that the plaintiff's claims "arise out of" or are related to those defendant-forum contacts. *Walden v. Fiore*, 571 U.S. 277, 283–85 (2014). Specifically, Plaintiffs must allege that Suno "has purposefully directed [its] activities at the forum state or purposefully availed [it]self of the privilege of conducting business in" Illinois, and that "the alleged injury arises out of [Suno's] forum-related activities." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019) (citation omitted). Plaintiffs cannot establish that Suno "purposefully directed" its activities at or "availed"

7

itself of Illinois. "Beyond simply operating an interactive website that is accessible from the forum state, a defendant must in some way *target* the forum state's market." *be2 LLC v. Ivanov*, 642 F.3d 555, 558–59 (7th Cir. 2011). Plaintiffs do not allege that Suno targeted Illinois in any way.

First, Plaintiffs suggest that Suno is subject to jurisdiction here because it "marketed, sold, and distributed AI-generated music services to numerous users in Illinois." Dkt. 1 ¶ 47; *see id.* ¶ 281. But these general statements do not plausibly establish that Suno "purposefully directed [its] activities at" or "purposefully availed [it]self of the privilege of conducting business" in Illinois. *Matlin*, 921 F.3d at 706. A defendant must "purposefully direct[]" conduct into a forum state by "structuring of its own activities so as to target" the market there. *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624 (7th Cir. 2022). Here, both the facts alleged and the facts on the ground, *see* Shulman Decl. ¶¶ 17–20, at most indicate that Suno offered a product to Internet users writ large—there are no facts suggesting that Suno specifically targeted potential users in Illinois. For example, Plaintiffs do not allege (nor could they consistent with Rule 11) that Suno specifically marketed, geotargeted, or directed particular product features to Illinois residents such that it can be said that it "structur[ed] … its own activities so as to target" Illinois. *NBA Props.*, 46 F.4th at 624; *see also* Shulman Decl. ¶¶ 18–20. Suno simply offers a website and application to users nationwide under the same, uniform terms of use. *See* Shulman Decl. ¶ 18.

That conduct does not constitute "purposeful direction" or "availment." As the Seventh Circuit has made clear: "If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." *be2*, 642 F.3d at 559; *see Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 760 (7th Cir. 2010) (emphasizing that courts should "ensure that a defendant is not haled into court simply because the defendant owns or operates a

8

website that is accessible in the forum state, even if that site is 'interactive'"); *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) (stating interactivity of a website is a "poor proxy for adequate in-state contacts" and concluding if having such a website were sufficient, "there is no limiting principle—a plaintiff could sue everywhere"). There are no allegations that Suno engaged in unique business relationships with Illinois users.

Unlike the defendant in *uBID, Inc. v. GoDaddy Group*, 623 F.3d 421, 428 (7th Cir. 2010), Suno did not advertise its product to Illinois residents. Rather, like the defendant in *be2*, any Illinois residents that might have become users of Suno's platform "may have done so unilaterally by stumbling across the website." 642 F.3d at 559; *see Telemedicine Sols. LLC v. WoundRight Techs., LLC*, 27 F. Supp. 3d 883, 900–01 (N.D. Ill. 2014) (no personal jurisdiction where alleged internet contact was not "targeted or aimed at Illinois, or prompted anymore than happenstance interactions with Illinois residents or businesses"). Because Plaintiffs do not allege any facts indicating that Suno "deliberately targeted or exploited the Illinois market," its mere operation of a website accessible by Illinois residents is insufficient to establish specific personal jurisdiction. *be2*, 642 F.3d at 559; *see Art Akiane LLC v. Mardel, Inc.*, 2021 WL 3269837, at *3 (N.D. Ill. July 30, 2021).

The court's decision in *Concord Music Group, Inc. v. Anthropic PBC*, 738 F. Supp. 3d 973 (M.D. Tenn. 2024), is instructive. In *Concord*, music publishers brought infringement claims against an AI model developer, Anthropic. *Id.* at 978–79. The court held that the plaintiffs had not "met their burden to show that Anthropic intentionally reached out to Tennessee customers for business, said anything on its website to target Tennessee business specifically, or deliberately interacted with Tennessee residents in a meaningful way beyond 'random or fortuitous events' of users interacting with [Anthropic's AI product] … while in Tennessee." *Id.* at 988. Relying on

9

*Advanced Tactical*, the court reasoned that "[i]t is well-settled that '[h]aving an interactive website … should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible.'" *Id.* (quoting 751 F.3d at 803). *Concord*'s reasoning and holding is squarely applicable here.

