**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DAVID WOULARD, ATTACK THE SOUND LLC, an Illinois limited liability company, STAN BURJEK, JAMES BURJEK, BERK ERGOZ, HAMZA JILANI, MAATKARA WILSON, ARJUN SINGH, MAGNUS FIENNES, and MICHAEL MELL, each individually and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>    v.<br><br>SUNO, INC. and UNKNOWN DEFENDANTS,<br><br>         Defendants. | Case No. 25-cv-12684<br><br>District Judge Andrea R. Wood<br><br>Magistrate Judge Heather K. McShain |

**<u>DEFENDANT SUNO, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE
OR, IN THE ALTERNATIVE, TO TRANSFER VENUE</u>**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    BACKGROUND AND FACTS ALLEGED ........................................................3

III.   LEGAL STANDARD ...........................................................................................6

IV.   ARGUMENT .........................................................................................................6

     A.     This Case Should Be Dismissed for Lack of Personal Jurisdiction........................6

          1.     Suno Is Not Subject to General Jurisdiction in Illinois...............................7

          2.     Suno Is Not Subject to Specific Personal Jurisdiction in Illinois ...............7

               a.     Allowing Illinois residents access to Suno's product on the Internet does not establish personal jurisdiction in Illinois ............9

               b.     A third-party security vendor's choice of server location for routing certain web-traffic does not establish personal jurisdiction in Illinois.................................................................14

               c.     Broad allegations of unspecified biometric data collection does not subject Suno to personal jurisdiction in Illinois .............16

     B.     This Case Should Be Dismissed for Improper Venue ...........................................18

     C.     Alternatively, This Case Should Be Dismissed (or Stayed) Pursuant to the First-to-File Doctrine ..........................................................................................21

     D.     Alternatively, This Case Should Be Transferred to the District of Massachusetts ....................................................................................................24

          1.     The District of Massachusetts Is the Proper Forum...................................25

          2.     The Private Interest Factors Collectively Favor Transfer to the District of Massachusetts ....................................................................25

               a.     The District of Massachusetts Is the Situs of Material Events...............................................................................................26

               b.     Transferring to the District of Massachusetts Maximizes Efficient, Effective Access to the Evidence and Witnesses Central to This Case and Minimizes Inconvenience.....................27

i

c.      Plaintiffs' Choice of Forum Deserves Minimal or No
                Deference ....................................................................................28

    3.      The Public Interest Factors All Favor Transfer to the District of
            Massachusetts ...............................................................................29

V.      CONCLUSION..............................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
  751 F.3d 796 (7th Cir. 2014) ................................................11

*Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*,
  80 F. Supp. 3d 870 (N.D. Ill. 2015) ...............................18, 19, 20

*Askin v. Quaker Oats Co.*,
  2012 WL 517491 (N.D. Ill. Feb. 15, 2012) ....................21, 22, 23, 24

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
  571 U.S. 49 (2013).............................................................18

*B.D. v. Samsung SDI Co., Ltd.*,
  143 F.4th 757 (7th Cir. 2025) ................................................7

*Bartz v. Anthropic PBC*,
  787 F. Supp. 3d 1007 (N.D. Cal. 2025) ......................................4

*be2 LLC v. Ivanov*,
  642 F.3d 555 (7th Cir. 2011) ...............................8, 10, 11, 13

*Bouas v. Harley-Davidson Motor Co. Grp., LLC*,
  2020 WL 2334336 (S.D. Ill. May 11, 2020).................................24

*Brownell v. Alcon Ent., LLC*,
  2017 WL 11884028 (N.D. Ill. Dec. 19, 2017)........................ *passim*

*Bureau of Consumer Fin. Prot. v. Fifth Third Bank, N.A.*,
  2021 WL 534658 (N.D. Ill. Feb. 12, 2021) ........................ *passim*

*Concord Music Group, Inc. v. Anthropic PBC*,
  738 F. Supp. 3d 973 (M.D. Tenn. 2024)...........................13, 14, 17

*Cruz-Acevedo v. Unilever U.S., Inc.*,
  2016 WL 9460633 (D.P.R. Sept. 26, 2016)...................................24

*Curry v. Revolution Lab'ys, LLC*,
  949 F.3d 385 (7th Cir. 2020) .................................................6

*Dzananovic v. Bumble, Inc.*,
  2023 WL 4405833 (N.D. Ill. July 7, 2023)................................8, 12

*Ford-Reyes v. Progressive Funeral Home,*
  418 F. Supp. 3d 286 (N.D. Ill. 2019) .................................................................20

*Freeman v. 3Commas Techs. OU,*
  2024 WL 1880147 (N.D. Cal. Mar. 25, 2024) .....................................................16

*George & Co. LLC v. Target Corp.,*
  2021 WL 2948910 (N.D. Ill. July 14, 2021) .............................................. *passim*

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
  564 U.S. 915 (2011) ...............................................................................................7

*Greenspan v. MasMarques,*
  2024 WL 1258062 (D. Mass. Mar. 25, 2024) ...............................................15, 16

*Healthcare Dev. Partners LLC v. Signet Health Corp.,*
  2025 WL 904361 (N.D. Ill. Mar. 25, 2025) .....................................................7, 17

*Howell v. Bumble, Inc.,*
  2023 WL 6126492 (N.D. Ill. Sep. 19, 2023) .......................................................12

*Hungerstation LLC v. Fast Choice LLC,*
  2020 WL 137160 (N.D. Cal. Jan. 13, 2020) ........................................................14

*Ill. Comput. Rsch., LLC v. Harpercollins Publishers, Inc.,*
  2010 WL 4877501 (N.D. Ill. Nov. 22, 2010) .................................................26, 27

*Illinois v. Hemi Grp. LLC,*
  622 F.3d 754 (7th Cir. 2010) ...............................................................................10

*In re Extended Stay Hotel Antitrust Litig.,*
  2024 WL 5089159 (N.D. Ill. Dec. 12, 2024) ....................................24, 28, 29, 30

*In re Sheehan,*
  48 F.4th 513 (7th Cir. 2022) ....................................................................11, 15, 17

*Jaramillo v. DineEquity, Inc.,*
  664 F. Supp. 2d 908 (N.D. Ill. 2009) ....................................................21, 29, 30

*Justice v. Suno, Inc.,*
  No. 25-cv-11739 (D. Mass. filed June 14, 2025) ...............................................2, 4

*Kadrey v. Meta Platforms, Inc.,*
  788 F. Supp. 3d 1026 (N.D. Cal. 2025) .................................................................5

*Kazazian v. CNA Fin. Corp.,*
  2025 WL 2023249 (N.D. Ill. July 18, 2025) ........................................................19

*Leroy v. Great W. United Corp.*,
    443 U.S. 173 (1979)..............................................................................................19

*Martino v. Ochard Enters., Inc.*,
    2020 WL 6287400 (N.D. Ill. Oct. 27, 2020)......................................................20

*Matlin v. Spin Master Corp.*,
    921 F.3d 701 (7th Cir. 2019) ...................................................................8, 9, 14

*McReynolds v. Merrill Lynch & Co., Inc.*,
    694 F.3d 873 (7th Cir. 2012) ............................................................................21, 22

*Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co., Inc.*,
    8 F.3d 441 (7th Cir. 1993) ..................................................................................18

*Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*,
    623 F.3d 440 (7th Cir. 2010) ...........................................................................8, 11

*Muhammad v. State Farm Indem. Co.*,
    719 F. Supp. 3d 397 (D.N.J. 2024) ....................................................................22

*N. Grain Mktg., LLC v. Greving*,
    743 F.3d 487 (7th Cir. 2014) ...............................................................................6

*Native Am. Arts, Inc. v. Milne Jewelry Co., Inc.*,
    2006 WL 8461635 (N.D. Ill. June 16, 2006) .....................................................26

*NBA Props., Inc. v. HANWJH*,
    46 F.4th 614 (7th Cir. 2022) ..............................................................................10

*Nicholson v. Nationstar Mortg. LLC of Delaware*,
    2018 WL 3344408 (N.D. Ill. July 6, 2018)...................................................22, 23

*North v. Ubiquity, Inc.*,
    72 F.4th 221 (7th Cir. 2023) ..............................................................................17

*POET Rsch, Inc. v. Hydrite Chem. Co.*,
    2025 WL 2696411 (N.D. Ill. Sept. 22, 2025) ....................................................21

*Prevail Legal, Inc. v. Gordon*,
    2021 WL 1947578 (N.D. Cal. May 14, 2021) ....................................................15

*Ridge Gold Standard Liquors v. Joseph E. Seagram & Sons, Inc.*,
    572 F. Supp. 1210 (N.D. Ill. 1983) ....................................................................22

*Rosen v. Spirit Airlines, Inc.*,
    152 F. Supp. 3d 1055 (N.D. Ill. 2015) ...............................................................30

*Rotec Indus. Inc. v. Aecon Grp., Inc.*,
    436 F. Supp. 2d 931 (N.D. Ill. 2006) ....................................................................6

*Rsch. Automation, Inc. v Schrader-Bridgeport Int'l, Inc.*,
    626 F.3d 973 (7th Cir. 2010) ....................................................................21, 29

