**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| DAVID WOULARD, ATTACK THE SOUND LLC, an Illinois limited liability company, STAN BURJEK, JAMES BURJEK, BERK ERGOZ, HAMZA JILANI, MAATKARA WILSON, ARJUN SINGH, MAGNUS FIENNES, and MICHAEL MELL, each individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) | Case No. 25-cv-12684<br><br>District Judge Andrea R. Wood<br><br>Magistrate Judge Heather K. McShain |
| Plaintiffs, | ) ) |  |
| v. | ) ) |  |
| SUNO, INC. and UNKNOWN DEFENDANTS, | ) ) ) |  |
| Defendants. | ) ) |  |

**PLAINTIFFS' OPPOSITION TO SUNO'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION
<u>AND IMPROPER VENUE, OR IN THE ALTERNATIVE, TO TRANSFER VENUE</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................1

BACKGROUND ........................................................................................................................2

LEGAL STANDARD..................................................................................................................4

ARGUMENT .............................................................................................................................6

I.      The Court Has Specific Personal Jurisdiction Over Suno .................................................6

      A.     Suno deliberately exploits Illinois through recurring subscription
commerce and repeated in-forum service performance...........................................6

      B.     Plaintiffs' claims arise out of or relate to Suno's Illinois
exploitation ......................................................................................................11

      C.     Named plaintiffs anchor jurisdiction in Illinois; Suno cannot defeat
jurisdiction by pointing to non-Illinois plaintiffs or absent class members...........14

      D.     Exercising jurisdiction comports with fair play and substantial justice ...............15

      E.     If the Court has any doubt about the factual basis for personal
jurisdiction, Plaintiffs request a period of focused jurisdictional discovery..........15

II.     Venue ............................................................................................................16

      A.     Copyright venue under 28 U.S.C. § 1400(a) rises and falls
with personal jurisdiction, and venue is proper here ...........................................16

      B.     Venue for the non-copyright claims is proper under § 1391: Suno "resides"
here (because it is subject to PJ here), and, independently, Illinois events
are part of the historical predicate, not tangential................................................17

      C.     Suno's "economic harm only" framing is a misdirection: Illinois is not just
where Plaintiffs feel injury; it is where Suno engages in commerce....................19

III. Suno's First-to-File Request Should Be Denied ........................................................... 20

    A. First-to-file is discretionary and applies only to truly duplicative cases ............... 20

    B. The cases are not duplicative: they materially diverge on parties, class definitions and predicates, claims, and available relief (and neither case would resolve the other) ..................................................................................... 21

        1. The only actual parties at this stage are the named plaintiffs, and they are different by design ............................................... 21

        2. The proposed classes are not coextensive; their membership predicates and time windows materially diverge ......................................................... 22

        3. The claims are not interchangeable; they reflect different legal regimes, elements, and factual predicates (not just "different state labels") ............................................................................ 23

        4. The "available relief" significantly differs because the Massachusetts case cannot provide complete relief for Illinois claims and subclasses ..... 24

    C. Suno is trying to use first-to-file as a one-way ratchet to its preferred forum ....... 25

    D. Even if the Court sees some overlap, the equitable answer is coordination, not dismissal, a broad stay, or forced migration to Massachusetts ............................. 26

IV. Transfer to the District of Massachusetts Should Be Denied (28 U.S.C. § 1404(a)) ............................................................................................. 27

    A. Private-interest factors do not favor transfer; at most, Suno shows a preference for litigating at home .......................................................................... 28

    B. The interest of justice does not favor transfer ........................................................ 29

CONCLUSION ...................................................................................................................... 30

# TABLE OF AUTHORITIES

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc..*
   751 F.3d 796, 801–03 (7th Cir. 2014) ....................................................................5

*Albany Condominium Ass'n v. Republic Services, Inc.,*
   No. 24 C 10852, Dkt. 46 at 8–11 (N.D. Ill. Sept. 15, 2025) ....................................14

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985) ....................................5, 7, 8, 15

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.,*
   230 F.3d 934, 946 (7th Cir. 2000) ...........................................................................16

*Coffey v. Van Dorn Iron Works,*
   796 F.2d 217, 219–20 (7th Cir. 1986) .......................................................................6

*Concord Music Group, Inc. v. Anthropic PBC,*
   738 F. Supp. 3d 973 (M.D. Tenn. 2024) ..................................................................13

*Curry v. Revolution Lab'ys, LLC,*
   949 F.3d 385, 392 (7th Cir. 2020) .......................................................................4, 7

*Dzananovic v. Bumble, Inc.,*
   2023 WL 4405833, at *3–4 (N.D. Ill. July 7, 2023) .........................................10, 15

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.,*
   141 S. Ct. 1017, 1024–26 (2021) .......................................................................5, 11, 13

*Heller Fin., Inc. v. Midwhey Powder Co.,*
   883 F.2d 1286, 1293 (7th Cir. 1989) ...................................................................6, 29

*IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.,*
   437 F.3d 606, 610–11 (7th Cir. 2006) .....................................................................28

*Illinois v. Hemi Grp. LLC,*
   622 F.3d 754, 757–59 (7th Cir. 2010) ....................................................................7, 8

*In re Nat'l Presto Indus., Inc.,*
   347 F.3d 662, 664 (7th Cir. 2003) ...........................................................................29

*Int'l Shoe Co. v. Washington,*
   326 U.S. 310, 316 (1945) .........................................................................................5

*Justice v. Suno, Inc.,*
   No. 25-cv-11730 (D. Mass) ...............................................................21, 23, 24, 25

*Law Bulletin Publ'g Co. v. LRP Publ'ns, Inc.*,
 992 F. Supp. 1014, 1017–19 (N.D. Ill. 1998) ........................................................29

*Lukis v. Whitepages Inc.*,
 454 F. Supp. 3d 746 (N.D. Ill. 2020) .................................................................15

*Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.*,
 8 F.3d 441, 443, 445 (7th Cir. 1993) ..................................................................6

*Mussat v. IQVIA, Inc.*,
 953 F.3d 441, 447–48 (7th Cir. 2020) .............................................................5, 14

*N. Grain Mktg., LLC v. Greving*,
 743 F.3d 487, 491 (7th Cir. 2014) .......................................................................5

*Nicholson v. Nationstar Mortg. LLC of Del.*,
 2018 WL 3344408, at *5 (N.D. Ill. July 6, 2018) ..................................................20

*Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*,
 338 F.3d 773, 782 (7th Cir. 2003) ...................................................................4, 13

*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
 626 F.3d 973, 978 (7th Cir. 2010) .........................................................6, 20, 21, 27

*Ridge Gold Standard Liquors v. Joseph E. Seagram & Sons, Inc.*,
 572 F. Supp. 1210, 1213 (N.D. Ill. 1983) ............................................................20

*Serlin v. Arthur Andersen & Co.*,
 3 F.3d 221, 223 (7th Cir. 1993) ..................................................................6, 20, 21

*Smith v. Bayer Corp.*,
 *564 U.S. 299, 313–16 (2011)* ....................................................................20, 22

*Strategic Lending Sols. LLC v. United Def. Grp. LLP*,
 No. 13-cv-08232, slip op. at 14 (N.D. Ill. Oct. 28, 2014) ........................................20

*Tamburo v. Dworkin*,
 601 F.3d 693, 700 (7th Cir. 2010) ..........................................................4, 5, 11, 15

*uBID, Inc. v. GoDaddy Grp., Inc.*,
 623 F.3d 421, 427–30 (7th Cir. 2010) ..............................................................8, 10

*United States ex rel. Feingold v. AdminaStar Fed., Inc.*,
 324 F.3d 492, 494 (7th Cir. 2003) ....................................................................28

*Vandeveld v. Christoph*,
  877 F. Supp. 1160, 1167–68 (N.D. Ill. 1995) ..........................................................29

*Vanegas v. Signet Builders, Inc.*,
  113 F.4th 718, 724 (7th Cir. 2024) ..........................................................5

*Walden v. Fiore*,
571 U.S. 277, 283–86 (2014) ..........................................................5, 7, 10, 13, 14

## STATUTES

735 ILCS 5/2-209(c) ..........................................................5

28 U.S.C.

§ 1391..........................................................2

§ 1391(b)(1) ..........................................................17, 18

§ 1391(b)(2) ..........................................................6, 18, 19

§ 1391(c)(2) ..........................................................17

§ 1391(d) ..........................................................17

§ 1400(a) ..........................................................6, 16, 17

§ 1404(a) ..........................................................6, 19, 27, 30

## RULES

12(b)(2) ..........................................................4, 13

12(b)(3) ..........................................................5, 19

**INTRODUCTION**

Suno asks this Court to hold that it may run a nationwide subscription business, repeatedly contract with Illinois residents, take their money month after month, and deliver its product into Illinois, yet evade suit here because it has no Illinois office or employees. That is not due process, and it is not what Plaintiffs plead.