*Concord* likewise rejected the contention that alleged infringing outputs accessible in the forum could establish purposeful availment, explaining that the plaintiffs' argument "that Anthropic purposefully availed itself of Tennessee 'by unlawfully reproducing, distributing, and displaying infringing copies of [their] works to users in Tennessee' … is simply another way of saying users can access Anthropic's Claude AI models while in Tennessee." *Id.* at 989. The court concluded, again, that the plaintiffs had not shown that "Anthropic purposefully availed itself of Tennessee merely because users can access Claude in Tennessee and Claude can output content related to Tennessee upon request." *Id.* This Court should reach the same conclusion here, particularly where—unlike in *Concord*—the Plaintiffs do not even identify any specific allegedly infringing content outputted to a Suno user in Illinois.[1]

Finally, Plaintiffs' allegations that Suno "collect[ed], process[ed], and commercially exploit[ed] Illinois residents' voiceprints and distinctive vocal identifiers," thereby "harming Plaintiffs residing or conducting business" in Illinois, are also insufficient for purposes of personal jurisdiction. Dkt. 1 ¶ 45; *see also id.* ¶¶ 47, 257, 276. Even assuming this alleged conduct

---

[1] For this same reason, the contention that Suno somehow "facilitat[ed]" alleged infringement in Illinois by making its product available to consumers there, Dkt. 1 ¶ 47, is inadequate to establish jurisdiction. "[M]erely selling an apparatus capable of performing" alleged infringement is insufficient to establish a secondary infringement claim, much less warrant an exercise of personal jurisdiction. *ePlus, Inc. v. Lawson Software, Inc.*, 789 F.3d 1349, 1360 (Fed. Cir. 2015); *see Carter v. Pallante*, 256 F. Supp. 3d 791, 799 (N.D. Ill. 2017) ("One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it.").

occurred, it did not occur in Illinois, a state devoid of any of Suno's key employees, business operations, or targeted commercial activity. Shulman Decl. ¶¶ 7, 13–20. Suno collected and processed its training data in Massachusetts, where the vast majority of its employees involved in this work are located and operate. *Id.* ¶¶ 7, 10–14. Further, Suno stored its training data on a cloud, and Suno does not maintain any local server in Illinois. *Id.* ¶¶ 15–16. Therefore, Plaintiffs have not alleged the jurisdictional facts necessary to support personal jurisdiction.

Plaintiffs' allegation that Suno's "commercial[] exploit[ation] [of] Illinois residents' voiceprints and distinctive vocal identifiers" "harm[ed] Plaintiffs residing or conducting business" does not supply those additional requisite facts. Dkt. 1 ¶ 45; *see also id.* ¶¶ 47, 257, 276. Even assuming the truth of those allegations, the Seventh Circuit has recognized that "injury to a forum resident, even if predictable, is not a sufficient connection to the forum." *In re Sheehan*, 48 F.4th 513, 524 (7th Cir. 2022) (citing *Walden*, 571 U.S. at 290). This Court cannot exercise personal jurisdiction on this basis because focusing on allegations of harm to plaintiffs in the forum state improperly "allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Walden*, 571 U.S. at 289.[2] And "it is not enough that the defendant took some action that ultimately had an effect on the plaintiff in the forum." *In re Sheehan*, 48 F.4th at 523. Therefore, this action should be dismissed under Rule 12(b)(2) for a lack of personal jurisdiction.[3]

---

[2] Plaintiffs also level conclusory allegations that Suno "regularly conducts business and has purposefully directed its infringing activities into" Illinois and "purposefully directed substantial business activities towards Illinois residents." Dkt. 1 ¶¶ 45, 47. These statements are merely "conclusory, vague allegations that are insufficient to make a prima facie showing of personal jurisdiction." *Mohammed v. Uber Techs., Inc.*, 237 F. Supp. 3d 719, 735 (N.D. Ill. 2017).

[3] While 28 U.S.C. § 1631 obligates this Court to transfer this case to a proper forum if it finds that transfer rather than dismissal for lack of jurisdiction is in the interests of justice, that is not the case here. Indeed, "[i]f a plaintiff may, on its own, refile its case in a proper forum, 'the interests of justice' do not demand transfer." *North v. Ubiquity, Inc.*, 72 F.4th 221, 228 (7th Cir. 2023). There is nothing here preventing Plaintiffs from refiling in the District of Massachusetts. *See Healthcare Dev. Partners LLC v. Signet Health Corp.*, 2025 WL 904361, at *6 (N.D. Ill. Mar. 25, 2025)