*Sassy, Inc. v. Berry*,
    406 F. Supp. 2d 874 (N.D. Ill. 2005) ....................................................................24

*Serlin v. Arthur Andersen & Co.*,
    3 F.3d 221 (7th Cir. 1993) ....................................................................21

*Shenzhen AJI Fashion Tech. Co. Ltd. v. WhaleCo Inc.*,
    2024 WL 2845974 (N.D. Ill. June 5, 2024) ....................................................................25, 27

*Simonian v. Hunter Fan Co.*,
    2010 WL 3975564 (N.D. Ill. Oct. 7, 2010) ....................................................................28

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) ....................................................................6, 7

*Telemedicine Sols. LLC v. WoundRight Techs., LLC*,
    27 F. Supp. 3d 883 (N.D. Ill. 2014) ....................................................................13

*Thompson v. Glob. Mktg. Rsch. Servs., Inc.*,
    2016 WL 233702 (E.D. Pa. Jan. 20, 2016) ....................................................................24

*Time Warner Cable, Inc. v. USA Video Tech. Corp.*,
    520 F. Supp. 2d 579 (D. Del. 2007) ....................................................................22

*Triple Up Ltd. v. Youku Tudou Inc.*,
    235 F. Supp. 3d 15 (D.D.C 2017) ....................................................................10

*Trippe Mfg. Co. v. Am. Power Conversion Corp.*,
    46 F.3d 624 (7th Cir. 1995) ....................................................................21

*uBID, Inc. v. GoDaddy Group*,
    623 F.3d 421 (7th Cir. 2010) ....................................................................7, 8, 12

*UMG Recordings, Inc. v. Archive*,
    2023 WL 8520587 (S.D.N.Y. Dec. 8, 2023) ....................................................................27

*Walden v. Fiore*,
    571 U.S. 277 (2014) ....................................................................8, 15, 17

*Willis v. Caterpillar Inc.*,
    199 F.3d 902 (7th Cir. 1999) ....................................................................25

*Wright v. Walden Univ., LLC*,
    2017 WL 1435717 (D. Minn. Apr. 21, 2017) ........................................................22, 23, 24

## STATUTES

735 ILCS 5/2-209(c) ........................................................................................................6

17 U.S.C. § 106(2) ...........................................................................................................5

28 U.S.C.
    § 1391 ........................................................................................................................18
    § 1391(b) .........................................................................................................2, 18, 25
    § 1391(b)(1) ..............................................................................................................25
    § 1391(b)(2) .................................................................................................18, 20, 25
    § 1400 ........................................................................................................................18
    § 1400(a) .........................................................................................................2, 18, 25
    § 1404(a) ...............................................................................................................*passim*
    § 1406(a) ...................................................................................................................21
    § 1631 ........................................................................................................................17

Digital Millenium Copyright Act § 1201 ........................................................................4

## RULES

Fed. R. Civ. P.
    12(b)(2) ...........................................................................................................1, 6, 17
    12(b)(3) ............................................................................................................1, 2, 6

## OTHER AUTHORITIES

Jay E. Grenig & William C. Gleisner, III, *eDiscovery & Digital Evidence* § 3:63
    (2025) ........................................................................................................................11

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and (b)(3), Defendant Suno, Inc. moves to dismiss for lack of personal jurisdiction and improper venue; alternatively, Suno seeks dismissal or a stay pursuant to the first-to-file rule, or transfer to the District of Massachusetts under 28 U.S.C. § 1404(a).

## I.      INTRODUCTION

This case does not belong in the Northern District of Illinois. Plaintiffs filed a putative nationwide class action against a Massachusetts-based company that alleges no meaningful ties to Illinois or this District while two substantially overlapping actions—one an earlier-filed putative class action—are already pending in the District of Massachusetts. The First Amended Complaint ("FAC") concedes Suno's principal place of business is in Massachusetts yet still fails to allege jurisdictionally relevant facts specifically connecting Suno or its conduct to Illinois, let alone to this District. Plaintiffs' claims turn on Suno's acquisition, maintenance, and use of audio and lyric files to train its artificial intelligence ("AI") tool—and the process by which that tool generates original music, Dkt. 17 ("FAC") ¶¶ 70–123—but the FAC does not sufficiently allege that Suno undertook any of that conduct in Illinois. Plaintiffs' ancillary claims based on far-fetched theories of liability do not excuse their forum-shopping. There is no legal basis to permit this case to proceed here. The Court should dismiss this case, stay it pending resolution of the Massachusetts class action, or, alternatively, transfer it to the District of Massachusetts.

After Suno moved to dismiss the initial complaint for lack of personal jurisdiction and improper venue, Plaintiffs filed the FAC, which attempts to remedy the defects in its personal jurisdiction and venue allegations. But the dispositive issue remains the same: there is no adequate nexus between Illinois and Plaintiffs' claims. The FAC narrows in on theories of jurisdiction that— even accepting the facts alleged as true—do not subject Suno to jurisdiction in Illinois. Although the FAC identifies various ways Illinois residents can interact with Suno's web products, at

bottom, the FAC still describes a uniform, nationally-available service accessible to users everywhere that was not specifically marketed to or uniquely directed at Illinois users.

Additionally, the FAC's new "Illinois-routing" theory rests on allegations that Suno's third-party vendor routed web traffic emanating from Illinois through Illinois-based servers before sending it on to Suno's servers. That theory fails because the personal jurisdiction inquiry is defendant-focused and requires well-pleaded claims of suit-related, forum-directed activity *by Suno*. Finally, Plaintiffs lean on alleged collection of Illinois residents' biometric information and corresponding economic effects in Illinois. Even accepting that allegation as true, Plaintiffs yet again fail to establish that Suno purposefully directed any suit-related conduct at Illinois.

Venue in this District is equally improper. In a copyright action, venue is proper where the defendant resides or "may be found," which for a corporation means a district in which it is subject to personal jurisdiction. *See* 28 U.S.C. § 1400(a). Plaintiffs cannot meet that standard here. Nor can they satisfy the alternative, general venue provision, *id.* § 1391(b), which looks to where a substantial part of the operative events occurred; the FAC fails to plead any relevant acts in this District. The necessary consequence is dismissal for improper venue under Rule 12(b)(3).

Even if personal jurisdiction and venue were proper, this later-filed case should be dismissed or stayed under the first-to-file doctrine given the ongoing, substantially similar putative class action in *Justice v. Suno, Inc.*, No. 25-cv-11739 (D. Mass. filed June 14, 2025). Both actions target the same alleged conduct by the same defendant, advance materially overlapping nationwide copyright infringement theories about Suno's generative AI models and alleged use of copyrighted works, and seek the same forms of relief. The first-to-file rule—which does not require identical pleadings—exists to conserve judicial resources, avoid duplicative litigation and piecemeal appeals, and prevent inconsistent rulings. Those concerns are squarely presented here.

Alternatively, if the Court does not stay or dismiss, it should transfer this case to the District of Massachusetts under 28 U.S.C. § 1404(a). Venue is proper there, and both convenience and the interests of justice overwhelmingly favor transfer: Suno is headquartered in Massachusetts; the key witnesses and documentary evidence are centered there; and related litigation is already pending in that District, which is familiar with the overlapping facts and governing law. Transfer offers the same judicial economy benefits as the first-to-file rule while also allowing a controversy involving a Massachusetts-based company to be adjudicated in its home forum. The District of Massachusetts is the more convenient and appropriate forum.

Suno respectfully requests dismissal for lack of personal jurisdiction or improper venue; alternatively, dismissal or a stay under the first-to-file rule, or transfer to the District of Massachusetts.

## II.     BACKGROUND AND FACTS ALLEGED

Suno is a Massachusetts-based generative AI company that allows users to create original music in seconds using text prompts. FAC ¶¶ 41, 49–50. From its public launch in July 2023, *id*. ¶ 49, Suno's AI tool has democratized the creative process, allowing artistic experimentation by musical novices, seasoned songwriters, and musicians alike and facilitating the creation of new expressive works. Suno's model was constructed by analyzing tens of millions of examples of different kinds of music and, based on that analysis, derived statistical insights about music. *Id*. ¶ 70. When users enter a prompt asking for a particular genre, instrument, or other specified elements, Suno generates new music based on that learning. *Id*. ¶¶ 50, 70.

In June 2024, the major record labels sued Suno in the District of Massachusetts, alleging that the way Suno trained its AI model constituted copyright infringement. *UMG Recordings, Inc. v. Suno, Inc.*, No. 24-cv-11611, ECF No. 1 (D. Mass. June 24, 2024) ("*UMG* Case"; "*UMG* Compl.") (Ex. A hereto). Like Plaintiffs here, the *UMG* plaintiffs assert Suno infringed their

copyrights by using their music to teach the model patterns about what different types of music sound like, which then form the parameters Suno uses to generate new songs. FAC ¶¶ 1, 6; *UMG Compl.* ¶¶ 9, 41, 43–44. The *UMG* plaintiffs have moved to amend to add a claim under Section 1201 of the Digital Millenium Copyright Act ("DMCA") for the alleged circumvention of online access restrictions by downloading music from a streaming platform, *UMG* Case, ECF Nos. 134, 134-3 (D. Mass. Oct. 8. 2024) ("*UMG* Proposed Am. Compl.") (Exs. B, C hereto)—a claim Plaintiffs likewise assert here, FAC ¶¶ 205–215.