The First Amended Complaint ("FAC") alleges defendant-created Illinois contacts that are the opposite of "happenstance": Suno intentionally accepts Illinois users as customers, enters recurring subscription contracts with them, processes recurring payments from them, and repeatedly performs the core service for users in this District by receiving prompts from Illinois and delivering Suno-generated outputs into Illinois as the product it sells. (*See*, *e.g.*, FAC ¶¶ 45, 47, ECF No. 17.) Suno nonetheless asks the Court to treat that commerce as legally irrelevant "mere accessibility," suggesting Illinois users "may have done so unilaterally by stumbling across the website" and likening Suno's in-forum delivery to an Illinois resident "passively browsing any website." (Mot. at 13, ECF No 25.) Suno's framing flips the minimum-contacts inquiry on its head. The question is what Suno chose to do, and the FAC alleges Suno chose to monetize Illinois through repeated contracts, repeated deliveries, and recurring revenue from this District. (FAC ¶ 45(a7)-(a16), (A23-A31); ¶ 47(a2)-(a6), (a20)-(a23), ECF No. 17.)

Those Illinois contacts also relate to the claims. Plaintiffs challenge Suno's ongoing commercialization and dissemination of the very product at issue, not a one-time, out-of-forum development event. The FAC alleges Suno's Illinois customer relationships include distributing and delivering outputs here and deriving subscription revenue from users located here, conduct that forms part of the alleged wrongdoing and the harm Plaintiffs seek to enjoin and redress. (FAC ¶ 45(a8)-(a11), (a16), (a21), (a23), (a40)-(a43); ¶ 47(a4)-(a11), (a20)-(a23), ECF No. 17.)

Illinois's interest is concrete and immediate. The case is anchored by Illinois plaintiffs (including Illinois creators and an Illinois company) and includes Illinois statutory claims (BIPA/IRPA) enacted to prevent unauthorized commercial exploitation of Illinois residents' biometric identifiers and related harms. (FAC ¶¶ 14–23; Counts XI–XII, ECF No. 17.)

Venue is proper for the same reasons. For the copyright claims, Suno "may be found" here because it is subject to personal jurisdiction. For the remaining claims, a substantial part of the events giving rise to them occurred here through Suno's in-district subscription transactions and in-district provision, delivery, and dissemination of the challenged service and outputs. (FAC ¶ 47(a2)-(a11), (a15)-(a33), ECF No. 17.)

Suno's effort to evade merits review through threshold maneuvers fails as well. First-to-file is discretionary and applies only when an earlier case truly replicates this one, which the Massachusetts case does not, given different named plaintiffs, different class predicates and time windows, different state-law regimes, and different relief. And Suno cannot satisfy § 1404(a)'s demanding burden to show Massachusetts is *clearly* more convenient, or that transfer would serve the interest of justice; Suno's "efficiency" slogan does not substitute for the required showing. (Mot. at 27, 30, ECF No 25.) The Court should deny the motion.[1]

## BACKGROUND

Suno is a mass-market AI music product built for speed and scale: users input prompts describing musical elements, and Suno returns finished audio outputs in seconds. (FAC ¶¶ 49–52, ECF No. 17.) Suno then monetizes that output generation through subscription tiers,

---

[1] Suno has not offered any affidavits or other evidence to dispute the Illinois-directed commercial facts the FAC pleads. Even if they did so, the proper course, as Plaintiffs argue in this opposition, is limited, targeted jurisdictional discovery, not dismissal, a stay, or forced migration at the threshold.

expressly selling higher-volume generation and broader usage rights, including commercial use, on paid plans. (FAC ¶¶ 53–54, ECF No. 17.)

Suno has aggressively scaled. Suno integrated into major distribution channels, publicly claimed it reached millions of users quickly, and marketed successive model versions as increasingly "radio-quality," including vocals intended to sound authentic. (FAC ¶¶ 51, 55, 57–58, ECF No. 17.) Suno has raised substantial financing (including a $125 million Series B) and reached a valuation of around $500 million[2], while publicly stating it trained its models on copyrighted music and asserting "fair use" (FAC ¶ 57, ECF No. 17.) Suno's business model depends on distribution at scale: the more outputs users can generate and deploy, the more valuable and profitable the subscription tiers become. (FAC ¶ 54, ECF No. 17.)

Suno's Illinois connection is not incidental. Suno allows and encourages Illinois residents to create accounts and use the platform; it offers paid subscription tiers to Illinois residents; and it repeatedly processes subscription payments from Illinois users, forming ongoing, revenue-generating customer relationships in this District. (FAC ¶ 45(a2)–(a6), (a8)–(a12), ECF No. 17.)

Suno repeatedly performs the core service for Illinois users and delivers the results into Illinois: users in Illinois submit prompts and requests, Suno's systems respond by generating and transmitting the audio outputs back to users in Illinois as part of the service Suno sells. (FAC ¶ 45(a16), (a23); ¶ 47(a8)–(a11), ECF No. 17.)

Suno knows and tracks its Illinois business. Suno's subscription flows collect billing information sufficient to process and renew payments (including information identifying Illinois subscribers by address/ZIP), and Suno receives IP/session data and uses geographic analytics to

---

[2] On November 19, 2025, Suno raised a $250 million Series C at a $2.45B post-money valuation, touting "millions of creators" on the platform. "The Future of Music is Already Here", https://suno.com/blog/series-c-announcement

measure usage and revenue by location. (FAC ¶ 45(a24)–(a30), ECF No. 17.) Suno sends transactional communications and services customer accounts for Illinois subscribers. (FAC ¶ 45(a15), (a29)–(a31), ECF No. 17.)

This case is brought by independent musicians and songwriters who allege their livelihoods depend on licensing, attribution, and control over their work and identities, and that a mass-market substitute product built on their creations threatens those markets at scale. (FAC ¶¶ 1–3, 65–67, ECF No. 17.) The case is anchored in Illinois. Illinois-based plaintiffs created and recorded works and performances in Illinois, and Suno's commercial platform is repeatedly delivered into Illinois through subscription sales and in-district performance of the service. (FAC ¶¶ 14–25, 45, 47, ECF No. 17.)

Plaintiffs allege the wrongdoing extends beyond copyright. For Illinois residents, Plaintiffs assert claims under Illinois statutory protections aimed at unauthorized commercial exploitation of identity and biometrics, alleging Suno collected, stored, and exploited biometric identifiers and "voiceprints" derived from human performances without complying with Illinois safeguards, and commercially exploited distinctive voices and identities without permission. (FAC ¶ 8; Counts XI–XII, ECF No. 17.)

### LEGAL STANDARD

On a Rule 12(b)(2) motion, Plaintiffs bear the burden of establishing personal jurisdiction. *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020). Where, as here, the Court decides the motion without an evidentiary hearing, Plaintiffs need only make a *prima facie* showing; the Court accepts well-pleaded jurisdictional allegations as true and resolves factual disputes in Plaintiffs' favor. *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); *Curry*, 949 F.3d at 393.