**B.** **This Case Should Be Dismissed for Improper Venue**

Because Plaintiffs' allegations also lack any meaningful nexus to this District, venue is improper under 28 U.S.C. §§ 1391(b) and 1400(a).  Section 1400 is the exclusive venue provision governing copyright infringement actions.  *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 n.2 (2013) (identifying Section 1400 as establishing the "proper venue for copyright and patent suits," and Section 1391 as governing "where a more specific venue provision does not apply").  Under Section 1400, venue is proper only "in the district in which the defendant or his agent resides or may be found."  *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co., Inc.*, 8 F.3d 441, 443 (7th Cir. 1993).  A defendant in a copyright action "may be found" in a district where he is subject to personal jurisdiction.  *See id.* at 445 (venue requires that the "defendant's amenability to personal jurisdiction … relate to the judicial district in which the action was filed.").  Because Suno does not "reside" in Illinois, let alone this District, and personal jurisdiction is otherwise lacking, *see supra* at 6–11, venue is not proper under Section 1400.

To the extent that Section 1391(b)'s general venue provisions apply, Plaintiffs fail to allege that venue lies thereunder.  Section 1391(b) provides for venue in a district (1) "in which any defendant resides," (2) where "a substantial part of the events or omissions giving rise to the claim occurred," or (3) where personal jurisdiction over any defendant lies if there is no district in which the claim can otherwise be brought.  As to prongs one and three, again, Suno neither "resides" in this District, nor do Plaintiffs adequately allege that this Court may exercise personal jurisdiction over Suno.  *See supra* at 6–11.

---

(declining to transfer under § 1631 because the statute-of-limitations did not foreclose the plaintiff from refiling in the proper forum).  And unlike in *Concord*, 738 F. Supp. 3d at 991, Plaintiffs do not have a pending, time-sensitive motion for preliminary injunction that dismissal could impact.

That leaves only the second prong, which considers whether "a substantial part of the events or omissions giving rise to [Plaintiffs'] claim[s] occurred," 28 U.S.C. § 1391(b)(2), in this District. Plaintiffs make no substantive allegations suggesting that this test is satisfied. Plaintiffs' claims center on Suno's training and operation of its AI models. But none of these activities take place in Illinois. Suno's AI model is developed and trained at its headquarters in Massachusetts, and its website and mobile application are maintained there, in California, and in New York—not in this District. Shulman Decl. ¶¶ 12, 17. As such, this District is an improper venue for this action, and dismissal is warranted. 28 U.S.C. § 1406(a).[4]

### C.     Alternatively, This Case Should Be Dismissed (or Stayed) Pursuant to the First-to-File Doctrine

Should this Court determine personal jurisdiction and venue are proper, it should nonetheless dismiss or stay this case pursuant to the first-to-file doctrine, which disfavors duplicative later-filed suits.[5] *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (describing general rule permitting dismissal of later-filed duplicative lawsuits for reasons of wise judicial administration). The *Justice* case—filed in the District of Massachusetts months before the present case—is a duplicative suit with substantially overlapping claims, parties, and requested relief. *See McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 889 (7th Cir. 2012). The duplicative nature of these cases and judicial economy interests warrant dismissal or stay of this later-filed action.

---

[4] Although the Court may dismiss this action for improper venue pursuant to Section 1406(a), it may in the interest of justice transfer the case under the same provision to the District of Massachusetts, a "district or division in which it could have been brought." *See POET Rsch, Inc. v. Hydrite Chem. Co.*, 2025 WL 2696411, at *8–9 (N.D. Ill. Sept. 22, 2025).

[5] The Court may also consider whether the first-to-file rule warrants transfer under 28 U.S.C. § 1404(a). *Infra* at 17–25. In that context, "where a case is filed first should weigh no more heavily" than other Section 1404(a) factors. *Rsch. Automation, Inc. v Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 982 (7th Cir. 2010).

The first-to-file rule arises from district courts' "'inherent power to administer their dockets so as to conserve scarce judicial resources' by avoiding duplicative litigation." *Askin v. Quaker Oats Co.*, 2012 WL 517491, at *3 (N.D. Ill. Feb. 15, 2012) (quoting *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995)). When two similar actions are filed before two different federal judges, judicial economy favors a rule that allows only the first-filed case to proceed. *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 917 (N.D. Ill. 2009) (citing *Serlin*, 3 F.3d at 223). The doctrine also guards against the risk of "multiple conflicting decisions which may require separate appeals." *Time Warner Cable, Inc. v. USA Video Tech. Corp.*, 520 F. Supp. 2d 579, 585 (D. Del. 2007); *see also Muhammad v. State Farm Indem. Co.*, 719 F. Supp. 3d 397, 402 (D.N.J. 2024) (noting that the first-to-file rule "prevent[s] … conflicting judgments"). This danger is especially acute in the class action context, where courts "risk binding class members to inconsistent judgments" with respect to class certification and other issues. *Wright v. Walden Univ., LLC*, 2017 WL 1435717, at *2, *3 n.8 (D. Minn. Apr. 21, 2017). As such, "whenever [a lawsuit] is duplicative of a parallel action already pending in another federal court," district courts maintain broad discretion to dismiss a complaint. *McReynolds*, 694 F.3d at 888–89.