In June 2025, a collection of independent artists filed a tag-along suit in the District of Massachusetts on behalf of a putative nationwide class. *Justice v. Suno, Inc.*, No. 25-cv-11739, Compl., ECF No. 1 (D. Mass. June 14, 2025) ("*Justice* Case"). Like the *UMG* plaintiffs, the *Justice* plaintiffs allege that Suno violated the Copyright Act by copying their music to train its model. *See Justice* Case, ECF No. 27 ("*Justice* Am. Compl.") ¶ 130 (Ex. D hereto). The *Justice* plaintiffs further allege Suno's model violates the Copyright Act by producing compositions too similar to the asserted works, assert a DCMA Section 1201 claim for alleged circumvention of access controls, and allege that Suno violated an out-of-state consumer protection law by using their "distinctive identifiers," including voices, to create outputs that "misappropriate their brands and identifies [sic]" to compete with the plaintiffs' and putative class members' works. *Id.* ¶¶ 452–455, 462–466, 479–483. The *Justice* case was assigned to District Judge Saylor and Magistrate Judge Levenson, who were already overseeing the *UMG* case. *See Justice* Case, ECF No. 4.

In both Massachusetts cases, Suno has raised a fair use defense to the copyright infringement claims, the same defense that Suno will assert in response to Plaintiffs' claims here. *See UMG* Case, ECF No. 28 at 5 (asserting fair use defense); *Justice Case*, ECF No. 32 at 4 (noting Suno's intent to assert fair use defense); *see also Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007,

1033 (N.D. Cal. 2025) (holding use of copyrighted works to train large language model was fair use); *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1060 (N.D. Cal. 2025) (same); *cf.* FAC ¶¶ 109–123 (assuming Suno will likely assert a fair use defense and attempting to plead around it). That defense will be a primary focus of each of these cases.

Plaintiffs here—another group of independent musicians and songwriters from California, Illinois, and Georgia who hope to represent a nationwide class (and other overlapping classes) of independent artists—have jumped on the bandwagon with a reprise of the twice-pending challenge to "Suno's practice of systematically copying and storing works by independent artists to fuel a commercial, mass-market music generation engine." FAC ¶ 1; *see also UMG* Compl. ¶ 9, *Justice* Am. Compl. ¶ 130 (both making nearly identical claims of copying music "*en masse*" for training). In addition to repeating the *UMG* and *Justice* model training claims, Plaintiffs here also assert the same DMCA Section 1201 "access control" claim. *See UMG* Proposed Am. Compl. ¶¶ 110–117; *Justice* Am. Compl. ¶¶ 461–475; FAC ¶¶ 205–215. Plaintiffs' musical composition claims also echo the *Justice* plaintiffs' claims. *See, e.g.*, *Justice* Am. Compl. ¶ 450 (asserting claim under 17 U.S.C. § 106(2) based on musical compositions); FAC ¶¶ 170–172 (asserting reproduction and derivative works claims based on copyrighted lyrics); *id.* ¶¶ 181–184 (asserting reproduction and derivative works claims based on non-lyric musical compositions).

Even Plaintiffs' Illinois Biometric Information Privacy Act ("BIPA"), Illinois Right of Publicity Act ("IRPA"), and Illinois Uniform Deceptive Trade Practices Act ("UDPTA") claims are variations on the *Justice* plaintiffs' consumer protection claim. *See Justice* Am. Compl. ¶¶ 476–485; FAC ¶¶ 250–289. Implicitly acknowledge the original authors of their legal claims, Plaintiffs here conspicuously exclude the Massachusetts named plaintiffs (but not the absent putative class members) from their proposed class definitions and overlapping allegations. FAC ¶ 124. All three

5

complaints even cite some of the same alleged examples of the model generating outputs that allegedly sound similar to elements of pre-existing music. *Id*. ¶ 102; *Justice* Am. Compl. ¶¶ 274, 283; *UMG* Compl. ¶¶ 73–74.

Following Suno's filing of its motion to dismiss or transfer their original complaint, Dkt. 16, Plaintiffs filed the FAC to attempt to remedy the jurisdictional and venue-related deficiencies that Suno had identified.

## III.    LEGAL STANDARD

On Rule 12(b)(2) and 12(b)(3) motions to dismiss, the plaintiff bears the burden of establishing personal jurisdiction and proving that venue is proper. *See N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (personal jurisdiction); *Rotec Indus. Inc. v. Aecon Grp., Inc.*, 436 F. Supp. 2d 931, 933 (N.D. Ill. 2006) (venue). Although the court must view the pleadings and affidavits in a light most favorable to the plaintiff, Plaintiffs nonetheless must make a prima facie showing of jurisdictional facts and the court may examine facts outside the complaint. *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 393 (7th Cir. 2020).

Motions to transfer venue are governed by 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

## IV.    ARGUMENT

### A.    This Case Should Be Dismissed for Lack of Personal Jurisdiction

This Court lacks personal jurisdiction over Suno. To establish personal jurisdiction, Plaintiffs must plead facts alleging that exercising jurisdiction is consistent with federal due process principles and the Illinois long-arm statute. *See Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); *see also* 735 ILCS 5/2-209(c). Here, "the state statutory and federal constitutional

inquiries merge" because the Illinois long-arm statute permits the exercise of personal jurisdiction to the extent due process allows, so the Court need only determine whether exercising personal jurisdiction would violate Suno's due process rights. *Tamburo*, 601 F.3d at 700–01. Within that limit, the Court may exercise general or specific jurisdiction, but Plaintiffs fail to plead facts sufficient to show that either would be appropriate here.

### 1. Suno Is Not Subject to General Jurisdiction in Illinois

Plaintiffs do not allege that Suno is subject to general jurisdiction, and for good reason: Suno is not "at home" in Illinois. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). A corporate defendant is at home in the state where it is incorporated and in "the state where it principally conducts its business." *B.D. v. Samsung SDI Co., Ltd.*, 143 F.4th 757, 765 (7th Cir. 2025). Suno is incorporated in Delaware with its principal place of business in Massachusetts, where it is headquartered. FAC ¶ 41; *About*, SUNO, https://suno.com/about. Nor do Plaintiffs alternatively allege that Suno's contacts with Illinois are "so continuous and systematic as to render [it] essentially at home" there. *B.D.*, 143 F.4th at 765 (alteration in original). Although the FAC includes allegations that Suno "directed subscription commerce, interactive service performance, and delivery and dissemination of infringing and voice-simulative outputs into Illinois," *e.g.* FAC ¶ 45(a61), those allegations are not grounds for general jurisdiction; even a company's "extensive and deliberate" business dealings in a forum state "in the form of marketing and sales, and contracts with customers" do not render them "at home" there. *Healthcare Dev. Partners LLC v. Signet Health Corp.*, 2025 WL 904361, at *3 (N.D. Ill. Mar. 25, 2025) (citing *uBID, Inc. v. GoDaddy Group*, 623 F.3d 421, 426 (7th Cir. 2010)). Accordingly, Suno is not subject to general jurisdiction in Illinois.

### 2. Suno Is Not Subject to Specific Personal Jurisdiction in Illinois

Nor do Plaintiffs allege facts sufficient to establish specific personal jurisdiction. Due

process requires that a defendant have sufficient "minimum contacts" with the forum state and that the plaintiff's claims "arise out of" or are related to those defendant-forum contacts. *Walden v. Fiore*, 571 U.S. 277, 283–85 (2014). Specifically, Plaintiffs must allege that Suno "has purposefully directed [its] activities at the forum state or purposefully availed [it]self of the privilege of conducting business in" Illinois, and that "the alleged injury arises out of [Suno's] forum-related activities." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019).

The FAC does not allege that Suno "purposefully directed" its activities at or "availed" itself of Illinois. Rather, its new allegations merely establish that Suno operates an interactive web product accessible by users worldwide. For a defendant to be subject to specific jurisdiction in Illinois, it must do *more* to be said to have intentionally targeted or exploited the state's market. Under Seventh Circuit precedent, "[b]eyond simply operating an interactive website that is accessible from the forum state, a defendant must in some way *target* the forum state's market" or "deliberate[ly] and continuous[ly] exploit[]" the forum state's market "through its website as well as through other contacts with the state"—which requires more than mere fortuitous commercial transactions with Internet users. *be2 LLC v. Ivanov*, 642 F.3d 555, 558–59 (7th Cir. 2011); *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 446 (7th Cir. 2010); *see also uBID*, 623 F.3d at 427–29 (relying on both "GoDaddy's extensive marketing in Illinois and [its] sales to Illinois customers" to establish specific jurisdiction); *Dzananovic v. Bumble, Inc*., 2023 WL 4405833, at *4 (N.D. Ill. July 7, 2023) (Wood, J.) (relying on, *inter alia,* the defendants' "extensive marketing in Illinois" to establish specific jurisdiction). Plaintiffs have failed to adequately allege that Suno targeted or deliberately exploited the Illinois market in the requisite manner.