Illinois's long-arm statute reaches to the constitutional limit. 735 ILCS 5/2-209(c); *Tamburo*, 601 F.3d at 700. Due process requires "minimum contacts" such that exercising jurisdiction comports with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Plaintiffs invoke specific jurisdiction, which exists when (1) the defendant purposefully directed activities at the forum or purposefully availed itself of doing business there; (2) the claims "arise out of or relate to" the defendant's forum contacts; and (3) jurisdiction is consistent with fair play and substantial justice. *Walden v. Fiore*, 571 U.S. 277, 283–86 (2014); *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024–26 (2021). The inquiry is defendant-focused in that contacts must stem from the defendant's own suit-related conduct, not merely a plaintiff's forum residence or injury. *Walden*, 571 U.S. at 284–90. And "arise out of or relate to" is disjunctive; "relate to" is not confined to strict but-for causation. *Ford*, 141 S. Ct. at 1026–30.

In online-services cases, the Seventh Circuit distinguishes "mere accessibility" from deliberate forum exploitation through suit-related conduct. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801–03 (7th Cir. 2014). If minimum contacts are shown, jurisdiction is presumptively reasonable and the defendant must make a "compelling case" that jurisdiction would be unfair. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985). In a putative class action, personal jurisdiction at the pleading stage is assessed based on the named plaintiffs' claims, not absent class members. *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447–48 (7th Cir. 2020); *Vanegas v. Signet Builders, Inc.*, 113 F.4th 718, 724 (7th Cir. 2024).

A defendant may move to dismiss for improper venue under Rule 12(b)(3); Plaintiffs bear the burden to show venue is proper, and the Court may consider materials outside the pleadings. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). Copyright venue

5

is governed by 28 U.S.C. § 1400(a); a defendant "may be found" where it is subject to personal jurisdiction for the action. *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.*, 8 F.3d 441, 443, 445 (7th Cir. 1993). For the remaining claims, venue is proper in any district where "a substantial part of the events or omissions giving rise to the claim occurred," and more than one district may qualify. 28 U.S.C. § 1391(b)(2); *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).

First-to-file is a discretionary docket-management doctrine, applied only to truly duplicative litigation where "the facts of the case are replicated"; where it applies, the later-filed court may stay, transfer, or (in limited circumstances) dismiss. *Research Automation*, 626 F.3d at 980; *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993).

Finally, Section 1404(a) permits transfer "[f]or the convenience of parties and witnesses, in the interest of justice" to a district where the action might have been brought. 28 U.S.C. § 1404(a). The movant bears the burden of showing that the transferee forum is *clearly more convenient*; a transfer is improper where it would merely shift inconvenience from one side to the other. *Research Automation*, 626 F.3d at 978–79; *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989). The Court weighs private-interest and interest-of-justice factors. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986).

## ARGUMENT

### I. The Court Has Specific Personal Jurisdiction Over Suno

#### A. Suno deliberately exploits Illinois through recurring subscription commerce and repeated in-forum service performance.

Suno's jurisdiction argument is a nonstarter. Suno asks this Court to treat a nationwide, subscription-based commerce model—one that repeatedly contracts with Illinois residents, repeatedly bills them, repeatedly performs the core service for them, and repeatedly delivers the

6

resulting product into Illinois—as if it were the same thing as a forum resident "passively brows[ing]" a webpage that happens to be cached. (Mot. at 11, ECF No 25.) The Seventh Circuit's internet cases do not create that kind of safe harbor. See *Curry,* 949 F.3d at 398–402 (online commerce plus repeated shipments/sales into forum is purposeful availment; "internet" doesn't immunize recurring transactions); *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 757–59 (7th Cir. 2010) (repeated commercial transactions with forum residents equals jurisdiction); *see also Burger King Corp.*, 471 U.S. at 473–76 (continuing obligations and ongoing relationships is purposeful availment). Due process asks whether the defendant purposefully created forum contacts through its own conduct. *Walden*, 571 U.S. at 284–85. The FAC alleges Suno did exactly that by pleading purposeful availment on three independent and mutually reinforcing grounds.

*First*, Suno forms continuing, revenue-generating contractual relationships with Illinois residents, by design, not by accident. This is not a one-off transaction that "fortuitously" arises from website visibility. The FAC alleges Suno has a "substantial number" of Illinois users, including Illinois residents who create accounts, use the service, and purchase paid subscriptions. (FAC ¶ 45(a2)–(a6), (a35), ECF No. 17.) Suno offers tiered subscription plans to Illinois residents, including paid tiers on a recurring monthly basis. (FAC ¶ 45(a8)–(a13), ECF No. 17.) Those paid tiers are priced at $8/month ("Pro") and $24/month ("Premier") and include benefits such as increased output generation. (FAC ¶ 45(a11)–(a13), ECF No. 17.) Suno permits commercial use of AI-generated outputs under the paid tiers, including by Illinois subscribers, thereby monetizing downstream exploitation as a paid feature. (FAC ¶ 45(a11), ECF No. 17.) Suno accepts and processes payment for subscriptions from Illinois users and "thereby enters

7

into repeated, ongoing commercial transactions with Illinois residents." (FAC ¶ 45(a10), ECF No. 17.)

That is purposeful availment under first principles: Suno "reach[es] out beyond" its home state, forms continuing obligations with Illinois residents, and then profits from those obligations month after month. *Burger King Corp.*, 471 U.S. at 473–76. Suno cannot convert those defendant-created, recurring commercial relationships into "unilateral" user activity by calling them "internet access." See also *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 427–30 (7th Cir. 2010) (specific jurisdiction where defendant deliberately exploited the forum market through business relationships and sales); *Illinois*, 622 F.3d at 757–59 (repeated commercial transactions with forum residents supported specific jurisdiction).

*Second*, Suno repeatedly performs the core service for Illinois users and delivers the product into Illinois. Suno seeks to reduce these activities to "mere accessibility." But the FAC alleges a platform that operates through repeated exchanges: Illinois users submit prompts and requests from Illinois devices; Suno's systems receive those requests at Suno-controlled endpoints and generate and deliver music outputs back to users in Illinois. (FAC ¶ 45(a2)–(a4), (a16)-(a20), ECF No. 17.) The FAC further alleges Suno's tools enable customization through repeated interactions—i.e., repeated service performance triggered by Illinois-originating inputs. (FAC ¶ 45(a14-(a15), ECF No. 17.)

That matters for purposeful availment because it is Suno's conduct, not the user's unilateral activity, that creates the forum contact: Suno sells access, takes the subscription payments, and then repeatedly performs and delivers the core product into Illinois as part of the commercial bargain.

Suno's attempt to erase that distinction is revealing. Suno argues that "interaction happens whenever an Illinois resident passively browses any website because the website automatically stores a copy of the site content on the user's computer and may store a copy in a network cache." (Mot. at 11, ECF No 25.) That analogy only works if the Court ignores what the FAC alleges: ongoing subscription contracts, repeated on-demand service performance, and repeated delivery of the accused outputs into Illinois. (FAC ¶ 45(a7)-(a16), (a23); ¶ 47(a3)-(a6), (a8)-(a11), ECF No. 17.) The Constitution does not require the Court to treat a subscription service that actually delivers an online product into Illinois as equivalent to cached web content.

*Third*, Suno knows it is exploiting Illinois and that it tracks, services, and monetizes Illinois commerce. Suno's "random" or "fortuitous" narrative is especially untenable because the FAC alleges Suno's Illinois contacts are deliberate, measurable, and managed. (FAC ¶ 45(a19), (a23)-(a34), ECF No. 17.) The FAC alleges Suno's uniform Terms of Service "reflect Suno's intent to contract with residents of every state, including Illinois, and to continuously perform paid and unpaid services for those residents." (FAC ¶ 45(a24).) Suno's subscription flows "necessarily" collect and process billing information sufficient to charge and renew payments, including information identifying Illinois subscribers by address and/or ZIP code. (FAC ¶ 45(a25).) The FAC further alleges Suno receives and processes IP addresses and session data for authentication, security, and operation; uses analytics measuring usage by geography (state, metro area, ZIP code); and maintains internal metrics identifying its Illinois user base, usage, paid subscribers, and revenue. (FAC ¶ 45(a26)–(a29), ECF No. 17.) And Suno sends transactional communications (receipts, renewal notices, password resets, feature notices) and provides customer support to Illinois subscribers. (FAC ¶ 45(a31)-(a32), ECF No. 17.)