Two suits are duplicative if their "claims, parties, and available relief do not significantly differ." *Ridge Gold Standard Liquors v. Joseph E. Seagram & Sons, Inc.*, 572 F. Supp. 1210, 1213 (N.D. Ill. 1983). To be clear, the claims, parties, and available relief must "substantially overlap," but need not be identical. *Nicholson v. Nationstar Mortg. LLC of Delaware*, 2018 WL 3344408, at *5 (N.D. Ill. July 6, 2018). Each criterion is satisfied here.

First, the claims here and in *Justice* substantially overlap. To assess this factor, courts look to the substance of the claims and whether those claims depend on the same underlying core factual allegations, not to the specific statutory violations alleged in each case. *See Askin*, 2012 WL

14

517491, at *4; *Nicholson*, 2018 WL 3344408, at *7. Here, both cases are putative nationwide class actions based on the Copyright Act, the DMCA, and state-specific laws that take aim at Suno's development and operation of its music generative AI models. *Compare* Dkt. 1 ¶¶ 1–2, 6, 70–71, 81–83, 124, 292, *with Justice* Am. Compl. ¶¶ 1, 25, 55, 94, 101, 120, 149, 430, 443, 465. Although the *Justice* plaintiffs and Plaintiffs here assert distinct state-law claims on behalf of state-specific subclasses, even those claims arise from the same core facts and accuse Suno of similar conduct. *Compare* Dkt. 1 ¶¶ 261, 269, 283, 292 *with Justice* Am. Compl. ¶¶ 430, 479. Both sets of state law claims are directed at Suno's alleged exploitation and misappropriation of artists' unique identifiers through its generative AI tool. *Compare* Dkt. 1 ¶¶ 261, 269, 283 *with Justice* Am. Compl. ¶¶ 430, 479. In particular, the *Justice* plaintiffs' consumer protection claim is based on their allegation that Suno's model "appropriates" artists' "personas and brands" without their permission, including by reproducing producer tags and generating voice soundalikes. *Justice* Am. Compl. ¶¶ 278–82, 321; *see also id*. ¶ 480 (identifying misappropriation of "names, voices, and producer tags" as the gravamen of consumer protection claim). And Plaintiffs here base their BIPA, IRPA, and UDTPA claims on the same alleged misappropriations. Dkt. 1 ¶¶ 254 (naming identifiable "recorded music or distinctive vocal tags" as biometric identifiers for BIPA claim), 269 (IRPA claim founded on use of class members' "voices and distinctive vocal attributes"); 283 (UDTPA claim based primarily on Suno's "passing off" producer or artist tags, thereby causing likelihood of customer confusion). "As long as the underlying facts are the same … the fact that the two complaints allege violations of different state laws is not enough to render them substantially dissimilar for purposes of the first-to-file analysis." *Askin*, 2012 WL 517491, at *4; *see also Wright*, 2017 WL 1435717, at *1–3 (concluding that state-law claims raised in state-specific subclasses did not preclude the first-to-file rule because "precise overlap" is not required).

15

Second, the parties substantially overlap. "When comparing the similarity of the parties in two putative class actions, the focus of the substantially similar inquiry is on the putative class members . . . ." *Nicholson*, 2018 WL 3344408, at *5. Here, both sets of plaintiffs seek to represent putative nationwide classes of musical composition and sound recording rightsholders. *Compare* Dkt. 1 ¶ 124 *with Justice* Am. Compl. ¶ 430. That Plaintiffs here exclude the *Justice* named plaintiffs from their proposed class does not address the fact that the putative classes are otherwise overlapping.[6] And, again, the existence of state-specific subclasses does not negate these substantial similarities as the standard is substantial overlap rather than precise overlap. *Cf. Wright*, 2017 WL 1435717, at *3 (noting that "[t]here would be nothing to stop plaintiffs in all 50 states from filing separate nationwide class actions based upon their own state's law" if the first-to-file rule turned on the presence of different state-law claims).

Third, the relief substantially overlaps. For this factor, courts look to the types of relief requested—not the specific relief. *See Askin*, 2012 WL 517491, at *5. Here, the relief requested in both courts is the same—class certification, declaratory relief, injunctive relief, damages, restitution, and disgorgement. Dkt. 1 ¶ 301; *Justice* Am. Compl. at 64–65.

Ultimately, given the substantial similarities between both actions, allowing this suit to proceed on near-identical lines as *Justice* would be redundant and a waste of judicial resources.