After reviewing Suno's prior motion to dismiss, Plaintiffs amended their complaint in an

effort to address the jurisdictional deficiencies that Suno identified. *Compare* Dkt. 1 ¶ 45, *with* FAC ¶ 45(a1)–(a61). The FAC adds new allegations directed at three specific theories of jurisdiction. *First*, Plaintiffs allege that Suno is subject to jurisdiction in Illinois because its service, including the paid version, is available to Illinois residents. *See* FAC ¶ 45(a1)–(a12), (a35). *Second*, Plaintiffs allege that Suno's web traffic is routed to Suno's servers (which Plaintiffs do not allege are in Illinois) through Illinois-based servers operated by Cloudflare. *See id.* ¶ 45(a17), (a52)–(a55). *Third*, Plaintiffs allege that Suno collects and uses Illinois residents' biometric information. *See id.* ¶ 45(a37), (a42), (a46). Even taking these allegations as true, they fail as a matter of law to establish that Suno is subject to jurisdiction in Illinois.

### a. Allowing Illinois residents access to Suno's product on the Internet does not establish personal jurisdiction in Illinois

Plaintiffs allege that Suno is subject to specific jurisdiction in Illinois because Suno makes its services available to consumers worldwide—including Illinois residents—through Suno's website, mobile app, and Microsoft and Amazon Alexa integrations. *See* FAC ¶ 45(a1)–(a7), (a51). Specifically, Plaintiffs allege that "Suno makes its generative AI music service and app available to users 'worldwide, including every state across the country,' thereby expressly including Illinois users as part of its intended customer base." *Id.* ¶ 45(a1); *see also id.* ¶ 45(a24). Apparently, under Plaintiffs' theory of jurisdiction, Suno is subject to specific jurisdiction in every U.S. state except where it takes action to geoblock that state's residents. *See id.* ¶ 45(a7). That is not the law.

Plaintiffs' allegations that Suno allowed Illinois residents to interact with its product on the Internet do not establish that it "purposefully directed [its] activities at" or "purposefully availed [it]self of the privilege of conducting business" in Illinois. *Matlin*, 921 F.3d at 706. As the Seventh Circuit has made clear: "If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not

be haled into court in that state without offending the Constitution." *be2*, 642 F.3d at 559; *see Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 760 (7th Cir. 2010) (emphasizing that courts should "ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive'"). Thus, it is certainly not the case that a defendant is subject to personal jurisdiction in a state simply for failing to *restrict* a state's residents from accessing its website, via geoblocking or other methods. Such a rule would improperly "replace the purposeful availment standard with a requirement of purposeful *avoidance.*" *Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 24–26 (D.D.C 2017) (holding that defendant's failure to geoblock its website from being viewed in a particular location did not constitute purposeful availment as a matter of law, and reasoning that "[t]o hold otherwise would invite a sea change in the law of internet personal jurisdiction"). Rather, a defendant must "purposefully direct[]" conduct into a forum state by "structuring of its own activities so as to target" the market there. *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624 (7th Cir. 2022); *see also Triple Up*, 235 F. Supp. 3d at 25.

Here, there are no allegations that Suno purposefully targeted Illinois users. For example, Plaintiffs do not allege that Suno specifically marketed, geotargeted, or directed particular product features to Illinois residents such that it can be said that it "structur[ed] … its own activities so as to target" Illinois. *NBA Props.*, 46 F.4th at 624. Rather, the FAC alleges that Suno offers a geographically-neutral product to users nationwide under the same, uniform terms of use. *See* FAC ¶ 45(a1) (alleging Suno makes its services " available to users '*worldwide, including every state across the country*'" (emphasis added)); *id.* ¶ 45(a24) ("Suno's *uniform terms* [of service] reflect Suno's intent to contract *with residents of every state*, including Illinois." (emphasis added)).

Plaintiffs' various allegations about the ways in which Illinois users can interact with

Suno's product—some of which may result in content being directed to their devices—are also insufficient to establish personal jurisdiction. *See, e.g.*, FAC ¶ 45(a1)–(a14), (a17)–(a18). That interaction happens whenever an Illinois resident passively browses any website, which necessarily results in content from that site being at least temporarily cached on the user's computer or mobile device. *See* Jay E. Grenig & William C. Gleisner, III, *eDiscovery & Digital Evidence* § 3:63 (2025). And, regardless, the Seventh Circuit has declined to use a website's interactivity alone as a basis for personal jurisdiction. *See be2*, 642 F.3d at 558 ("Courts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'"); *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) ("Having an 'interactive website' (which hardly rules out anything in 2014) should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible. To hold otherwise would offend 'traditional notions of fair play and substantial justice.'"). That Illinois residents have the ability to use certain features on Suno's website or mobile app—features that are equally available to users in any state—does not show that *Suno* purposefully directed or availed itself of Illinois. Those requirements "focus on the acts and activities *of the defendant*," and thus "specific personal jurisdiction cannot depend solely on the actions of the plaintiff or third parties." *In re Sheehan*, 48 F.4th 513, 522–23 (7th Cir. 2022) (emphasis added).[1]

Plaintiffs' allegations also do not establish that Suno has "deliberate[ly] and continuous[ly] exploit[ed]" the Illinois market. *Mobile Anesthesiologists*, 623 F.3d at 446. While Plaintiffs allege

---

[1] For the same reason, the fact that Illinois residents may transmit materials *to* Suno does not establish personal jurisdiction. *See, e.g.*, FAC ¶ 45(a19)–(a20).

that Suno has Illinois users, including paid subscribers, *see* FAC ¶ 45(a26), (a35), they do not point to any conduct by Suno indicating that Suno "deliberately" sought out users in Illinois.

This Court's decision in *Dzananovic* illustrates the sort of facts that might be sufficient to establish deliberate and continuous exploitation of the Illinois market, but that are not alleged here. In that case, this Court's determination that Illinois had specific jurisdiction over the operator of an online dating platform was not based solely on the dating application's user base and resulting revenue. 2023 WL 4405833, at *3. Rather, the Court focused on Bumble's efforts to specifically target Illinois users through "extensive" in-state marketing and advertising efforts and other geotargeting. *Id*. at *4. The *Dzananovic* complaint alleged extensive Chicago-targeted marketing including: local billboards, verified "Bumblespot" locations, happy hours and prize drawings, a sponsored booth at Lollapalooza, website features highlighting Chicago success stories and couples, and campus ambassadors at Chicago universities. *Id.* at *3–4; *see also uBID,* 623 F.3d at 428 (noting that the defendant's marketing campaign included placing physical ads in Illinois venues); *Howell v. Bumble, Inc.*, 2023 WL 6126492, at *9 (N.D. Ill. Sep. 19, 2023) (highlighting the Chicago-specific marketing events and "online content encouraging Chicagoans to use the app"). No similar in-state marketing is alleged here.

And unlike the circumstances in *uBID*, Plaintiffs do not identify high-profile nationwide advertising through which Suno "imprinted itself on the national consumer consciousness," and that Illinois residents could not avoid. 623 F.3d at 424. In that case, the defendant launched a series of television advertisements featuring celebrities that "aired throughout the country with great frequency, including during the last six Super Bowl broadcasts," and "stamped [its logo] on driver Danica Patrick's race car and golfer Anna Rawson's hat." *Id*. Based on this evidence of "extensive national advertising," the court concluded that the defendant "intended to reach as large an

audience as possible," including potential Illinois customers. *Id.* at 427–28. The FAC, by contrast, does not allege that Suno engaged in any high-profile nationwide advertising; rather, any Illinois residents that might have become users of Suno's platform "may have done so unilaterally by stumbling across the website." *be2*, 642 F.3d at 559; *see also Telemedicine Sols. LLC v. WoundRight Techs., LLC*, 27 F. Supp. 3d 883, 900–01 (N.D. Ill. 2014) (no personal jurisdiction where alleged internet contact, including marketing efforts, was not "targeted or aimed at Illinois, or prompted any more than happenstance interactions with Illinois residents or businesses").[2] Because Plaintiffs do not sufficiently allege that Suno "deliberately targeted or exploited the Illinois market," its mere operation of a website accessible by Illinois residents is insufficient to establish specific personal jurisdiction. *be2*, 642 F.3d at 559.

The court's decision in *Concord Music Group, Inc. v. Anthropic PBC*, 738 F. Supp. 3d 973 (M.D. Tenn. 2024), is also instructive. In *Concord*, music publishers brought infringement claims against an AI model developer, Anthropic. *Id.* at 978–79. Relying on *Advanced Tactical* (among other cases), the court held that the plaintiffs had not "met their burden to show that Anthropic intentionally reached out to Tennessee customers for business, said anything on its website to target Tennessee business specifically, or deliberately interacted with Tennessee residents in a meaningful way beyond 'random or fortuitous events' of users interacting with [Anthropic's AI product] … while in Tennessee." *Id.* at 988. *Concord*'s reasoning is squarely applicable here.