Those allegations are not "website accessibility." They are a roadmap of deliberate, trackable Illinois exploitation—billing-based knowledge, geo analytics, and ongoing servicing of Illinois customers. Under *Walden*, that is precisely the kind of defendant-created forum connection sufficient to establish jurisdiction.

Suno's "Illinois billboard" and "geoblock" rhetoric is a strawman, and an attempt to rewrite the standard. Suno repeatedly implies that Plaintiffs must plead Illinois-specific advertising or geotargeted marketing. (Mot. 8–9, 11–13, ECF No 25.) That is not the constitutional line. A defendant purposefully avails itself when it deliberately exploits the forum market through continuing commercial relationships and ongoing performance, not only when it buys forum ads. *uBID*, 623 F.3d at 427–30; *Hemi*, 622 F.3d at 757–59; *Dzananovic v. Bumble, Inc.*, 2023 WL 4405833, at *3–4 (N.D. Ill. July 7, 2023) (rejecting "mere accessibility" framing where defendants did more than make the app available in Illinois).

Relatedly, Suno tries to reframe Plaintiffs' theory as "Suno is subject to jurisdiction everywhere unless it geoblocks." (Mot. at 11, ECF No 25.) Plaintiffs do not argue that "failure to geoblock" creates jurisdiction. Plaintiffs allege Suno *affirmatively* and *repeatedly* does business here. Suno contracts with Illinois residents, renews subscriptions, takes money, performs the accused service, delivers outputs, and tracks Illinois commerce. (FAC ¶ 45(a13), (a16), (a23)-(a30); ¶ 47(a3)-(a6), (a25), ECF No. 17.) That is purposeful availment, whether or not Suno also does business elsewhere.

Finally, Suno's attempt to distract with Cloudflare does not change the analysis. Suno insists Plaintiffs are "manufactur[ing]" jurisdiction based on a third-party vendor's routing choices. (Mot. at 14–15, ECF No 25.) But Plaintiffs' jurisdiction showing does not solely depend on Cloudflare. (FAC ¶ 45(a52)-(a55), ECF No. 17.) It depends on Suno's own, recurring Illinois

commerce and repeated Illinois-directed service performance. Moreover, Suno cannot "vendor" its way out of jurisdiction for a service it deliberately sells and performs for Illinois subscribers: a defendant remains responsible for the forum contacts created by delivering its product and servicing its customers in the forum. Due process does not permit a defendant to outsource its way out of jurisdiction.

At the Rule 12 stage, the Court must accept these well-pleaded jurisdictional allegations as true and draw reasonable inferences in Plaintiffs' favor. *Tamburo*, 601 F.3d at 700. On the face of the FAC, Suno has purposefully availed itself of Illinois.

**B.      Plaintiffs' claims arise out of or relate to Suno's Illinois exploitation.**

Suno's "no nexus" argument rests on a litigation frame: it tries to recast this case as solely about where Suno trained a model[3], while treating as "jurisdictionally irrelevant" the commercialization that makes Suno's enterprise profitable: subscription sales, repeated service performance, and delivery and dissemination of outputs into Illinois. That is not the Supreme Court's test.

Due process requires that the claims "arise out of or relate to" the defendant's forum contacts. *Ford Motor Co.*, 141 S. Ct. at 1024–26. The phrase is disjunctive: "relate to" has independent force and reaches cases where a defendant deliberately serves a forum market for the very product (or service) challenged in the suit, even if the defendant tries to locate upstream design decisions elsewhere. *Id.* at 1026–30.

That is this case. The FAC alleges Suno repeatedly provides the accused subscription service in Illinois, receiving prompts from Illinois users, generating outputs, and delivering those

---

[3] Even this claim is ambiguous and misleading. If model training occurred using cloud resources, Suno offers no evidence that those resources were in Massachusetts. Suno can't even represent that the key documents and data relevant to this case are in Massachusetts, qualifying that representation by saying those materials are "*likely* in Massachusetts". (Mot. at 27, ECF No 25) (emphasis added).

11

outputs into Illinois. (FAC ¶ 45(a2)–(a4), (a16), (a23), ECF No. 17.) And the FAC ties the operative, claim-giving conduct to Illinois.

*Copyright and DMCA claims:* The FAC alleges that Suno has generated, delivered, and distributed into Illinois outputs that incorporate, are derived from, or are substantially similar to Plaintiffs' copyrighted works and sound recordings, including outputs created and consumed by Illinois users. (FAC ¶ 45(a40).) The FAC further alleges Suno's Illinois contacts are suit-related because Plaintiffs' claims challenge Suno's monetization and dissemination of AI outputs, including in Illinois, built on alleged unauthorized copying, ingestion, and identity and biometric exploitation. (FAC ¶ 45(a43), ECF No. 17.) The FAC additionally alleges the acts giving rise to Plaintiffs' Title 17 claims include Suno's distribution, transmission, delivery, and provision of access to the challenged outputs to users located in this District, conduct that occurs here when Suno transmits the outputs to devices and users in Illinois. (FAC ¶ 47(a8)–(a11), ECF No. 17.)

*Illinois statutory claims (BIPA and IRPA):* The FAC alleges the events giving rise to the BIPA claims occurred in this District because Suno "collected, captured, processed, stored, and commercially used biometric identifiers and biometric information of Illinois residents … through its AI systems," and because Suno's commercialization in Illinois necessarily involves ongoing use of biometric-derived features for generation and output fidelity. (FAC ¶ 45(a46); FAC ¶ 47(a27)–(a28), ECF No. 17.) The FAC likewise alleges that Suno generated, delivered, and distributed into Illinois voice-simulative outputs that replicate or closely simulate Plaintiffs' and other Illinois residents' protected vocal identifiers, and that Suno uses the availability of such outputs to market and sell subscriptions to Illinois users. (FAC ¶ 45(a41), (a47)–(a48); FAC ¶ 47(a30), ECF No. 17.)

12

Those allegations do exactly what *Ford* requires: they connect Suno's Illinois-directed commercialization and dissemination of the accused product to the claims being asserted. Suno's attempt to define the "historical predicate" as only model training is not a jurisdictional rule; it is a strategy to strip out the very forum contacts that are connected to the conduct Plaintiffs seek to enjoin and redress.

Suno's "no Illinois output identified" demand is not the Rule 12(b)(2) standard. Suno leans on *Concord Music Group, Inc. v. Anthropic PBC*, 738 F. Supp. 3d 973 (M.D. Tenn. 2024), and argues Plaintiffs do not "identify any specific allegedly infringing content outputted to a Suno user in Illinois." (Mot. at 14, ECF No 25.) But the FAC alleges infringing or derivative outputs have been delivered and distributed into Illinois (FAC ¶ 45(a40); ¶ 47(a7), ECF No. 17), and it alleges the operative distribution/transmission conduct occurs in Illinois when outputs are delivered or made available here (FAC ¶ 47(a8)–(a11).) At this stage, Plaintiffs are not required to plead internal output IDs and delivery logs, which reflect information Suno controls. See *Purdue Rsch. Found.*, 338 F.3d at 782 (prima facie showing).

If Suno truly disputes the existence or scope of Illinois deliveries and Illinois commercialization, that is a dispute over the evidence. It does not negate the FAC's well-pleaded allegations that Suno has suit-related Illinois contacts, and it does not justify dismissal at the threshold.