---

[6] Courts around the country have rejected attempts to gerrymander a class to avoid the first-to-file rule. *See, e.g., Cruz-Acevedo v. Unilever U.S., Inc.*, 2016 WL 9460633, at *5 (D.P.R. Sept. 26, 2016) ("[Plaintiff] should not be permitted to 'gerrymander' her way around transfer."); *Bouas v. Harley-Davidson Motor Co. Grp., LLC*, 2020 WL 2334336, at *2 (S.D. Ill. May 11, 2020) (staying later-filed class action where the class definition in the first-filed case was amended to exclude plaintiffs in Illinois, in part because the court "suspect[ed]" that the amendment to the class definition was "motivated by a desire to permit multiple suits in multiple venues to proceed"); *Thompson v. Glob. Mktg. Rsch. Servs., Inc.*, 2016 WL 233702, at *3, 5 (E.D. Pa. Jan. 20, 2016) (similar).

### D. Alternatively, This Case Should Be Transferred to the District of Massachusetts

Alternatively, the Court should transfer this action to the District of Massachusetts.[7]  When considering transfer under 28 U.S.C. § 1404(a), courts look to whether: "(1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice."  *In re Extended Stay Hotel Antitrust Litig.*, 2024 WL 5089159, at *1 (N.D. Ill. Dec. 12, 2024).  Here, each factor favors transfer.

#### 1. The District of Massachusetts Is the Proper Forum

First, venue is proper in the District of Massachusetts.  That court has personal jurisdiction over Suno under Section 1400(a), as well as under each prong of Section 1391(b).  The District of Massachusetts has jurisdiction under Section 1400(a) because Suno may be found in that District, where its principal place of business is located.  *See supra* at 7.  The District of Massachusetts is also "a judicial district in which any defendant resides," under Section 1391(b)(1) because Suno resides there.[8]  *See supra* at 12–13.  Venue thus properly lies in the District of Massachusetts.  *See Willis v. Caterpillar Inc.*, 199 F.3d 902, 905 (7th Cir. 1999) (venue "was clearly proper" in district where defendant's principal place of business was located).[9]

---

[7] The Court may transfer under Section 1404(a) without first addressing personal jurisdiction or venue.  *See Brownell v. Alcon Ent., LLC*, 2017 WL 11884028, at *2–3 (N.D. Ill. Dec. 19, 2017) (Wood, J.) (declining to analyze personal jurisdiction or venue issues where "it [was] clear that th[e] case should be transferred"); *Sassy, Inc. v. Berry*, 406 F. Supp. 2d 874, 875, 877 (N.D. Ill. 2005).

[8] Although Suno maintains that venue is improper in this District, the Court may nonetheless assume that venue is proper in this District for purposes of a Section 1404(a) motion.  *See Brownell*, 2017 WL 11884028, at *2 (assuming that the venue was proper in the transferor forum).

[9] The District of Massachusetts is also "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred" under Section 1391(b)(2).  The Complaint alleges that Suno's alleged use of copyrighted recordings for training, any alleged removal or alteration of CMI during that process, the alleged ingestion and exploitation of independent artists' biometric

### 2. The Private Interest Factors Collectively Favor Transfer to the District of Massachusetts

Because the District of Massachusetts is a proper venue, the Court must determine whether the private and public interest factors favor transfer to that district. *See Shenzhen AJI Fashion Tech. Co. Ltd. v. WhaleCo Inc.*, 2024 WL 2845974, at *7 (N.D. Ill. June 5, 2024). In assessing the private interest factors, courts examine: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *Bureau of Consumer Fin. Prot. v. Fifth Third Bank, N.A.*, 2021 WL 534658, at *2 (N.D. Ill. Feb. 12, 2021) (Wood, J.). As explained below, the private interest factors support transfer.

### a. The District of Massachusetts Is the Situs of Material Events

The District of Massachusetts is the situs of material events underlying Plaintiffs' claims— that is, "where the defendant's decisions and activities that gave rise to the claim took place." *Id.* ("Where a corporate defendant's conduct is at issue, courts often look to where the underlying business decisions were made."); *George & Co. LLC v. Target Corp.*, 2021 WL 2948910, at *3 (N.D. Ill. July 14, 2021) ("[T]he material events inquiry focuses on the location of actions creating the injury, not the location of the injury itself."). In copyright cases, this factor looks to the location of the defendant's principal place of business and where the allegedly infringing product or service was developed, as infringement cases "typically revolve around the alleged infringer's activities, employees, and documents." *Ill. Comput. Rsch., LLC v. Harpercollins Publishers, Inc.*, 2010 WL 4877501, at *2–3 (N.D. Ill. Nov. 22, 2010).