*Concord* likewise rejected the contention that alleged infringing outputs accessible in the forum could establish purposeful availment, explaining that the plaintiffs' argument "that Anthropic purposefully availed itself of Tennessee 'by unlawfully reproducing, distributing, and

---

[2] Plaintiffs' fact-bare references to Suno's "nationwide marketing reach" (FAC ¶ 45(a35)–(a36)) are not at all comparable to the facts alleged in *uBID*—either in form or substance.

displaying infringing copies of [their] works to users in Tennessee' … is simply another way of saying users can access Anthropic's Claude AI models while in Tennessee." *Id.* at 989. The court concluded, again, that the plaintiffs had not shown that "Anthropic purposefully availed itself of Tennessee merely because users can access Claude in Tennessee and Claude can output content related to Tennessee upon request." *Id.* This Court should reach the same conclusion here, particularly where—unlike in *Concord*—Plaintiffs do not even identify any specific allegedly infringing content outputted to a Suno user in Illinois.

> **b.    A third-party security vendor's choice of server location for routing certain web-traffic does not establish personal jurisdiction in Illinois**

This Court should reject Plaintiffs' attempt to manufacture specific jurisdiction by virtue of where Suno's security vendor, Cloudflare, routes web-traffic coming out of Illinois. Plaintiffs allege that for security and other purposes, Suno uses the vendor Cloudflare to route Illinois-based web-traffic first through the nearest Cloudflare infrastructure—which Plaintiffs allege is located in Illinois—before sending it on to Suno's servers—which Plaintiffs *do not* allege are in located Illinois. *See* FAC ¶ 45 (a1)–(a3), (a16)–(a17), (a51)–(a55). As a result, an Illinois-based user may see their traffic being routed through IP addresses associated with servers located in Chicago. *See id.* To be clear, Plaintiffs do not allege that Cloudflare routes *all* of Suno's web-traffic through Illinois, or that Suno has any involvement in deciding the locations of the servers that Cloudflare uses for its routing web-traffic emanating from Illinois. Taking Plaintiffs' allegations as true solely for the purpose of this motion, they are insufficient to confer specific jurisdiction over Suno.

The fact that a defendant's *third-party vendor* has some servers located in a forum state does not compel a finding that the defendant "purposefully directed [its] activities at the forum state or purposefully availed [it]self of the privilege of conducting business in" that state. *Matlin*, 921 F.3d at 706; *see Hungerstation LLC v. Fast Choice LLC*, 2020 WL 137160, at *5 (N.D. Cal.

Jan. 13, 2020) ("[T]he Court has not located[] any case where the location of third-party servers, as opposed to servers affiliated with one of the parties, was sufficient to satisfy purposeful direction"; declining to extend jurisdiction over defendant notwithstanding allegations that defendant knew the third party servers were located in California); *Prevail Legal, Inc. v. Gordon*, 2021 WL 1947578, at *5 (N.D. Cal. May 14, 2021) ("The location of the server owned by GitHub, a third party, does not establish personal jurisdiction. Courts in this circuit have held that the mere location of a third party or its servers is insufficient to give rise to personal jurisdiction." (collecting cases)). Because purposeful direction or purposeful availment "focus[es] on the acts and activities of the defendant," "specific personal jurisdiction cannot depend solely on the actions of … third parties." *In re Sheehan*, 48 F.4th at 522–23. As the Supreme Court has recognized, "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Walden*, 571 U.S. at 286, 291. Those limiting principles are highly relevant here. Pursuant to Plaintiffs' allegations (and the facts on the ground), the location of the physical servers to which Cloudflare directs web-traffic is determined by the location of the *user* who happens to be accessing Suno's services—not any decision made by Suno. *See* FAC ¶ 45(a1)–(a3), (a16)–(a17); Marek Majkowski, *Cloudflare Servers don't own IPs anymore - so how do they connect to the Internet?*, The Cloudflare Blog (Nov. 25, 2022), https://blog.cloudflare.com/cloudflare-servers-dont-own-ips-anymore. This is the epitome of a "random, fortuitous, or attenuated" contact that cannot support specific jurisdiction. *See Walden*, 571 U.S. at 286.[3]

It is not surprising, then, that courts considering the issue have refused to find that a defendant was subject to a state's jurisdiction based on Cloudflare server locations. In *Greenspan*

---

[3] Plaintiffs' allegations that Illinois residents' Amazon devices may also rely on Amazon Web Services' infrastructure in the Chicago area (FAC ¶ 45(a20)) are insufficient to establish personal jurisdiction for the same reason.

*v. MasMarques*, 2024 WL 1258062, at *11 (D. Mass. Mar. 25, 2024), the court dismissed the suit for lack of personal jurisdiction despite allegations that, depending on the user's location, Cloudflare might route web-traffic through, and provide users an IP address associated with, a Cloudflare data center in Boston. *Id.* The plaintiff argued that by "contracting with Cloudflare, the [defendants] purposefully availed themselves to all states, including Massachusetts, where Cloudflare hosts data centers regardless of whether the [defendants] knew of those locations or whether Cloudflare uses the Massachusetts data center to route or store requests or data specific to the [defendants'] website." *Id.* The court rejected the argument, explaining that "the mere possibility that the [defendants] may be providing users with IP addresses through a data center in Boston is not the sort of specific and purposeful targeting that would amount to purposefully availing themselves to Massachusetts." *Id.*; *see also Freeman v. 3Commas Techs. OU*, 2024 WL 1880147, at *2 (N.D. Cal. Mar. 25, 2024) (concluding that the presence of Cloudflare's servers in the forum state were inadequate to establish jurisdiction).

The FAC alleges third-party, user-location-driven routing by Cloudflare, *not* Illinois-focused conduct by Suno, and thus fails to allege facts establishing jurisdiction over Suno.

### c. Broad allegations of unspecified biometric data collection does not subject Suno to personal jurisdiction in Illinois

Finally, Plaintiffs' allegation that Suno "collected, captured, processed, stored, and commercially used" Illinois residents' biometric information "through its AI systems," is also an insufficient contact for purposes of personal jurisdiction. FAC ¶ 45(a46); *see also id*. ¶¶ 47, 257, 276. Even assuming this alleged conduct occurred, Suno's principal place of business is Massachusetts—not Illinois. *See About*, SUNO, https://suno.com/about (stating Suno is headquartered in Cambridge, MA and has three offices, none in Illinois); *see also* Secretary of the Commonwealth of Massachusetts, Corporations Division, Business Entity Summary: Suno, Inc.,

16

https://corp.sec.state.ma.us/CorpWeb/CorpSummary.aspx?sysvalue=AlSmyL5.

WK7OtdunBXElsHeXzrn7re21chpUDYiu0YA- (listing Suno's "principal" office in Cambridge, MA). Nor are there any allegations that Suno uniquely targeted the biometric data of Illinois residents, or collected data from within the state. Rather, Plaintiffs allege that Suno collected all music—and any voice data within—that was publicly-available from online sources. FAC ¶ 71. Therefore, Plaintiffs do not allege the jurisdictional facts necessary to support personal jurisdiction.

Plaintiffs' allegation that Suno's "exploitation of [Illinois-based artists'] works and voices is commercially felt in Illinois markets where those Plaintiffs work, perform, and license" does not supply those additional requisite facts. FAC ¶ 45(a42); *see also id*. ¶¶ 47(a27), 257, 276. Even assuming the truth of those allegations, the Seventh Circuit has recognized that "injury to a forum resident, even if predictable, is not a sufficient connection to the forum." *In re Sheehan*, 48 F.4th at 524. This Court cannot exercise personal jurisdiction on this basis because focusing on allegations of harm to plaintiffs in the forum state improperly "allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Walden*, 571 U.S. at 289. And "it is not enough that the defendant took some action that ultimately had an effect on the plaintiff in the forum." *In re Sheehan*, 48 F.4th at 523. Therefore, this action should be dismissed under Rule 12(b)(2) for a lack of personal jurisdiction.[4]

---

[4] While 28 U.S.C. § 1631 obligates this Court to transfer this case to a proper forum if it finds that transfer rather than dismissal for lack of jurisdiction is in the interests of justice, that is not the case here. Indeed, "[i]f a plaintiff may, on its own, refile its case in a proper forum, 'the interests of justice' do not demand transfer." *North v. Ubiquity, Inc.*, 72 F.4th 221, 228 (7th Cir. 2023). There is nothing preventing Plaintiffs from refiling in the District of Massachusetts. *See Healthcare Dev. Partners LLC*, 2025 WL 904361, at *6 (declining to transfer under § 1631 because the statute-of-limitations did not foreclose the plaintiff from refiling in the proper forum). And unlike in *Concord*, 738 F. Supp. 3d at 991, Plaintiffs do not have a pending, time-sensitive motion for preliminary injunction that dismissal could impact.