Critically, Plaintiffs do not rely on "effects" alone. Suno invokes *Walden*'s defendant-focused rule, but Plaintiffs' nexus theory is defendant-focused: Suno allegedly sells subscriptions in Illinois, performs the service for Illinois users, and disseminates the accused outputs here. (FAC ¶ 45(a8)–(a16), (a23), (a40)–(a43); ¶ 47(a3)–(a6), (a7)–(a11), (a20)–(a23), ECF No. 17.) The FAC also alleges Suno's biometric and identity exploitation is committed and monetized

13

through Suno's Illinois-directed service provision and dissemination: Suno allegedly collects, captures, processes, and uses biometrics "through provision of its service" to Illinois residents and fails to provide required disclosures, obtain releases, and maintain required policies in connection with onboarding and providing services in this District. (FAC ¶ 47(a27)–(a28), ECF No. 17.) Suno allegedly commercially exploits protected identity attributes (including distinctive voices) of Illinois residents and disseminates voice-simulative outputs to and within this District. (FAC ¶ 47(a30), ECF No. 17.) That is defendant-created, suit-related forum conduct, not "effects-only" injury. Under *Walden*, that is precisely what establishes jurisdiction.

### C. Named plaintiffs anchor jurisdiction in Illinois; Suno cannot defeat jurisdiction by pointing to non-Illinois plaintiffs or absent class members.

Suno's motion tries to make this case sound like a free-floating "nationwide internet" dispute with no Illinois anchor. The law is the opposite. In a putative class action, personal jurisdiction is assessed based on the named plaintiffs' claims, not absent class members' claims. *Mussat*, 953 F.3d at 447–48; *Vanegas*, 113 F.4th at 724.

Here, the FAC alleges multiple Illinois-based named plaintiffs, with Illinois-centered harms and Illinois statutory claims. (FAC ¶¶ 14–16, 20-24, 26-28; *see also* ¶¶ 250–70, 275–89, ECF No. 17.) Those Illinois plaintiffs allege Suno deliberately commercializes and delivers the accused service into Illinois and commits Illinois statutory violations in connection with providing that service to Illinois residents. (FAC ¶ 45; ¶ 47(a)(27)–(33), ECF No. 17.) That is a straightforward Illinois anchor.

This Court has already rejected the maneuver Suno implicitly invites: using *Bristol-Myers* as an all-or-nothing lever to force dismissal or migration from a forum that plainly has jurisdiction over Illinois plaintiffs. In *Albany Condominium Ass'n v. Republic Services, Inc.*, this Court conducted the required plaintiff-by-plaintiff analysis and dismissed only the claims lacking

a jurisdictional connection, rather than uprooting the case wholesale. No. 24 C 10852, Dkt. 46 at 8–11 (N.D. Ill. Sept. 15, 2025). The same principle applies here. Even if Suno quarrels with particular non-Illinois plaintiffs or claim permutations, that cannot erase jurisdiction over the Illinois plaintiffs' claims, nor justify dismissing or transferring the case wholesale.

**D.      Exercising jurisdiction comports with fair play and substantial justice.**

Once Plaintiffs make a *prima faci*e showing of purposeful availment and relatedness, jurisdiction is presumptively reasonable; Suno must make a "compelling case" that jurisdiction is unfair. *Burger King*, 471 U.S. at 476–78. Suno does not come close.

Illinois has a strong interest in adjudicating claims involving the alleged exploitation of Illinois residents and Illinois statutory protections (including BIPA and IRPA). *Tamburo*, 601 F.3d at 709; *Dzananovic.,* No. 21 C 6925, slip op. at 15; *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746 (N.D. Ill. 2020). Plaintiffs' interest in litigating at home is substantial because the case is anchored by Illinois-named plaintiffs and Illinois-directed conduct. And Suno's burden is not undue: Suno allegedly operates a national subscription business, knowingly contracts with Illinois residents, repeatedly bills them, and repeatedly delivers the accused service and outputs into Illinois. (FAC ¶ 45(a7)–(a16), (a24)–(a30), (a57)-(a61); ¶ 47(a3)–(a6), (a20)–(a22), ECF No. 17.)

**E.      If the Court has any doubt about the factual basis for personal jurisdiction, Plaintiffs request a period of focused jurisdictional discovery.**

Plaintiffs do not need jurisdictional or venue discovery because, as shown above, the FAC plausibly and sufficiently alleges deliberate Illinois-directed subscription commerce and ongoing service performance and delivery into this District. If the Court concludes that Suno's

15

attack turns on quantitative, defendant-held metrics[4], fairness, and Seventh Circuit practice support permitting narrow discovery aimed at the discrete jurisdiction/venue facts Suno says are absent, rather than dismissing the case because Suno alone controls the relevant data. *See Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000). Plaintiffs respectfully request targeted, time-bound discovery tailored to the precise points Suno says are missing, followed by targeted supplemental briefing, so the Court can decide the motion on a complete and accurate record rather than a one-sided absence of defendant-controlled data.

## II. Venue

### A. Copyright venue under 28 U.S.C. § 1400(a) rises and falls with personal jurisdiction, and venue is proper here.

Suno's venue argument for the Title 17 claims is deliberately derivative. Suno concedes the governing statute is 28 U.S.C. § 1400(a) and that a copyright defendant "may be found" in any district where it is subject to personal jurisdiction for the claim. Suno's entire § 1400(a) pitch is therefore simple: *if Suno can convince the Court that there is no personal jurisdiction, then venue falls too.* (Mot. at 18-21, ECF No 25.)

That premise fails for the reasons shown in the personal-jurisdiction section. Once Suno is amenable to personal jurisdiction here, it "may be found" here for § 1400(a) purposes. The FAC pleads exactly the district-tethered, suit-related conduct that makes Suno "found" here: Suno repeatedly performs its subscription service for users located in this District, transmits and delivers digital music outputs into this District in response to user prompts, and, on information

---

[4] Such metrics include, for example, paid Illinois subscriber counts, Illinois revenue, and Illinois session/delivery logs. The FAC already pleads that Suno necessarily collects and maintains exactly those metrics in the ordinary course: billing information identifying Illinois subscribers by address/ZIP; IP/session data; geo-analytics by state/metro/zip; and "state-by-state … breakdowns of accounts, paid subscribers, revenue, and usage volume." (FAC ¶ 45(a8), (a10), (a19), (a25)-(a34), ECF No. 17.)

and belief, has generated and delivered into this District outputs alleged to infringe or be derived from Plaintiffs' works and recordings. (FAC ¶ 45(a16), (a20), (a40); ¶ 47(a5)–(a11), , ECF No. 17.) The FAC further alleges that the acts giving rise to the Title 17 claims include Suno's distribution, delivery, transmission, and repeated provision of access to those outputs to users in this District, including playback, streaming, and downloading that occurs here when Suno transmits outputs to devices in this District. (FAC ¶ 47(a8)–(a11), (a20)-(a23).)

That is not "venue by plaintiff residence." It is venue tied to the challenged distribution and provision of the accused outputs and service into this District, the conduct Plaintiffs seek to enjoin and redress. Because Suno is "found" here, copyright venue under § 1400(a) is proper.

### B. Venue for the non-copyright claims is proper under § 1391: Suno "resides" here (because it is subject to PJ here), and, independently, Illinois events are part of the historical predicate, not tangential.

Suno argues that, "to the extent" § 1391 applies, venue supposedly fails because Plaintiffs' allegations "boil down" to (i) Illinois users using Suno and (ii) Plaintiffs feeling harm in Illinois. Suno then tries to relabel those facts as "irrelevant" and "tangential," while asserting the "real" events all occurred in Massachusetts because the claims "center on" model development, training, and operation there. (Mot. at 26, ECF No 25.)

That is the same move Suno makes on personal jurisdiction: define the case as only upstream engineering, erase downstream commercialization. Venue law does not permit such a rewrite for three reasons.

*First*, Suno "resides" in this District because it is subject to personal jurisdiction here. The FAC pleads venue under § 1391(b)(1) because Suno "resides" in this District within the meaning of § 1391(c)(2) and § 1391(d), based on Suno's district-specific contacts (i.e., contacts sufficient to support personal jurisdiction if this District were a separate State). (FAC ¶ 47(a13)–

17

(a15), ECF No. 17.) Because Suno is subject to specific personal jurisdiction here, it "resides" here for venue purposes as well.