---

information, and alleged use of artists' voices and attributes for commercial gain all took place at, or were directed from, Suno's headquarters in Massachusetts. *See supra* at 4–6, 10–11.

Here, Suno's "decisions and activities that gave rise to the claim[s] took place" in Massachusetts, not Illinois. *Bureau of Consumer Fin. Prot.*, 2021 WL 534658, at *2. Plaintiffs' claims are premised on Suno's development, training, and operation of its generative AI models. Dkt. 1 ¶¶ 1, 5–13, 70–111. The overwhelming majority of those activities—as well as the strategic business decisions that direct them—emanate from Massachusetts, Suno's principal place of business and where its corporate decision makers and engineers are located. *See* Shulman Decl. ¶¶ 6–7, 9, 12–14, 19. And to the extent that any conduct occurred outside of Massachusetts, it did not occur in Illinois. *See* Shulman Decl. ¶¶ 6, 8, 13–16, 18–20. The District of Massachusetts is therefore the situs of material events. *See Brownell*, 2017 WL 11884028, at *2–3 (transferee district, where defendants were headquartered and recorded and produced allegedly infringing music, was situs of material events); *Ill. Comput. Rsch.*, 2010 WL 4877501, at *2–3 (transferee district, where defendants had principal places of business and former employees designed allegedly infringing website, was location of material events).

In contrast, the Complaint alleges no material facts tying Plaintiffs' claims to this District. Plaintiffs' assertions that Suno "marketed, sold, and distributed" its services to "users in Illinois"; that Suno "collected, stored, and used Illinois biometric identifier[s] and information from Illinois residents"; and that *some* class members reside in and suffered harm in Illinois, Dkt. 1 ¶ 47, are insufficient. First, that Suno sells its services in Illinois does not create a distinctive connection to Illinois. *See George & Co.*, 2021 WL 2948910, at *3 ("When products are sold nationwide, the fact that a product is sold in one district does not force the parties to litigate the case there."). Suno oversees and directs its operations, marketing, and sales from its Massachusetts headquarters and does not target Illinois differently or more intensively than any other state. *See* Shulman Decl. ¶¶ 18–20. Plaintiffs do not allege that any infringing activity actually took place in Illinois. And

even if they had, it would make no difference. It would simply be another way of saying users can access Suno's website and tool while in Illinois—which is insufficient to establish an Illinois nexus. *See supra* at 8–10. Finally, Plaintiffs' contention that certain class members reside in and thus felt the harm of Suno's alleged conduct in Illinois is legally irrelevant to this analysis. *See George & Co*, 2021 WL 2948910, at *3 (focusing on "the location of actions creating the injury, not the location of the injury itself.").

Because this case has virtually no relationship to this District, and extensive ties to the District of Massachusetts, this factor strongly favors transfer.

> **b.      Transferring to the District of Massachusetts Maximizes Efficient, Effective Access to the Evidence and Witnesses Central to This Case and Minimizes Inconvenience**

The location of documents and evidence, along with the convenience and availability of witnesses and convenience of the parties, all favor transfer to the District of Massachusetts.

*First*, access to evidence and sources of proof favors the District of Massachusetts. In infringement cases, "the place where the defendant's documents are kept weigh in favor of transfer to that location" because "the bulk of the relevant evidence usually comes from the accused infringer." *UMG Recordings, Inc. v. Archive*, 2023 WL 8520587, at *2 (S.D.N.Y. Dec. 8, 2023). Here, the salient documents and evidence in Suno's possession regarding its generative AI models are likely in the District of Massachusetts, where Suno has its principal place of business. *See Shenzhen*, 2024 WL 2845974, at *7 (in copyright and trademark infringement case, this factor favored transfer because defendant's documents and evidence were likely located in district where defendant was located); *see also* Shulman Decl. ¶¶ 7, 13–14 (explaining that almost all of Suno's work related to its generative AI models is based in Massachusetts). Because the vast majority of this evidence is located in Massachusetts, this factor favors transfer.

*Second*, transferring this suit to the District of Massachusetts would markedly benefit key witnesses. Witness convenience is the paramount consideration in the transfer analysis. *See George & Co.*, 2021 WL 2948910, at *4. In assessing this factor, courts do not simply count heads; they rigorously examine "the nature and quality of the witnesses' testimony with respect to the issues of the case." *Bureau of Consumer Fin. Prot.*, 2021 WL 534658, at *3. That inquiry is especially consequential in infringement cases, which usually "revolve around the alleged infringer's activities, employees, and documents." *Ill. Comput. Rsch.,* 2010 WL 4877501, at *2.