### B. This Case Should Be Dismissed for Improper Venue

Because Plaintiffs' allegations also lack any meaningful nexus to this District, venue is improper under 28 U.S.C. §§ 1391(b) and 1400(a). Section 1400 is the exclusive venue provision governing copyright infringement actions. *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 n.2 (2013) (identifying Section 1400 as establishing the "proper venue for copyright and patent suits," and Section 1391 as governing "where a more specific venue provision does not apply"). Under Section 1400, venue is proper only "in the district in which the defendant or his agent resides or may be found." *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co., Inc.*, 8 F.3d 441, 443 (7th Cir. 1993). A defendant in a copyright action "may be found" in a district where he is subject to personal jurisdiction. *See id.* at 445 (venue requires that the "defendant's amenability to personal jurisdiction … relate to the judicial district in which the action was filed"). Because Suno does not "reside" in Illinois, let alone this District, and personal jurisdiction is otherwise lacking, *see supra* at 6–11, venue is not proper under Section 1400.

To the extent that Section 1391(b)'s general venue provisions apply, Plaintiffs fail to allege that venue lies thereunder. Section 1391(b) provides for venue in a district (1) "in which any defendant resides," (2) where "a substantial part of the events or omissions giving rise to the claim occurred," or (3) where personal jurisdiction over any defendant lies if there is no district in which the claim can otherwise be brought. As to prongs one and three, again, Suno does not "reside[]" in this District, and Plaintiffs do not adequately allege that this Court may exercise personal jurisdiction over Suno. *See supra* at 6–11.

That leaves only the second prong, which considers whether "a substantial part of the events or omissions giving rise to [Plaintiffs'] claim[s] occurred," 28 U.S.C. § 1391(b)(2), in this District. Under this inquiry, courts assess "whether a substantial portion of the activities giving rise to the claim occurred in a particular district." *Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*,

80 F. Supp. 3d 870, 877 (N.D. Ill. 2015). This substantiality standard is met if "the events that took place in Illinois were part of the historical predicate for the instant suit," which also requires that they bear more than "some tangential connection" to a plaintiff's chosen venue. *Id.* at 877, 880. Additionally, this analysis is "informed by concerns regarding the 'availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* the plaintiff).'" *Kazazian v. CNA Fin. Corp.*, 2025 WL 2023249, at *4 (N.D. Ill. July 18, 2025) (quoting *Leroy v. Great W. United Corp.*, 443 U.S. 173, 185 (1979)). Ultimately, Plaintiffs' venue allegations, which boil down to consumers using Suno's platform in Illinois and certain Plaintiffs allegedly experiencing harm in this District, fail to satisfy this test.

*First*, Plaintiffs' state law claims center on Suno's development, training, and operation of its AI models—activities emanating from Suno's principal place of business in Massachusetts, *see* FAC ¶ 41. Specifically, Plaintiffs' allegations generally pertain to Suno's design of its platform, available platform features, and the provision of its platform to users, including to Illinois users. *See id.* ¶ 47(a17)–(a26). But Suno's AI model is developed and trained at its headquarters in Massachusetts, with potential activity in California or New York—not in this District. *See About,* Suno, https://suno.com/about; *see also Jobs*, Suno, https://jobs.ashbyhq.com/suno.

*Second*, Plaintiffs' allegations that Suno users access and utilize the platform in Illinois and that Suno derives revenue from those users, FAC ¶ 47(a17)–(a18), (a21)–(a23), (a43), are irrelevant to the venue analysis because they do not form "the historical predicate for the instant suit." *Allstate*, 80 F. Supp. 3d at 877. Plaintiffs' state law claims are not directly predicated upon third parties' use of Suno's AI platform, but instead target Suno's alleged collection, copying, and commercial exploitation of Plaintiffs' unique identifiers, such as voiceprints and voice tags, through its AI tool. FAC ¶¶ 47(a49), 254–255, 269, 283. Again, as explained, Suno is a

Massachusetts-based company, *see supra* at 3, 17, and Plaintiffs plead no facts suggesting that the development, training, and operation of Suno's AI model—and the decisions directing those activities—occurred in Illinois. Importantly, and as courts in this District have held, venue is improper if the acts forming the basis for the cause of action took place outside of the District. *See, e.g.*, *Martino v. Ochard Enters., Inc.*, 2020 WL 6287400, at *1, *6 (N.D. Ill. Oct. 27, 2020) (venue improper for unjust enrichment and conversion claims because the alleged enrichment and conversion of plaintiff's copyright occurred outside the District, even assuming the plaintiff created his music in Illinois); *Allstate*, 80 F. Supp. 3d at 879 (venue improper where nearly all events occurred in Florida; communications and payments from Illinois were insufficient).

Similarly, Suno's alleged collection and commercial exploitation of Illinois residents' unique identifiers—the events giving rise to Plaintiffs' state law claims—would have occurred outside this District. Therefore, Plaintiffs' allegations that third parties access and use Suno's platform in this District provides only a "tangential connection" to the forum, which is insufficient to support venue here. *Allstate*, 80 F. Supp. 3d at 880.[5]

Nor do Plaintiffs' allegations that certain Illinois-based Plaintiffs feel commercial or economic harm in this District, FAC ¶ 47(a34)–(a36), (a50), remedy the deficiency. Because the Section 1391(b)(2) venue analysis "generally looks to the acts of the defendant, rather than those of the plaintiff," it is well settled that allegations of "economic harm" felt by a plaintiff in Illinois are insufficient for purposes of venue under this Section. *Allstate*, 80 F. Supp. 3d at 879 & n.3 (collecting cases); *see also Ford-Reyes v. Progressive Funeral Home*, 418 F. Supp. 3d 286, 291

---

[5] Plaintiffs also rely upon allegations regarding third-party servers and collection of customer data as providing a basis for venue in this Court. *See* FAC ¶ 47(a39)–(a47). However, like the personal jurisdiction analysis, those allegations are similarly deficient for venue purposes. Cloudflare—not Suno—chooses where to site its servers, *see supra* 15–17, and Suno's collection of customer data is suggestive only of the availability of its service to Illinois users. *See id*. In any event, these allegations provide no more than a "tangential connection" to the forum. *Allstate*, F. Supp. 3d at 880.

(N.D. Ill. 2019) ("It is not enough to allege that one of the Plaintiffs suffered harm in Illinois. Otherwise, a plaintiff could always have a home-court advantage."). So too here, this District is an improper venue, warranting dismissal. 28 U.S.C. § 1406(a).[6]

## C.  Alternatively, This Case Should Be Dismissed (or Stayed) Pursuant to the First-to-File Doctrine

Should this Court determine personal jurisdiction and venue are proper, it should nonetheless dismiss or stay this case pursuant to the first-to-file doctrine, which disfavors duplicative later-filed suits.[7] *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993). There is substantial overlap between the claims, parties, and relief requests in this case and the *Justice* case—filed in the District of Massachusetts months before this one. *See McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 889 (7th Cir. 2012). The duplicative nature of these cases and judicial economy interests warrant dismissal or stay of this later-filed action.

The first-to-file rule arises from district courts' "'inherent power to administer their dockets so as to conserve scarce judicial resources' by avoiding duplicative litigation." *Askin v. Quaker Oats Co.*, 2012 WL 517491, at *3 (N.D. Ill. Feb. 15, 2012) (quoting *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995)). When two similar actions are filed before two different federal judges, judicial economy favors a rule that allows only the first-filed case to proceed. *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 917 (N.D. Ill. 2009) (citing *Serlin*, 3 F.3d at 223). The doctrine also guards against the risk of "multiple conflicting decisions which

---

[6] Although the Court may dismiss this action for improper venue pursuant to Section 1406(a), it may in the interest of justice transfer the case under the same provision to the District of Massachusetts, a "district or division in which it could have been brought." *See POET Rsch, Inc. v. Hydrite Chem. Co.*, 2025 WL 2696411, at *8–9 (N.D. Ill. Sept. 22, 2025).

[7] The Court may also consider whether the first-to-file rule warrants transfer under 28 U.S.C. § 1404(a). *Infra* at 17–25. In that context, "where a case is filed first should weigh no more heavily" than other Section 1404(a) factors. *Rsch. Automation, Inc. v Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 982 (7th Cir. 2010).

may require separate appeals." *Time Warner Cable, Inc. v. USA Video Tech. Corp.*, 520 F. Supp. 2d 579, 585 (D. Del. 2007); *see also Muhammad v. State Farm Indem. Co.*, 719 F. Supp. 3d 397, 402 (D.N.J. 2024) (noting that the first-to-file rule "prevent[s] … conflicting judgments"). This danger is especially acute in the class action context, where courts "risk binding class members to inconsistent judgments" with respect to class certification and other issues. *Wright v. Walden Univ., LLC*, 2017 WL 1435717, at *2, *3 n.8 (D. Minn. Apr. 21, 2017). As such, "whenever [a lawsuit] is duplicative of a parallel action already pending in another federal court," district courts maintain broad discretion to dismiss a complaint. *McReynolds*, 694 F.3d at 888–89.