*Second*, even setting "residence" aside, a substantial part of the events giving rise to these claims occurred here. Suno cites the correct general standard ("historical predicate," more than "tangential"), but then applies it backwards, by pretending Suno's Illinois-based commercialization and service delivery are mere "third-party use." (Mot. at 9-13, ECF No 25.)

The FAC alleges that the Illinois events are not ancillary. They constitute the day-to-day conduct that operationalizes (and monetizes) the challenged enterprise in this District: repeated interactive sessions initiated from this District; prompts and inputs transmitted from devices here; output generation in response to those prompts, and transmission and delivery into this District; streaming, playback, and download into this District when Suno transmits outputs to devices here; maintenance of user accounts and generation of libraries repeatedly accessed from within this District; and subscription billing, renewals, and transactional communications with users in this District. (FAC ¶ 47(a8)-(a11), (a16)–(a26), ECF No. 17.)

Those allegations are not "tangential." They are part of the core factual predicate for the non-copyright claims because those claims challenge the commercial provision of Suno's product (and the omissions and unlawful exploitation that occur in connection with providing it). Suno's view would convert § 1391(b)(2) into a one-state "headquarters venue" rule for any internet subscription business: if engineering decisions happened in one state, then nothing else "counts," even where the defendant repeatedly sells, performs, delivers, and profits from the challenged service. That is not what § 1391 says, and it is not what "historical predicate" means.

*Third*, Suno's venue cases do not fit this record. Suno leans on decisions finding venue improper where the operative wrongful conduct occurred elsewhere and Illinois offered, at most,

a thin connection like plaintiff-side circumstances or incidental communications and payments. But here, the FAC pleads defendant-side, in-district conduct: Suno repeatedly sells subscriptions here, repeatedly performs and delivers the accused service here, and repeatedly transmits the accused outputs into this District as the very product it monetizes. (FAC ¶ 45(a13)–(a16), (a23); ¶ 47(a2)–(a6), (a20)-(a23), ECF No. 17.) That is the opposite of "incidental" contact. And to the extent Suno argues witness convenience and evidence access, that is a § 1404(a) transfer debate, not a basis to declare venue "improper" under Rule 12(b)(3).

> **C.** **Suno's "economic harm only" framing is a misdirection: Illinois is not just where Plaintiffs feel injury; it is where Suno engages in commerce.**

Suno's final venue move is to pretend Plaintiffs rely only on "economic harm" felt in Illinois, and then cite the uncontroversial proposition that plaintiff-side injury alone is not enough for venue. (Mot. at 20-21, ECF No 25.)

Plaintiffs do not ask the Court to keep this case in Illinois because Illinois plaintiffs live here. Plaintiffs ask the Court to keep this case here because Suno does business here, repeatedly and profitably, by selling subscriptions into this District, performing its interactive service for users in this District, and transmitting and delivering the challenged outputs into this District at scale. (FAC ¶ 45(a13)–(a16), (a21), (a23); ¶ 47(a3)–(a6), (a20)-(a23), ECF No. 17.) Those are defendant-side acts occurring here, and they are exactly the kind of concrete, suit-related events that make venue proper.

Suno's effort to strip those Illinois facts out of the "historical predicate" is not a neutral application of § 1391(b)(2). It is a repackaged merits narrative designed to manufacture a "no Illinois nexus" conclusion. The Court should reject that reframing and deny Suno's Rule 12(b)(3) motion.

### III.     Suno's First-to-File Request Should Be Denied

#### A.     First-to-file is discretionary and applies only to truly duplicative cases.

First-to-file is not a jurisdictional bar and not a defendant's forum-selection clause. It is a discretionary, equitable doctrine rooted in a court's inherent power to manage its docket by avoiding truly duplicative litigation—the same dispute being litigated twice. *Serlin*, 3 F.3d at 223. The Seventh Circuit "does not rigidly adhere" to the doctrine, and it applies only "where the facts of the case are replicated." *Research Automation,* 626 F.3d at 980; *Strategic Lending Sols. LLC v. United Def. Grp. LLP*, No. 13-cv-08232, slip op. at 14 (N.D. Ill. Oct. 28, 2014) (quoting *Research Automation* and emphasizing first-to-file does not control unless the "facts of the case are replicated").

Suno tries to soften that requirement into a policy slogan, "substantial overlap" rather than "precise overlap", and then treats shared buzzwords ("AI," "training," "copyright," "music") as enough. But first-to-file does not ask whether two complaints share a subject matter at 40,000 feet. It asks whether the claims, parties, and available relief do not significantly differ such that one action would effectively resolve the other. *See, e.g.*, *c*; *Nicholson v. Nationstar Mortg. LLC of Del.*, 2018 WL 3344408, at *5 (N.D. Ill. July 6, 2018). That is a demanding showing in practice for a reason: otherwise first-to-file becomes exactly what it is not, a device for exporting any later-filed case to wherever the defendant was sued first.

Suno also invokes the specter of "inconsistent judgments" in class actions. But that rhetoric overstates the risk at this stage. Before certification, absent class members are not parties, and a class-certification ruling does not bind nonparties in a different case. *Smith v. Bayer Corp.*, 564 U.S. 299, 313–16 (2011). First-to-file is discretionary precisely so courts can

20

separate real duplication from theoretical overlap, especially in early-stage putative class litigation.

Accordingly, this Court should only grant relief under the first-to-file doctrine if this Illinois action truly redundant of the earlier Massachusetts case, so redundant that allowing both to proceed would amount to litigating the same case twice. It is not.

**B.     The cases are not duplicative: they materially diverge on parties, class definitions and predicates, claims, and available relief (and neither case would resolve the other).**

Suno's first-to-file theory depends on collapsing "AI music" litigation into one generic story and then declaring everything else a "variation." That is not the test. The test is whether the two cases are, in substance, the same dispute—same parties, same operative class membership, same claims seeking the same relief—such that one case would practically dispose of the other. *See Serlin*, 3 F.3d at 223 (first-to-file generally for "nearly identical" parties and issues; discretionary); *Research Automation,* 626 F.3d at 980 ("does not rigidly adhere" and applies only where "facts … replicated"). They are not.

**1.     The only actual parties at this stage are the named plaintiffs, and they are different by design.**

This case is brought by independent artists, including Illinois-based creators and an Illinois LLC. (FAC ¶¶ 14–16.) The Massachusetts case Suno relies on, *Justice v. Suno*, No. 1:25-cv-11739-FDS (D. Mass.), is brought by a Tennessee resident artist and Tennessee-based entities. (Justice Am. Compl. ¶¶ 101–109.)

Plaintiffs here did not "replicate" the Massachusetts plaintiffs. The FAC expressly defines "independent artists" broadly and then expressly excludes the named plaintiffs in both (i) the RIAA case and (ii) the Justice case. (FAC ¶ 124; *see also* ¶ 124(m), ECF No. 17.) That matters twice over:

21

- It confirms Plaintiffs are not trying to relitigate the *same* parties' dispute in a second forum; and

- It underscores the correct first-to-file frame before certification: the relevant "parties" are the named plaintiffs, not a hypothetical, shifting universe of absent class members. *Smith*, 564 U.S. at 313–16.

Suno's argument effectively asks for a "first suit wins" shield: once Suno is sued first in Massachusetts by someone, everyone else, even different plaintiffs with materially different claims and class predicates, must queue behind that forum. First-to-file is not a nationwide consolidation rule, and the Seventh Circuit has never treated it as one.

### 2. The proposed classes are not coextensive; their membership predicates and time windows materially diverge.

Even if the Court looks past named parties and considers proposed class contours, the divergence is not cosmetic; it is definitional.