Because the Complaint centers on Suno's alleged misconduct in developing, training, and operating its generative AI models, the primary witnesses with information about those activities are Suno's witnesses, none of whom are located in Illinois, and nearly all of whom reside in the District of Massachusetts. *See* Shulman Decl. ¶¶ 7, 9. Testimony of Suno's leadership—who are predominantly based in Massachusetts—will be critical to this litigation, as they oversee and direct the allegedly infringing models' development and operation and Suno's strategic business decisions. *See Bureau of Consumer Fin. Prot.*, 2021 WL 534658, at *3 ("When the testimony of senior management will likely be an important part of litigation, courts often find it appropriate to transfer the case to the district where those officers are located."). Specifically, current Suno executives Michael Shulman (Chief Executive Officer and co-founder), Martin Camacho (President and co-founder), and Georg Kucsko (Chief Technology Officer and co-founder) are based in Massachusetts and have knowledge of the business and technical aspects of Suno's generative AI tool, including its design, development, or operation. *See* Shulman Decl. ¶ 9. These individuals will also likely be prospective witnesses in the ongoing, substantially similar *Justice* putative class action and related *UMG* litigation in the District of Massachusetts, which further exacerbates the inconvenience of providing duplicative testimony about similar substantive issues

and facts in this District.  *See In re Extended Stay*, 2024 WL 5089159, at *4; *George & Co.*, 2021 WL 2948910, at *4 ("To haul witnesses into an Illinois courtroom whose roles are potentially duplicative in the related action … would contravene the purpose of Section 1404(a).").

It is not necessarily more convenient for Plaintiffs' witnesses in a putative nationwide class action to appear in this District.  *See In re Extended Stay*, 2024 WL 5089159, at *4 ("[B]ecause the class of putative plaintiffs are nationwide customers . . . there is no location that is obviously more or less convenient for Plaintiffs.").  Nor do the named plaintiffs anchor convenience here; two do not even reside in Illinois.  Dkt. 1 ¶¶ 33, 38 (Georgia and California residences).

For the same reasons, any purported inconvenience to Plaintiffs of litigating in the District of Massachusetts is significantly outweighed by the inconvenience to Suno of defending itself in this District.  In evaluating party convenience, courts assess "the parties' residences and their ability to bear the expense of litigating in each forum."  *George & Co.*, 2021 WL 2948910, at *4 (citation omitted).  In this case, the District of Massachusetts is substantially more convenient for Suno, particularly given that it is presently litigating two other cases in that district that will involve substantially similar witnesses, facts, and legal arguments.  *See supra* at 13–16; *In re Extended Stay*, 2024 WL 5089159, at *5 ("Defendants thus have met their burden by pointing to the inconvenience of litigating the California action while litigating the substantially similar Illinois action.").  In contrast, while *some* named Plaintiffs reside in Illinois, *see* Dkt. 1 ¶¶ 14, 16, 20, 26, Plaintiffs' convenience is less significant in a putative nationwide class action because "replacement Plaintiffs are likely available in any locale should the burdens of representation prove unbearable for any currently named Plaintiff."  *In re Extended Stay*, 2024 WL 5089159, at *4.

In sum, these factors—access to evidence and the convenience of witnesses and parties— support transfer to Massachusetts.

22

### c. Plaintiffs' Choice of Forum Deserves Minimal or No Deference

This Court need not defer to Plaintiffs' choice of forum given that the District of Massachusetts is the most convenient venue with the strongest connections to the dispute. A plaintiff's choice of forum "will not defeat a well-founded motion to transfer." *Simonian v. Hunter Fan Co.*, 2010 WL 3975564, at *2 (N.D. Ill. Oct. 7, 2010). Several legal tenets counsel against deferring to Plaintiffs' forum choice here. First, where, as here, Plaintiffs bring a nationwide class action, their choice of forum is entitled to minimal or no deference because the "named Plaintiffs' choice of venue will not be the home venue for all plaintiffs and any venue selected is bound to be inconvenient to some plaintiffs." *Jaramillo*, 664 F. Supp. 2d at 914. Indeed, this District is not even home to all of the *named* Plaintiffs here. Dkt. 1 ¶¶ 33, 38.