Two suits are duplicative if their "claims, parties, and available relief do not significantly differ." *Ridge Gold Standard Liquors v. Joseph E. Seagram & Sons, Inc.*, 572 F. Supp. 1210, 1213 (N.D. Ill. 1983). To be clear, the claims, parties, and available relief must "substantially overlap," but need not be identical. *Nicholson v. Nationstar Mortg. LLC of Delaware*, 2018 WL 3344408, at *5 (N.D. Ill. July 6, 2018). Each criterion is satisfied here.

First, the claims here and in *Justice* substantially overlap. To assess this factor, courts look to the substance of the claims and whether those claims depend on the same underlying core factual allegations, not to the specific statutory violations alleged in each case. *See Askin*, 2012 WL 517491, at *4; *Nicholson*, 2018 WL 3344408, at *7. Here, both cases are putative nationwide class actions based on the Copyright Act, the DMCA, and state-specific laws that take aim at Suno's development and operation of its music generative AI models. *Compare* FAC ¶¶ 1–2, 6, 70–71, 81–83, 124, 292*, with Justice* Am. Compl. ¶¶ 1, 25, 55, 94, 101, 120, 149, 430, 443, 465. Although the *Justice* plaintiffs and Plaintiffs here assert distinct state-law claims on behalf of state-specific subclasses, even those claims arise from the same core facts and accuse Suno of similar conduct. *Compare* FAC ¶¶ 261, 269, 283, 292*, with Justice* Am. Compl. ¶¶ 430, 479. Both sets of state law

claims are directed at Suno's alleged exploitation and misappropriation of artists' unique identifiers through its generative AI tool. *Compare* FAC ¶¶ 261, 269, 283, *with Justice* Am. Compl. ¶¶ 430, 479. In particular, the *Justice* plaintiffs' consumer protection claim is based on their allegation that Suno's model "appropriates" artists' "personas and brands" without their permission, including by reproducing producer tags and generating voice soundalikes. *Justice* Am. Compl. ¶¶ 278–282, 321; *see also id.* ¶ 480 (identifying misappropriation of "names, voices, and producer tags" as the gravamen of consumer protection claim). And Plaintiffs here base their BIPA, IRPA, and UDTPA claims on the same alleged misappropriations. FAC ¶¶ 254 (naming identifiable "recorded music or distinctive vocal tags" as biometric identifiers for BIPA claim), 269 (IRPA claim founded on use of class members' "voices and distinctive vocal attributes"), 283 (UDTPA claim based primarily on Suno's "passing off" producer or artist tags, thereby causing likelihood of customer confusion). "As long as the underlying facts are the same … the fact that the two complaints allege violations of different state laws is not enough to render them substantially dissimilar for purposes of the first-to-file analysis." *Askin*, 2012 WL 517491, at *4; *see also Wright*, 2017 WL 1435717, at *1–3 (concluding that state-law claims raised in state-specific subclasses did not preclude the first-to-file rule because "precise overlap" is not required).

Second, the parties substantially overlap. "When comparing the similarity of the parties in two putative class actions, the focus of the substantially similar inquiry is on the putative class members … ." *Nicholson*, 2018 WL 3344408, at *5. Here, both sets of plaintiffs seek to represent putative nationwide classes of musical composition and sound recording rightsholders. *Compare* FAC ¶ 124, *with Justice* Am. Compl. ¶ 430. That Plaintiffs exclude the *Justice* named plaintiffs from their proposed class does not address the fact that the putative classes are otherwise

overlapping.[8] And, again, the existence of state-specific subclasses does not negate these substantial similarities as the standard is substantial overlap rather than precise overlap. *Cf. Wright*, 2017 WL 1435717, at *3 (noting that "[t]here would be nothing to stop plaintiffs in all 50 states from filing separate nationwide class actions based upon their own state's law" if the first-to-file rule turned on the presence of different state-law claims).

Third, the relief sought in both cases substantially overlaps. For this factor, courts look to the types—not the specific theories—of relief requested. *See Askin*, 2012 WL 517491, at *5. Here, the relief requested in both courts is the same—class certification, declaratory relief, injunctive relief, damages, restitution, and disgorgement. FAC ¶ 301; *Justice* Am. Compl. at 64–65.

Ultimately, given the substantial similarities between both actions, allowing this suit to proceed on near-identical lines as *Justice* would be redundant and a waste of judicial resources.

### D. Alternatively, This Case Should Be Transferred to the District of Massachusetts

Alternatively, the Court should transfer this action to the District of Massachusetts.[9] When considering transfer under 28 U.S.C. § 1404(a), courts look to whether: "(1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice." *In re Extended Stay Hotel Antitrust Litig.*,

---

[8] Courts routinely reject attempts to gerrymander a class to avoid the first-to-file rule. *See, e.g.*, *Cruz-Acevedo v. Unilever U.S., Inc.*, 2016 WL 9460633, at *5 (D.P.R. Sept. 26, 2016) ("[Plaintiff] should not be permitted to 'gerrymander' her way around transfer."); *Bouas v. Harley-Davidson Motor Co. Grp., LLC*, 2020 WL 2334336, at *2 (S.D. Ill. May 11, 2020) (staying later-filed class action where the class definition in the first-filed case was amended to exclude plaintiffs in Illinois, in part because the court "suspect[ed]" that the amendment to the class definition was "motivated by a desire to permit multiple suits in multiple venues to proceed"); *Thompson v. Glob. Mktg. Rsch. Servs., Inc.*, 2016 WL 233702, at *3, 5 (E.D. Pa. Jan. 20, 2016) (similar).

[9] The Court may transfer under Section 1404(a) without first addressing personal jurisdiction or venue. *See Brownell v. Alcon Ent., LLC*, 2017 WL 11884028, at *2–3 (N.D. Ill. Dec. 19, 2017) (Wood, J.) (declining to fully analyze personal jurisdiction or venue issues where "it [was] clear that th[e] case should be transferred"); *Sassy, Inc. v. Berry*, 406 F. Supp. 2d 874, 875, 876 n.1, 877 (N.D. Ill. 2005) (similar).

2024 WL 5089159, at *1 (N.D. Ill. Dec. 12, 2024). Here, each factor favors transfer.

### 1. The District of Massachusetts Is the Proper Forum

First, venue is proper in the District of Massachusetts. That court has personal jurisdiction over Suno under Section 1400(a), as well as under each prong of Section 1391(b). The District of Massachusetts has jurisdiction under Section 1400(a) because Suno may be found in that District, where its principal place of business is located. *See supra* at 7. The District of Massachusetts is also "a judicial district in which any defendant resides" under Section 1391(b)(1) because Suno resides there.[10] *See supra* at 18–19. Venue thus properly lies in the District of Massachusetts. *See Willis v. Caterpillar Inc.*, 199 F.3d 902, 905 (7th Cir. 1999) (venue "was clearly proper" in district where defendant's principal place of business was located).[11]

### 2. The Private Interest Factors Collectively Favor Transfer to the District of Massachusetts

Because the District of Massachusetts is a proper venue, the Court should assess whether the private and public interest factors favor transfer. *See Shenzhen AJI Fashion Tech. Co. Ltd. v. WhaleCo Inc.*, 2024 WL 2845974, at *7 (N.D. Ill. June 5, 2024). Those factors include: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *Bureau of Consumer Fin. Prot. v. Fifth Third Bank, N.A.*, 2021 WL 534658, at *2 (N.D. Ill. Feb. 12, 2021) (Wood, J.). Each factor supports transfer here.

---

[10] Although Suno maintains that venue is improper in this District, the Court may nonetheless assume venue is proper in this District for purposes of a Section 1404(a) motion. *See Brownell*, 2017 WL 11884028, at *2 (assuming that venue was proper in the transferor forum).

[11] The District of Massachusetts is also "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred" under Section 1391(b)(2). Suno's alleged use of copyrighted recordings for training, any alleged removal or alteration of CMI during that process, the alleged ingestion and exploitation of independent artists' biometric information, and alleged use of artists' voices and attributes for commercial gain all took place at, or were directed from, Suno's headquarters in Massachusetts. *See supra* at 17, 19–20.

### a. The District of Massachusetts Is the Situs of Material Events

The material events occurred in Massachusetts, "where the defendant's decisions and activities that gave rise to the claim took place." *Id.*; *see also George & Co. LLC v. Target Corp.*, 2021 WL 2948910, at *3 (N.D. Ill. July 14, 2021). In infringement cases, courts look to the defendant's principal place of business and where the allegedly infringing product or service was developed because such cases "typically revolve around the alleged infringer's activities, employees, and documents." *Ill. Comput. Rsch., LLC v. Harpercollins Publishers, Inc.*, 2010 WL 4877501, at *2 (N.D. Ill. Nov. 22, 2010).

Plaintiffs' claims are premised on Suno's development, training, and operation of its generative AI models, and the strategic decisions directing those activities. FAC ¶¶ 1, 5–13, 70–111. Those activities emanate from Massachusetts, Suno's principal place of business and the location of the bulk of its leadership and engineering teams. *See supra* at 19; *infra* at 28. Courts routinely deem the transferee district the situs of material events where the defendants are headquartered and the alleged infringing product/service was produced there. *See Brownell*, 2017 WL 11884028, at *2–4; *Ill. Comput. Rsch.*, 2010 WL 4877501, at *2–3; *cf. Native Am. Arts, Inc. v. Milne Jewelry Co., Inc.*, 2006 WL 8461635, at *1, *4 (N.D. Ill. June 16, 2006).