This case's nationwide classes are tied to the copying, ingestion, and exploitation of datasets and include works that were unregistered at the time of copying. The FAC's core classes turn on whether works "appear in any dataset Suno copied, ingested, or exploited for AI training during the Class Period," including a Previously-Unregistered Copyright Class covering works "unregistered … at the time Suno copied, ingested, or exploited them." (FAC ¶ 124(a)–(b), ECF No. 17.) The FAC likewise defines multiple composition/lyric subclasses and DMCA subclasses keyed to acquisition/ingestion and CMI removal. (FAC ¶ 124(c)–(h), ECF No. 17.) And the FAC's "Class Period" is not a fixed "since 2021" window; it is defined by the maximum period permitted under limitations/accrual/tolling principles measured back from filing through judgment/class notice. (FAC ¶ 124(n), ECF No. 17.)

22

*Justice's* principal classes are tethered to streaming availability since January 1, 2021 and a narrower set of predicates. *Justice* proposes a "Registered Works Class" limited to owners of registered copyrights in works "made available on internet-based streaming services since January 1, 2021." (Justice Am. Compl. ¶ 430(A), ECF No. 25, Exhibit D.) It also proposes a DMCA class tied to works "made available on digital streaming platforms employing technological protection measures" and accessed by circumvention "without authorization since January 1, 2021." (Id. ¶ 430(C), ECF No. 25, Exhibit D.) And Justice includes a Tennessee Resident Artist Subclass limited to Tennessee residents at filing and keyed to misappropriation of "names, voices, likenesses, producer tags" and persona elements since January 1, 2021. (Id. ¶ 430(E), ECF No. 25, Exhibit D.)

That is not "substantial overlap." It is different class membership in multiple directions: fixed-date streaming predicates vs. dataset predicates; registered-only framing vs. included unregistered-at-copying classes; Tennessee-resident subclass vs. Illinois-resident biometric and right-of-publicity subclasses.

Suno's "overlap" argument is further undermined by Justice's pleading: it admits the class definitions are "subject to amendment," and plaintiffs "reserve the right to amend or modify the class definitions … after … discovery." (Justice Am. Compl. ¶¶ 430, 432, ECF No. 25, Exhibit D.) Suno asks this Court to freeze a distinct Illinois case based on putative class boundaries that the Justice plaintiffs themselves declare are provisional.

> **3.      The claims are not interchangeable; they reflect different legal regimes, elements, and factual predicates (not just "different state labels").**

Suno argues that because both complaints talk about "misappropriation" of identity attributes, different state-law claims should be disregarded. But that only works if the underlying facts are truly replicated and the legal rights are materially the same. They are not.

This case asserts Illinois statutory claims, including BIPA, IRPA, and UDTPA injunctive relief, built around Illinois-specific conduct, Illinois-resident subclasses, Illinois statutory duties, and Illinois remedies. (FAC ¶ 124(i)–(k); *see also* ¶¶ 250–270, 275–289, ECF No. 17.) Justice, by contrast, pleads a Tennessee-resident artist subclass and Tennessee consumer-protection theory. (Justice Am. Compl. ¶ 430(E); see also id. ¶ 434(e), ECF No. 25, Exhibit D.)

That is not a superficial variation. BIPA's notice, consent, and retention obligations and statutory damages are not the same legal right as a Tennessee consumer-protection claim. IRPA's protected-identity regime is not the same as Tennessee's. The state-law claims here are not "add-ons"; they are core sources of liability and relief, tied to Illinois residents and Illinois conduct.

Suno's reliance on cases like *Askin* for the proposition that different state laws may not defeat first-to-file is misplaced in this posture. Whatever may be true where two cases seek to litigate the same product labeling conduct for essentially the same consumer class, these are not replicated facts and do not constitute a single uniform statutory regime. This case includes Illinois statutory claims and Illinois subclasses that the Massachusetts case does not, and cannot, adjudicate as a substitute.

    **4.    The "available relief" significantly differs because the Massachusetts case cannot provide complete relief for Illinois claims and subclasses.**

Suno argues that "the types" of relief overlap because both cases seek class certification, injunctions, and damages. But first-to-file does not turn on whether two complaints use the same

generic words ("injunction," "damages"). It turns on whether the earlier action can provide the relief that would resolve the later dispute.

Justice cannot supply the remedies Plaintiffs seek for Illinois statutory violations and Illinois subclasses, particularly statutory damages and injunctive obligations under Illinois law for Illinois residents. And Justice's injunctive classes are tied to its own class predicates (streaming since January 1, 2021; registered works; DMCA circumvention), which are not coextensive with Plaintiffs' dataset-copying and unregistered-at-copying classes here. (Compare Justice Am. Compl. ¶ 430, ECF No. 25, Exhibit D with FAC ¶ 124(a)–(h), (n), ECF No. 17.)

Because the Massachusetts case would not dispose of the Illinois claims and Illinois subclass relief at the core of this action, the cases are not duplicative within the meaning of first-to-file.

### C.      Suno is trying to use first-to-file as a one-way ratchet to its preferred forum.

Suno labels Plaintiffs' exclusions "gerrymandering" designed to "avoid the first-to-file rule." But the FAC did the opposite of what Suno accuses: it openly and expressly excluded the Massachusetts-named plaintiffs, precisely to avoid duplicating their dispute. (FAC ¶ 124; ¶ 124(m), ECF No. 17.) That is not gamesmanship; it is responsible pleading.

Suno's rejoinder, that excluding named plaintiffs "does not address overlap", reveals what Suno is really seeking. Suno is not objecting to true duplication; it is objecting to parallel accountability. It asks the Court to treat a malleable, discovery-dependent set of putative class definitions as dispositive and to ignore the only parties that actually exist at this stage. That approach would convert first-to-file into a defendant's nationwide shield: once sued first somewhere, Suno could insist all later plaintiffs, no matter how different, must litigate in the first forum or not at all.

25

The record also flips Suno's "gerrymander" story on its head. Justice itself pleads that its class definitions are "subject to amendment" and reserves the right to modify them after discovery. (Justice Am. Compl. ¶¶ 430, 432, ECF No. 25, Exhibit D.) Suno asks this Court to treat Plaintiffs' clear, fixed exclusions as suspect, while insisting the Court should freeze this case based on class boundaries the Justice plaintiffs expressly describe as provisional. That inversion is the real invitation to gamesmanship.

Suno's requested outcome confirms the point. Suno seeks dismissal/stay under first-to-file and, failing that, transfer to Massachusetts, its home forum. That is not neutral docket management. It is a one-way ratchet toward Suno's preferred courthouse.

### D. Even if the Court sees some overlap, the equitable answer is coordination, not dismissal, a broad stay, or forced migration to Massachusetts.

Even if the Court identifies overlapping legal questions at a general level (e.g., fair-use issues regarding training), Suno's requested remedies do not follow, for four reasons.

*First*, Dismissal is the "nuclear option," and it only makes sense when the later case is redundant. Where the later case includes different plaintiffs, different class predicates, and distinct state-law rights and remedies, dismissal does not conserve resources, it creates delay and future motion practice because the unadjudicated claims do not disappear.

*Second*, a broad stay would reward Suno's overreach and function as transfer-by-delay. If the Court considers a stay at all, it should be a scalpel, not a case-stopper. A blanket stay would freeze Illinois-anchored claims and Illinois statutory rights that are not litigated in Justice, based on speculative "overlap" and pre-certification class theories. That would improperly convert first-to-file into a de facto consolidation mechanism.

*Third*, if the Court identifies any concrete risk of duplicative work on a discrete issue, it can manage that risk without dismissing or exporting this case—e.g., coordination of document

productions, cross-noticed depositions where appropriate, harmonized protective orders, or sequencing on a narrowly defined threshold issue. Those tools accomplish what first-to-file is meant to accomplish, conserving resources, without rewriting the doctrine into a Massachusetts-only mandate.

*Fourth*, Suno's first-to-file argument is transparently paired with its transfer request: "stay/dismiss—otherwise move the case to Massachusetts." That is not what first-to-file is for. The doctrine exists to avoid litigating the same case twice, not to allow a defendant to relocate distinct litigation to its home forum whenever it faces suits in more than one district.