Second, a plaintiff's forum choice is afforded "less deference … when another forum has a stronger relationship to the dispute or when the forum of plaintiff's choice has no significant connection to the situs of material events." *George & Co.*, 2021 WL 2948910, at *2. As explained above, this District lacks a meaningful nexus because the material events predominantly occurred in or are directed from the District of Massachusetts—including the development, training, and operation of Suno's allegedly infringing generative AI models. *See supra* at 8–10. And Plaintiffs do not claim that any specific allegedly infringing model output was made or received here. Plaintiffs' general allegations that Suno's product is available to Illinois residents—as it is to users nationwide—and is generally capable of providing infringing output to its users do not compel litigation in this forum. *See George & Co.*, 2021 WL 2948910, at *3 (where "the alleged infringement occurred in many districts nationwide there should not be significant deference given to this District" *even where* "some significant events did occur in Illinois"); *Brownell*, 2017 WL 11884028, at *3 (noting that marketing and showing an allegedly infringing movie in the district was insufficient because it also occurred in other districts).

23

In sum, the private interest factors overwhelmingly favor transfer, and the District of Massachusetts is clearly the more convenient forum.

### 3. The Public Interest Factors All Favor Transfer to the District of Massachusetts

The interests of justice warrant transfer of this suit to the District of Massachusetts. As part of this inquiry, courts examine "(1) docket congestion and likelihood to proceed to a speedy trial, (2) each court's relative familiarity with the relevant law, (3) the respective desirability of resolving controversies in each locale, and (4) the relationship of each community to the controversy." *George & Co.*, 2021 WL 2948910, at *5. Courts also "consider[] the judiciary's interest in trying related litigation together." *In re Extended Stay*, 2024 WL 5089159, at *5. Ultimately, these factors "may be determinative, warranting transfer," even where the private interest factors suggest otherwise. *Rsch. Automation*, 626 F.3d at 978.

*First*, the judiciary's interest in trying related litigation together strongly favors transfer, particularly due to the substantially similar and earlier-filed *Justice* class action in the District of Massachusetts. *See Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1063–65 (N.D. Ill. 2015) (discussing cases). Trying these related suits in the same district would, among other benefits, enable case coordination, promote efficiency in discovery and motion practice, and avoid potential inconsistent rulings. *In re Extended Stay*, 2024 WL 5089159, at *6. Accordingly, this factor strongly favors transfer.

*Second*, docket congestion and speed to trial favor transfer. On balance, this action is likely to be resolved faster in the District of Massachusetts. While the current median time from filing to disposition in civil cases is one week higher in the District of Massachusetts (7.4 months versus 7.1 months), the median time from filing to trial is years longer in the Northern District of Illinois (56.4 months versus 29 months). *U.S. District Court — Judicial Caseload Profile* (June 30, 2025),

https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile0630.2025.pdf; *see George & Co.*, 2021 WL 2948910, at \*5 (noting that courts review median time from filing to disposition and from filing to trial in civil cases when determining a case's potential speed).

*Third*, familiarity with applicable law favors transfer for the same reasons. The District of Massachusetts is likely more familiar with Suno's alleged conduct and the relevant law due to the ongoing *Justice* and *UMG* litigations before Judge Saylor. *Cf. Jaramillo*, 664 F. Supp. 2d at 916–17 (noting that judge overseeing earlier-filed action was more familiar with underlying facts).

Finally, the respective desirability of resolving controversies in each locale and the relationship of each community to the controversy favor transfer for the same reasons. Here, Massachusetts has a greater interest in and connection to this case due to the location of Suno's headquarters and the ongoing *Justice* and *UMG* litigations in the District of Massachusetts. *Cf. Brownell*, 2017 WL 11884028, at \*4 (stating that transferee district had strong interest in ensuring that California-based companies "comport with intellectual property laws" and "receive fair protection under those laws"); *George & Co.*, 2021 WL 2948910, at \*6 (concluding that the transferee district had a stronger connection in part because of similar actions pending there). And "[w]hile Illinois has an interest in protecting its residents . . . this interest would not be greater than that of any other state in which misconduct might have occurred." *Bureau of Consumer Fin. Prot.*, 2021 WL 534658, at \*5. Thus, these factors weigh in favor of transfer.

In sum, transfer is warranted because the District of Massachusetts is a proper venue and the private interest and public interest factors collectively weigh in favor of transfer.

## V. CONCLUSION

Suno respectfully requests that the Court dismiss or stay this case or, in the alternative, transfer the case to the District of Massachusetts.

Date: November 24, 2025

Respectfully submitted,

 */s/* Gary Feinerman

Gary Feinerman (ARDC No. 6206906)
**LATHAM & WATKINS LLP**
330 N. Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
Email: gary.feinerman@lw.com

Andrew M. Gass (*pro hac vice*)
Brittany N. Lovejoy (*pro hac vice*)
Joseph R. Wetzel (*pro hac vice*)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: andrew.gass@lw.com
Email: britt.lovejoy@lw.com
Email: joe.wetzel@lw.com

*Attorneys for Defendant Suno, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 24, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF System, which shall send notification of such filing to all counsel of record.

/s/ Gary Feinerman
Gary Feinerman