By contrast, the FAC alleges no material facts tying Plaintiffs' claims to this District. Allegations that Suno offers its service in Illinois, that Illinois users can access its service, or that *some* class members reside in and suffered harm in Illinois, *see generally* FAC ¶ 47, are insufficient. *Cf. George & Co.*, 2021 WL 2948910, at *3 ("When products are sold nationwide, the fact that a product is sold in one district does not force the parties to litigate the case there."). Plaintiffs do not allege Illinois-specific conduct concerning Suno, a company headquartered in Massachusetts. *See* FAC ¶ 41; *About,* SUNO, https://suno.com/about. And even if they had, it would make no difference—it would simply be another way of saying users can access Suno's

nationwide website and tool while in Illinois—which is insufficient to establish an Illinois nexus. *See supra* at 9–11. Finally, Plaintiffs' contention that certain class members reside in and thus felt the harm of Suno's alleged conduct in Illinois is legally irrelevant to this analysis. *See George & Co.*, 2021 WL 2948910, at *3 (focusing on "the location of actions creating the injury, not the location of the injury itself").

Because this case has virtually no relationship to this District, and extensive ties to the District of Massachusetts, this factor strongly favors transfer.

> **b.    Transferring to the District of Massachusetts Maximizes Efficient, Effective Access to the Evidence and Witnesses Central to This Case and Minimizes Inconvenience**

Access to documents and witnesses, and party convenience, all favor transfer.

*First*, access to sources of proof favors Massachusetts. In infringement cases, "the place where the defendant's documents are kept weigh in favor of transfer to that location" because "the bulk of the relevant evidence usually comes from the accused infringer." *UMG Recordings, Inc. v. Archive*, 2023 WL 8520587, at *2 (S.D.N.Y. Dec. 8, 2023). The key documents and data concerning Suno's generative AI models are likely in Massachusetts, where Suno has its principal place of business. *See Shenzhen*, 2024 WL 2845974, at *7 (in copyright and trademark infringement case, this factor favored transfer because defendant's documents and evidence were likely located in district where defendant was located). This factor favors transfer.

*Second*, witness convenience strongly favors Massachusetts. In assessing this factor, courts do not simply count heads; rather, they rigorously examine "the nature and quality of the witnesses' testimony with respect to the issues of the case." *Bureau of Consumer Fin. Prot.*, 2021 WL 534658, at *3. Here, the most important witnesses are Suno's leadership and technical personnel—nearly all based in Massachusetts—and their testimony will address the design, development, training, operation, and business decisions concerning the accused models. *See Ill. Comput. Rsch.*, 2010

WL 4877501, at *4; *Bureau of Consumer Fin. Prot.*, 2021 WL 534658, at *3 ("When the testimony of senior management will likely be an important part of litigation, courts often find it appropriate to transfer the case to the district where those officers are located."). Suno executives Michael Shulman (CEO), Martin Camacho (President), and Georg Kucsko (CTO) are based in Massachusetts and possess relevant knowledge. *See* Mikey Shulman, LINKEDIN, https://www.linkedin.com/in/mikeyshulman/; Martin Camacho, LINKEDIN, https://www.linkedin.com/in/mcamac/; Georg Kucsko, LINKEDIN, https://www.linkedin.com/in/georgkucsko/. These individuals are also likely witnesses in the related *Justice* putative class action and *UMG* case in the District of Massachusetts; transferring avoids duplicative testimony and inconsistent rulings. *See In re Extended Stay*, 2024 WL 5089159, at *4; *George & Co.*, 2021 WL 2948910, at *4.

It is not necessarily more convenient for Plaintiffs' witnesses in a putative nationwide class action to appear in this District. *See In re Extended Stay*, 2024 WL 5089159, at *4 ("[B]ecause the class of putative plaintiffs are nationwide customers … there is no location that is obviously more or less convenient for Plaintiffs."). Two named plaintiffs do not even reside in Illinois. FAC ¶¶ 33, 38. And any inconvenience to Plaintiffs is significantly outweighed by the burden on Suno— headquartered in Massachusetts and already litigating substantially similar cases there—to defend parallel suits in different forums. *In re Extended Stay*, 2024 WL 5089159, at *5; *supra* at 22–25. In contrast, while *some* named Plaintiffs reside in Illinois, *see* FAC ¶¶ 14, 16, 20, 26, a plaintiff's convenience carries less weight in a putative nationwide class action where "replacement Plaintiffs are likely available" if needed. *In re Extended Stay*, 2024 WL 5089159, at *4. In sum, the evidence, witnesses, and party-convenience factors all support transfer.

### c. Plaintiffs' Choice of Forum Deserves Minimal or No Deference

Plaintiffs' choice of forum "will not defeat a well-founded motion to transfer." *Simonian*

*v. Hunter Fan Co.*, 2010 WL 3975564, at *2 (N.D. Ill. Oct. 7, 2010). Several legal tenets counsel against deferring to Plaintiffs' forum choice here. First, where, as here, Plaintiffs bring a nationwide class action, their choice of forum is entitled to minimal or no deference because the "named Plaintiffs choice of venue will not be the home venue for all plaintiffs and any venue selected is bound to be inconvenient to some plaintiffs." *Jaramillo*, 664 F. Supp. 2d at 914. Indeed, this District is not even home to all of the *named* Plaintiffs. FAC ¶¶ 33, 38.

Second, a plaintiff's forum choice is afforded "less deference … when another forum has a stronger relationship to the dispute or when the forum of plaintiff's choice has no significant connection to the situs of material events." *George & Co.*, 2021 WL 2948910, at *2. As explained, the claim-material events occurred in or were directed from Massachusetts. *See supra* at 17, 19–20. The general availability of Suno's nationwide service to Illinois residents does not compel litigation in this forum. *See George & Co.*, 2021 WL 2948910, at *3; *Brownell*, 2017 WL 11884028, at *3. The private interest factors overwhelmingly favor transfer, and the District of Massachusetts is clearly the more convenient forum.

### 3. The Public Interest Factors All Favor Transfer to the District of Massachusetts

The interests of justice likewise support transfer to Massachusetts. As part of this inquiry, courts examine "(1) docket congestion and likelihood to proceed to a speedy trial, (2) each court's relative familiarity with the relevant law, (3) the respective desirability of resolving controversies in each locale, and (4) the relationship of each community to the controversy." *George & Co.*, 2021 WL 2948910, at *5. Courts also consider "the judiciary's interest in trying related litigation together." *In re Extended Stay*, 2024 WL 5089159, at *5. These factors "may be determinative[.]" *Rsch. Automation*, 626 F.3d at 978.

*First*, the judiciary's interest in trying related litigation together strongly favors transfer,

particularly due to the substantially similar and earlier-filed *Justice* class action in the District of Massachusetts. *See Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1063–65 (N.D. Ill. 2015); *In re Extended Stay*, 2024 WL 5089159, at *6. Transfer promotes efficient discovery and motion practice and avoids inconsistent rulings. *Second*, docket congestion and speed to trial favor transfer. Although the current median time to disposition is comparable (7.4 months in D. Mass versus 7.1 months in N.D. Ill.), the median time to trial is much shorter in D. Mass (29 months versus 56.4 months). *U.S. District Court—Judicial Caseload Profile* (June 30, 2025), https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile0630.2025.pdf; *see George & Co.*, 2021 WL 2948910, at *5. *Third*, familiarity with the facts and law also favors transfer because Judge Saylor is presiding over both the *Justice* and *UMG* litigations. *Cf. Jaramillo*, 664 F. Supp. 2d at 916–17.

Finally, Massachusetts has the stronger interest in and connection to this dispute given Suno's headquarters and the related pending actions there. This outweighs generalized interests asserted for Illinois based on alleged resident harm. *See* FAC ¶ 45(a57)–(a58); *cf. Brownell*, 2017 WL 11884028, at *4; *George & Co.*, 2021 WL 2948910, at *6; *Bureau of Consumer Fin. Prot.*, 2021 WL 534658, at *5. In sum, transfer is warranted because the District of Massachusetts is a proper venue and the private interest and public interest factors collectively favor transfer.

## V.     CONCLUSION

Suno respectfully requests that the Court dismiss or stay this case or, in the alternative, transfer the case to the District of Massachusetts.

Date: January 13, 2026

Respectfully submitted,

/s/ Gary Feinerman

Gary Feinerman (ARDC No. 6206906)
**LATHAM & WATKINS LLP**
330 N. Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
Email: gary.feinerman@lw.com

Andrew M. Gass (*pro hac vice*)
Brittany N. Lovejoy (*pro hac vice*)
Joseph R. Wetzel (*pro hac vice*)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: andrew.gass@lw.com
Email: britt.lovejoy@lw.com
Email: joe.wetzel@lw.com

*Attorneys for Defendant Suno, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on January 13, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF System, which shall send notification of such filing to all counsel of record.

/s/ Gary Feinerman
Gary Feinerman