### IV.     Transfer to the District of Massachusetts Should Be Denied (28 U.S.C. § 1404(a)).

Suno's transfer request repackages the same premise: because Suno is headquartered in Massachusetts and is litigating there, it asks this Court to uproot an Illinois-anchored case involving Illinois plaintiffs and Illinois-directed commercial conduct. Section 1404(a) does not permit transfer on preference or convenience-shifting.[5] Suno bears the burden to show Massachusetts is *clearly more convenient* and that transfer would serve the interest of justice; it is not enough that Massachusetts is also a proper forum. *Research Automation*, 626 F.3d at 978–79; *Heller*, 883 F.2d at 1293; *Coffey*, 796 F.2d at 219–20.

Suno does not carry that burden. Its analysis depends on artificially defining the "material events" as only internal engineering activity in Massachusetts and treating Suno's in-Illinois

---

[5] Suno cites decisions recognizing that a court may sometimes transfer without deciding personal jurisdiction or venue. (Mot. at 24 & n.9, ECF No 25 (citing *Brownell*).) But that is reserved for the rare case in which transfer is clearly warranted on the record. This is not that case. Illinois is not a random forum: multiple named plaintiffs are Illinois-based, Illinois statutory claims are at issue, and Suno is alleged to repeatedly do subscription business here and repeatedly deliver the accused service and outputs here. (FAC ¶ 45(a13)–(a16), (a21), (a23); ¶ 47(a3)–(a6), (a20)-(a23), ECF No. 17.) Where the chosen forum has substantial ties to the dispute, § 1404(a) requires a real showing of *clear* superiority, not a home-court request.

contracting, subscription billing, service performance, and output delivery as "mere access" or "legally irrelevant." That framing is incorrect (for the same reasons it is incorrect regarding personal jurisdiction and venue), and it cannot justify transfer.

**A.      Private-interest factors do not favor transfer; at most, Suno shows a preference for litigating at home.**

*First*, this case is not limited to a one-time "development" event in Massachusetts. Plaintiffs challenge the ongoing commercialization and dissemination of a subscription product—commercialization that, as alleged, occurs in Illinois as a matter of course. Suno repeatedly sells subscriptions to Illinois residents, repeatedly performs the service for users located here, and repeatedly transmits and delivers outputs into this District as the very product it monetizes. (FAC ¶ 45(a13)–(a16), (a21), (a23); ¶ 47(a3)–(a6), (a20)-(a23), ECF No. 17.) Those are operative events in this forum. Suno's "Illinois has virtually no relationship" assertion (Mot. at 26, ECF No 25) simply ignores what the FAC pleads.

*Second*, Suno's "Massachusetts documents" argument is a headquarters presumption, not a showing. The evidence in this case is overwhelmingly digital (model artifacts, training/ingestion records, generation logs, account/subscriber records, analytics). Suno offers no sworn declaration identifying what evidence is meaningfully location-bound or why production in Illinois is impracticable. [6] If "where the servers and employees sit" were enough, transfer would be automatic in every technology case. Section § 1404(a) requires more.

---

[6] Notably, Suno submits no sworn evidence to support its "Massachusetts-only" situs narrative. It offers no declaration from any witness with personal knowledge rebutting the FAC's detailed allegations of Illinois subscription contracting, in-forum service performance, and in-District transmissions; its exhibits are pleadings from other cases, not proof of where the operative events occurred. Unsupported statements of counsel in briefs are not evidence and do not count. *IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606, 610–11 (7th Cir. 2006); *United States ex rel. Feingold v. AdminaStar Fed., Inc.*, 324 F.3d 492, 494 (7th Cir. 2003).

*Third*, Suno identifies solely their party witnesses—its CEO, President, and CTO— supported by LinkedIn pages. (Mot. at 27–28, ECF No 25.) That does not establish that Massachusetts is *clearly* more convenient. Courts give the greatest weight to non-party witnesses and require concrete showings (who the witnesses are, what they will say, and why the forum matters). *Law Bulletin Publ'g Co. v. LRP Publ'ns, Inc.*, 992 F. Supp. 1014, 1017–19 (N.D. Ill. 1998); *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167–68 (N.D. Ill. 1995). Suno makes no such showing here. And its suggestion that "replacement Plaintiffs are likely available" (Mot. at 28) is not a convenience factor—it is a concession that Suno's theory depends on minimizing the Illinois plaintiffs to justify a forced move.

*Fourth*, even in a putative class action, plaintiffs' chosen forum deserves real weight when it has meaningful ties to the dispute. *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003). Here, multiple named plaintiffs are Illinois-based, Illinois statutory claims are central, and Suno is alleged to have repeatedly engaged in the subscription commerce, service performance, and output delivery at issue in Illinois. (FAC ¶ 45(a)(13)–(a)(16), (a)(23); ¶ 47(a)(3)–(a)(6), (a)(20)–(a)(23), ECF No. 17.) On this record, transfer would do what § 1404(a) forbids: shift inconvenience from Suno to Plaintiffs. *Heller*, 883 F.2d at 1293.

In short, Suno has shown, at most, that Massachusetts is more convenient *for Suno*. That is not enough. Transfer is improper where it would merely shift the inconvenience from the defendant to the plaintiffs. *Heller*, 883 F.2d at 1293.

**B.      Interest of justice does not favor transfer.**

Suno asserts that the "interest of justice" favors transfer due to related litigation, docket statistics, and Judge Saylor's involvement in Massachusetts. (Mot. at 29, ECF No 25.) The record cuts the other way.

"Related litigation" is not an efficiency trump card. Suno's "related litigation" pitch assumes what it cannot show: that the Massachusetts case replicates this one. It does not. And to the extent there is a discrete overlap, coordination tools exist short of exporting an Illinois-anchored case (including Illinois statutory claims) to the defendant's home forum.

Suno's own scheduling posture undercuts its "efficiency" narrative. Suno invokes speed and efficiency, yet in this case, it proposed a schedule that would keep fact discovery open until August 5, 2027, and push dispositive motions until February 3, 2028. (Joint Status Report at 3–4, ECF No. 28.) That record reality undercuts any claim that transfer is about accelerating resolution rather than forum preference.

Finally, local interests and familiarity do not favor Massachusetts. Both courts can apply federal copyright law. But Illinois has a concrete interest here: Illinois plaintiffs, Illinois-directed conduct, and Illinois statutory protections. Massachusetts's interest as Suno's headquarters does not eclipse Illinois's interest in adjudicating an Illinois-anchored dispute. Suno's § 1404(a) request should be denied.

## CONCLUSION

Suno asks this Court to immunize a nationwide subscription business from suit in Illinois even as it repeatedly contracts with Illinois residents, takes their money, performs its service for users here, and delivers the challenged outputs into this District. Due process does not permit that result. Nor do the venue statute, first-to-file doctrine, or § 1404(a) authorize Suno to export this Illinois-anchored case to Massachusetts based on unsupported assertions rather than the record and governing law.

For these reasons, the Court should deny Suno's motion to dismiss.

30

Dated: February 10, 2026

LOEVY & LOEVY

/s/ Ross Kimbarovsky

_____

Ross Kimbarovsky (6229590)
ross@loevy.com
Jon Loevy (6218524)
jon@loevy.com
Michael Kanovitz (6275233)
mike@loevy.com
Matthew Topic (6290923)
matt@loevy.com
Aaron Tucek   (98624)
aaron@loevy.com
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
312.243.5900 (phone)
312.243.5902 (fax)

*Attorneys for Plaintiffs David Woulard, Attack the Sound LLC, Stan Burjek, James Burjek, Berk Ergoz, Hamza Jilani, Maatkara Wilson, Arjun Singh, Magnus Fiennes, and Michael Mell.*

31

**CERTIFICATE OF SERVICE**

The undersigned certifies that on February 10, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF System, which shall send notification of such filing to all counsel of record.

/s/ Ross Kimbarovsky

_____

Ross Kimbarovsky

32