# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DAVID WOULARD, ATTACK THE SOUND LLC, an Illinois limited liability company, STAN BURJEK, JAMES BURJEK, BERK ERGOZ, HAMZA JILANI, MAATKARA WILSON, ARJUN SINGH, MAGNUS FIENNES, and MICHAEL MELL, each individually and on behalf of all others similarly situated, | Case No. 25-cv-12684 <br><br> District Judge Andrea R. Wood <br><br> Magistrate Judge Heather K. McShain |
| Plaintiffs, | |
| v. | |
| SUNO, INC. and UNKNOWN DEFENDANTS, | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO SUNO'S MOTION TO STAY DISCOVERY**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

LEGAL STANDARD............................................................................................................2

ARGUMENT .......................................................................................................................3

    A.    A Stay Will Prejudice Plaintiffs....................................................................3

        1.  Suno's alleged conduct continues and escalates daily ......................................3

        2.  Core evidence is time-sensitive, dynamic, and exclusively in
Suno's control ....................................................................................................4

        3.  No discovery is proceeding anywhere; this is a nationwide freeze ..................5

        4.  The absence of a preliminary-injunction motion does not
eliminate prejudice ............................................................................................6

    B.    A Stay Will Not Simplify the Issues........................................................................7

        1.  Suno's underlying motion to dismiss is not clearly dispositive........................7

        2.  Transfer, or threshold forum relief does not eliminate discovery; it
changes where discovery is supervised..............................................................8

        3.  Suno's contradictory positions in Massachusetts undermine
the first-to-file premise .....................................................................................8

    C.    Suno Has Not Shown A Concrete Burden That Justifies A Blanket Stay ...............9

        1.  A stay defers the burden and does not reduce it ..............................................10

        2.  The "duplicative discovery" concern is illusory it..........................................11

    D.    In the Alternative, the Court Should Permit Targeted Discovery and
Preservation Steps Rather Than Impose a Blanket Freeze ...................................11

        1.  Jurisdictional discovery should proceed if the Court requires quantitative
evidence ...........................................................................................................12

2. Basic preservation steps should proceed regardless ........................................12

3. Phased discovery, not blanket freeze, is the appropriate  compromise ...........13

CONCLUSION...............................................................................................................14

iii

## TABLE OF AUTHORITIES

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
   230 F.3d 934, 946 (7th Cir. 2000) ........................................................................12

*Gestamp Chattanooga, LLC v. Lincoln Elec. Automation, Inc.*,
   2022 WL 20613653, at *2 (E.D. Tenn. June 7, 2022) ...............................................6

*Harper v. Cent. Wire, Inc.*,
   2020 WL 5230746, at *1 (N.D. Ill. Sept. 2, 2020) .......................................2, 3, 6, 10

*In re Clearview AI, Inc. Consumer Priv. Litig.*,
   2021 WL 5862495, at *1 (N.D. Ill. Aug. 31, 2021) ..........................................2, 6, 8

*Justice v. Suno, Inc.*,
   No. 25-cv-11739, ECF No. 1 (D. Mass. June 14, 2025) ........................2, 5, 8, 9, 11

*Medline Indus., Inc. v. C.R. Bard, Inc.*,
   2019 WL 10948865, at *2 (N.D. Ill. Sept. 10, 2019) .................................................6

*Patterson v. Avery Dennison Corp.*,
   281 F.3d 676, 681 (7th Cir. 2002) ...........................................................................2

*Rodriguez v. Ford Motor Company*,
   2022 WL 704780, at *1 (N.D. Ill. Mar. 9, 2022) .......................................................7

*SK Hand Tool Corp. v. Dresser Indus., Inc.*,
   852 F.2d 936, 945 (7th Cir. 1988) ...........................................................................2

*Syngenta Seeds, Inc. v. BTA Branded, Inc.*,
   No. 05-C-6673, 2007 WL 3256848, at *2 (N.D. Ill. Nov. 1, 2007) ...........................3

UMG Recordings, Inc. v. Suno, Inc.,
   No. 24-cv-11611, ECF No. 1 (D. Mass. June 24, 2024) .........................................11

*U.S. ex rel. Robinson v. Ind. Univ. Health Inc.*,
   No. 13-cv-2009, 2015 WL 3961221, at *5 (S.D. Ind. June 30, 2015) ......................10

### RULES

Fed. R. Civ. P.
   12 .........................................................................................................................1

   26(c) .....................................................................................................................1

   26(c(1) ..................................................................................................................2

## INTRODUCTION

Suno asks this Court for extraordinary relief: a blanket order halting all discovery solely because Suno has filed a multi-theory Rule 12 motion that is not clearly dispositive and is, at most, a forum dispute. The stay motion is the capstone of a delay strategy: challenge jurisdiction despite extensive Illinois contacts, invoke first-to-file despite materially different cases, and then seek a blanket freeze to run out the clock.

In this District, discovery does not stop automatically when a Rule 12 motion is pending. A discovery stay is a form of protective order relief under Rule 26(c), and Suno bears the burden to show "good cause" for the particular stay it seeks, based on the facts and practical realities of this case, not generalized concerns about what Plaintiffs "might" request. Suno cannot meet that burden here.

Each of the governing factors cuts against a blanket stay. First, Plaintiffs will be prejudiced by freezing the case at the outset, where the most important evidence is technical, time-sensitive, and overwhelmingly in Suno's possession, particularly while Suno continues to operate and scale the challenged subscription service. Second, a stay will not materially simplify anything. Suno's pending motion is a contested, alternative request for threshold forum relief; even if the Court grants some portion of it, discovery will still be necessary to resolve Plaintiffs' claims in the proper forum. Third, Suno's burden arguments are premature and overstated. The proper tools are proportionality, sequencing, and a protective order, not an across-the-board shutdown.

Suno's "duplicative discovery" premise, its chief attempt at case-specific justification, does not withstand scrutiny. Suno points to "related" Massachusetts litigation, but it identifies no concrete discovery currently underway there that would be duplicated by proceeding here, and

no specific discovery conflict that the Court can avoid by imposing a blanket freeze. The Massachusetts case Suno invokes, *Justice v. Suno, Inc.*, No. 25-cv-11739 (D. Mass.), is itself frozen. Suno filed a motion to dismiss there in August 2025; that motion remains pending with no ruling. There is no active discovery in *Justice*. No scheduling order. No protective order. No ESI protocol. No document production. There is nothing to duplicate and nothing to conflict with. A stay based on speculative duplication would do exactly what courts warn against: convert the filing of a threshold motion into a de facto discovery moratorium, even where the motion is contested and seeks alternative relief rather than clearly ending the case.

The Court should deny Suno's request for a blanket stay. The practical effect if this Court grants the stay is stark: Suno, a company valued at $2.45 billion, having just raised $250 million in its Series C round, claiming "millions of creators" on its platform, would face zero discovery obligations to any independent artist plaintiff in any court in the country. That is not judicial economy. It is a litigation holiday.

## LEGAL STANDARD

A motion to stay discovery is a request for a protective order under Rule 26(c), and the movant bears the burden of establishing "good cause." Fed. R. Civ. P. 26(c)(1); see also *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (district courts have broad discretion to manage discovery). "There is no requirement that discovery cease during the pendency of a motion to dismiss." *Harper v. Cent. Wire, Inc.*, 2020 WL 5230746, at *1 (N.D. Ill. Sept. 2, 2020) (denying motion to stay) (citing *SK Hand Tool Corp. v. Dresser Indus., Inc.*, 852 F.2d 936, 945 (7th Cir. 1988)). The "mere filing of" a motion to dismiss "does not automatically stay discovery." *In re Clearview AI, Inc. Consumer Priv. Litig.*, 2021 WL 5862495, at *1 (N.D. Ill. Aug. 31, 2021). Courts evaluate three factors: whether the stay will prejudice the non-movant, whether it will simplify the issues, and whether it will reduce the burden of litigation for

the parties or the court. *Harper*, 2020 WL 5230746, at *1. Courts also recognize that a defendant's "discovery will be unnecessary if we win" argument "is true anytime a dispositive motion is filed," and that granting stays on that basis alone would "allow the exception to swallow the rule." *Harper,* 2020 WL 5230746, at *2 *(quoting Syngenta Seeds, Inc. v. BTA Branded, Inc*., No. 05-C-6673, 2007 WL 3256848, at *2 (N.D. Ill. Nov. 1, 2007)).

## ARGUMENT

Suno seeks an extraordinary remedy: a blanket, case-wide halt to all discovery based solely on the pendency of its threshold motion. (ECF No. 27.) Rule 26(c) requires good cause, and broad discovery stays are the exception, not the default, especially where, as here, the movant offers only generalized assertions of burden and speculation about what discovery "will" entail.[1] Each factor weighs against Suno's request.

### A. A Stay Will Prejudice Plaintiffs

### 1. Suno's alleged conduct continues and escalates daily.

Plaintiffs are independent musicians and songwriters whose livelihoods depend on licensing, attribution, and control over their work. The FAC alleges that Suno has built a mass-market AI music-generation engine by systematically copying and exploiting the creative works of thousands of independent artists and continues to do so on a daily basis. (FAC ¶¶ 1–3, 65–67, ECF No. 17.) Suno is not pausing operations while it litigates jurisdictional motions. It continues to sell subscriptions, deliver AI-generated outputs to users, iterate on its models, and expand its user base. Every day the case is frozen, the scope of the alleged harm grows: more works are

---

[1] That baseline is reinforced by this Court's case-management procedures, which expressly remind litigants that "unless provided for under applicable law, the pendency of a dispositive motion does not, in itself, operate to stay discovery." https://www.ilnd.uscourts.gov/judge_display.php?LastName=Wood

potentially ingested, more outputs are generated and distributed, and more Illinois residents are affected.

The pace and scale of Suno's operations underscore the prejudice of delay. In November 2025, Suno announced a $250 million Series C funding round at a $2.45 billion valuation, publicly claiming "millions of creators" on its platform.[2] This is not a static defendant preserving a stable evidentiary record while a jurisdictional question is sorted out. It is a rapidly scaling enterprise whose allegedly infringing conduct is compounding in real time.

### 2. Core evidence is time-sensitive, dynamic, and exclusively in Suno's control.

This case turns on technical and business records that are uniquely within Suno's possession, including (among other things) model architecture and version history; training data provenance and ingestion workflows; operational logs reflecting how the service functioned at particular points in time; account and subscription records; and internal analytics tying usage and revenue to geography. Plaintiffs have no alternative source for that evidence.

That asymmetry is material in every case involving defendant-held evidence, but it is particularly acute here because Suno's product is not static. Suno develops and deploys AI models on compressed timelines, regularly releasing new versions that supersede prior ones. (FAC ¶¶ 51, 55-64, ECF No. 17.) Its terms of service contemplate routine deletion and removal of user-associated content, including upon user request.[3] Its privacy policy authorizes data disposal consistent with its retention practices.[4] In that environment, operational evidence— system logs, analytics snapshots, pipeline configurations, and internal decision records—does

---

[2] "The Future of Music is Already Here", https://suno.com/blog/series-c-announcement
[3] https://suno.com/terms-of-service (Conditions of Access and Use and Termination sections, among others).
[4] https://suno.com/privacy

not reside in a filing cabinet awaiting production. It ages out. Retention windows close. Systems are deprecated. Personnel who understood how earlier versions worked have moved on.

Suno dismisses these concerns as "speculation." (Mot. at 5–6, ECF No. 27.) But Suno bears the burden of showing good cause for the stay, and it has submitted no declaration from an engineer, a records custodian, or anyone else, describing what categories of evidence it is preserving, through what mechanisms, or whether its litigation hold extends to the kinds of ephemeral operational data (ingestion logs, session analytics, model training metadata) that typically carry limited retention periods absent affirmative intervention. Its sole assurance, that it "has taken the appropriate steps to preserve relevant documents and information" (Mot. at 6, ECF No. 27), is an unsworn attorney argument. That is not the kind of concrete showing that justifies freezing discovery in a case where the plaintiff has no independent access to the evidence, and the defendant's systems are changing in real time.

### 3. No discovery is proceeding anywhere; this is a nationwide freeze.

Suno argues that Plaintiffs' concerns are mitigated because "similar, largely overlapping litigation is pending in the District of Massachusetts." (Mot. at 1, ECF No. 27.) But the question on this motion is not whether other lawsuits exist; it is whether Suno has shown concrete, near-term duplication that a blanket stay would avoid. Suno has not. Suno identifies no actual discovery schedule or concrete overlap that would be duplicated today. And importantly, the Massachusetts case Suno invokes, *Justice v. Suno, Inc.*, No. 25-cv-11739 (D. Mass.), has no active discovery. Suno filed a motion to dismiss in that case in August 2025, and that motion remains pending with no ruling. There is no scheduling order, no protective order, no ESI protocol, and no document production underway. If this Court grants the stay, the result is not a "brief" pause while another court handles the issues. The result is an indefinite, nationwide

5

freeze in which Suno faces no discovery obligations to any independent artist plaintiff in any forum.[5]

This is not the posture contemplated by the cases Suno cites. Those cases involve stays where discovery is ready to proceed in an alternative forum or where the pending motion would truly end the case. *See, e.g., Gestamp Chattanooga, LLC v. Lincoln Elec. Automation, Inc.*, 2022 WL 20613653, at *2 (E.D. Tenn. June 7, 2022) (first-to-file would "dispose of [the] case in its entirety"). Here, there is no alternative forum with active discovery, and Suno is simultaneously trying to dismiss the Massachusetts case on the merits. The prejudice is real and compounding.

### 4. The absence of a preliminary-injunction motion does not eliminate prejudice.

Suno contends that Plaintiffs' decision not to seek a preliminary injunction "further indicates that a delay at this stage would not prejudice [Plaintiffs] significantly." (Mot. at 6, ECF No. 27) (quoting *Medline Indus., Inc. v. C.R. Bard, Inc.*, 2019 WL 10948865, at *2 (N.D. Ill. Sept. 10, 2019)). That argument proves too much. If the absence of a PI motion meant delay was harmless, no plaintiff who declined to seek emergency relief could ever oppose a stay, and stays would be the presumptive rule rather than the exception courts have said they are. *See Harper*, 2020 WL 5230746, at *2; *In re Clearview AI*, 2021 WL 5862495, at *1.

*Medline* does not support such a sweeping inference. That case involved a two-party patent dispute between sophisticated competitors with roughly symmetrical access to evidence. *See* 2019 WL 10948865, at *1. Here, Plaintiffs are independent musicians pursuing a putative nationwide class action against a company that controls the entirety of the relevant evidence.

---

[5] To the extent Suno relies on the existence of other litigation to argue there is little risk of loss, that cuts both ways: if Suno is already preserving overlapping evidence for other cases, then it is harder for Suno to claim that beginning foundational steps here, Rule 26(f), an ESI protocol, targeted jurisdictional discovery, creates any meaningful incremental burden.

Preliminary injunction motions are rare in this posture, not because delay is costless, but because the procedural demands of a PI in a pre-certification class action are formidable: Plaintiffs would need to demonstrate irreparable harm and likelihood of success on the merits before obtaining class discovery, deposing a single Suno engineer, or reviewing a single line of source code. The decision to forgo that uphill battle says nothing about whether a blanket discovery freeze prejudices the class.

Moreover, the prejudice Plaintiffs face is not the generalized "delay in final resolution" that courts have found insufficient. *See, e.g., Rodriguez v. Ford Motor Company*, 2022 WL 704780, at *1 (N.D. Ill. Mar. 9, 2022). It is the specific, concrete prejudice that results when volatile evidence and critical jurisdictional facts remain locked exclusively in the defendant's control while Suno continues to iterate on its models, scale its platform, and expand the scope of the alleged harm, all without any obligation to produce a single document to any independent artist plaintiff in any court.

### B. A Stay Will Not Simplify the Issues

#### 1. Suno's underlying motion to dismiss is not clearly dispositive.

Suno's "simplification" theory depends on the premise that its motion to dismiss will dispose of this case such that discovery becomes unnecessary. (Mot. at 6–7, ECF No. 27). But Suno's motion is an alternative, multi-theory request for threshold forum relief (dismiss for lack of personal jurisdiction; dismiss/transfer for venue; first-to-file; or transfer). (Mot. at 1-3, ECF No 25.) The motion is contested, and its structure underscores the point: it does not present a single, clean dispositive issue that would predictably end the litigation. In these circumstances, a blanket stay does not "simplify" the case; it mostly delays the beginning of the work that will need to be done, regardless of where the case proceeds.

**2.     Transfer, or threshold forum relief does not eliminate discovery; it changes where discovery is supervised.**

Even if the Court grants some portion of Suno's requested relief, discovery will still be required to resolve Plaintiffs' claims. A transfer changes the forum; it does not erase the need for discovery. And staying discovery pending a motion that may, at most, change the forum adds delay without avoiding the underlying discovery burden. The relevant question is not whether discovery might later be supervised by another court; it is whether Suno has shown good cause to halt all progress now. It has not. The parties will incur the same discovery costs in Massachusetts that they would incur here; the only difference is that they will incur them later.

Courts recognize that stays are most warranted when a motion would end the case, not merely relocate it. *See In re Clearview AI*, 2021 WL 5862495, at *1 (stay warranted where motion presented "potentially-dispositive standing argument" that could eliminate a party). A stay pending a motion that would, at most, change the forum amounts to a penalty on the plaintiff for choosing a venue the defendant dislikes.

**3.     Suno's contradictory positions in Massachusetts undermine the first-to-file premise.**

Suno's stay motion relies heavily on the premise that the *Justice* case in Massachusetts will resolve the overlapping issues, rendering discovery here unnecessary. (Mot. 1–2, 6–8, ECF No. 27.) But Suno is not waiting for *Justice* to resolve anything. It is actively trying to destroy it. In August 2025, Suno moved to dismiss the *Justice* complaint, arguing that output-infringement claims fail as a matter of law and that training on copyrighted works constitutes protected fair use. *Justice v. Suno, Inc.*, No. 25-cv-11739, ECF No. 32 (D. Mass. Aug. 18, 2025). That motion remains pending. There has been no ruling and no discovery of any kind.

8

Suno cannot invoke *Justice* as a basis to freeze this case while simultaneously seeking to eliminate *Justice* on the merits. Yet that is precisely what it is doing, and the consequences for Plaintiffs are severe. If this Court grants the stay and the Massachusetts court grants Suno's motion to dismiss, the result is that no independent artist plaintiff has an active, discovery-ready case against Suno anywhere in the country. Suno would have used each court to neutralize the other.

The cases are not, in any event, duplicative as Suno suggests. They involve different named plaintiffs, different proposed class definitions and time periods, different state-law claims, and different theories of relief. (Plaintiffs' Opposition to Suno's Mot. to Dismiss at 21-24, ECF No. 30.) The overlap Suno asserts is at the level of general subject matter (both cases challenge aspects of Suno's AI music platform) not at the level of specific claims, classes, or discovery needs. Critically, the Illinois statutory claims under BIPA, IRPA, and UDTPA, and the Illinois subclasses are unique to this case. (FAC ¶¶ 250–289; ¶ 124(i)–(k), ECF No. 17.) They are not raised in *Justice* and cannot be adjudicated there. A blanket stay freezes claims that no other court is positioned to resolve, and does so based on supposed reliance on a parallel case that is itself stalled and under attack by the very party invoking it.

### C.    Suno Has Not Shown A Concrete Burden That Justifies A Blanket Stay

Suno's burden argument rests on speculation, not evidence. No discovery requests have been served. Suno has not identified any specific interrogatory, document request, or deposition that would be unduly burdensome. Instead, Suno points to the length of the FAC and projects that Plaintiffs "will seek sweeping, technical discovery" into training, development, and operation, including source code and training data. (Mot. at 8, ECF No. 27.) Courts in this District have rejected that approach: "broadly decrying the time and expense that is expected to

be associated with responding to discovery, without any substantiation, does not establish good cause for staying discovery." *Harper*, 2020 WL 5230746, at \*4; *see also U.S. ex rel. Robinson v. Ind. Univ. Health Inc.*, No. 13-cv-2009, 2015 WL 3961221, at \*5 (S.D. Ind. June 30, 2015).

The core evidence in this case is digital: training data, model repositories, ingestion logs, source code, and subscriber analytics. These are business records maintained in the ordinary course and producible under standard ESI protocols. Suno is a well-funded company, with over $500 million in total funding and a $2.45 billion valuation, represented by a major international law firm. It has the resources to manage proportional discovery. To the extent Suno has concerns about scope, the answer is a phased discovery plan and protective order, not a blanket freeze.

### 1. A stay defers the burden and does not reduce it.

If the case is transferred to Massachusetts, discovery proceeds there. It would be the same discovery, on the same claims, involving the same parties and the same technical subject matter. If the case remains here, discovery proceeds here. A stay conserves resources only if the motion to dismiss would end the case entirely. But Suno's motion does not even try to do that. It throws four alternative theories at the wall—personal jurisdiction, venue, first-to-file, and transfer—and three of the four move the case rather than resolve it. The lone theory that could end the litigation, first-to-file dismissal, depends on a Massachusetts case that would not resolve the claims raised here and that Suno is simultaneously trying to kill. As Plaintiffs have demonstrated in their opposition (ECF No. 30), each of these theories is independently flawed. The Court should not freeze this case on the hope that one of four weak arguments might stick, and even if one did, the overwhelming likelihood is that discovery would proceed in a different courtroom, not that it would disappear.

10

Indeed, even the timeline Suno proposed in the Court-ordered Joint Status Report contemplates beginning written discovery on April 1, 2026. (ECF No. 28 at 3–4.) Whatever Suno's position on the merits of its motion to dismiss, its own proposed schedule reflects the reality that this case will require substantial discovery in some forum. A stay does not avoid that reality. It delays it.

### 2. The "duplicative discovery" concern is illusory.

Suno warns that proceeding would "invite duplicative efforts and inconsistent rulings with the related actions pending in the District of Massachusetts." (Mot. 9, ECF No. 27.) But there is no discovery underway in the *Justice* case to duplicate. There are no discovery rulings in Massachusetts to conflict with. The *UMG* case, the only Massachusetts action with any litigation history, is shrinking, not expanding. Moreover, *UMG* is not a class action, does not involve independent artists, and does not raise any of the Illinois statutory claims at issue here.

If and when discovery proceeds in both forums, standard coordination mechanisms— cross-noticed depositions, shared protective orders, parallel ESI protocols, stipulated use of prior productions—can efficiently manage overlap. Courts handle multi-district discovery coordination routinely. The existence of a related case in another district is a reason to coordinate, not a reason to freeze.

### D. In the Alternative, the Court Should Permit Targeted Discovery and Preservation Steps Rather Than Impose a Blanket Freeze.

Even if the Court is inclined to defer full merits discovery, a blanket freeze is the wrong instrument. The Court has several narrower tools at its disposal, any of which would protect Suno's legitimate interests without unduly delaying this case.

### 1. Jurisdictional discovery should proceed if the Court requires quantitative evidence.

Plaintiffs have shown in their opposition to the motion to dismiss that the FAC establishes a prima facie case for personal jurisdiction over Suno based on its extensive, deliberate Illinois contacts, including recurring subscription commerce with Illinois residents, in-forum service delivery, Illinois-directed marketing, and conduct giving rise to Illinois-specific statutory claims. (ECF No. 30 at 4–15.) Plaintiffs do not believe jurisdictional discovery is necessary. But if the Court concludes that quantitative evidence would assist its analysis, the data needed to resolve that question—Illinois subscriber counts (free and paid), Illinois-derived revenue, Illinois-directed advertising and analytics, and geo-location session and delivery logs—are in Suno's exclusive possession. (FAC ¶ 45(a25)–(a34) ), ECF No. 17; ECF No. 30 at 15–16.) A blanket stay in that scenario would create a procedural catch-22: the Court could not resolve the jurisdictional question without the data, and the data could not be obtained without discovery. The Seventh Circuit has recognized that jurisdictional discovery is appropriate precisely in this posture, where the defendant controls the facts bearing on jurisdiction, and the plaintiff has made a threshold showing warranting further inquiry. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000). Whatever the Court's disposition on the stay, it should not foreclose even this narrow, time-limited inquiry.

### 2. Basic preservation steps should proceed regardless.

Certain steps impose no meaningful burden on Suno and protect all parties' interests irrespective of how the Court resolves the stay question:

*First*, the parties should proceed with a Rule 26(f) conference and exchange initial disclosures. These are baseline obligations that frame the litigation and cost Suno nothing it would not eventually owe.

12

*Second*, the Court should enter a preservation order. Suno assures the Court it "has taken the appropriate steps to preserve relevant documents and information" (Mot. at 6, ECF No. 27), but that assurance is an unsworn attorney argument, not a binding commitment. A formal preservation order—covering model version checkpoints, training data snapshots, ingestion and scraping logs, log retention policies for third-party hosted infrastructure, and litigation hold implementation—converts Suno's representation into an enforceable obligation. This is particularly important given that Suno's own terms of service contemplate routine deletion of user-associated data, and its publicly documented model timeline reflects a development cycle in which older systems are regularly superseded. If Suno is already doing what it claims, a preservation order costs it nothing. If it is not, the order protects evidence that cannot be reconstructed.

*Third*, the parties should negotiate a protective order framework, including attorneys'-eyes-only and source-code provisions, so that discovery can begin without delay whenever any stay is lifted. Negotiating a protective order during a stay is standard practice and eliminates one of the primary sources of friction and motion practice at the outset of discovery in technology cases.

These are low-burden steps that advance Rule 1's mandate and avoid preventable disputes later.

### 3. Phased discovery, not blanket freeze, is the appropriate compromise.

If the Court has concerns about the scope of early discovery, the answer is phasing, not paralysis. Plaintiffs are prepared to propose a structured discovery plan beginning with jurisdictional and venue-related discovery (if necessary and requested by the Court), proceeding to the Illinois-specific statutory claims that no other court can adjudicate, and expanding to full

13

federal-merits discovery only after the threshold motions are resolved. This approach addresses all concerns Suno has raised: it limits the early burden, avoids premature merits discovery, and respects the Court's need to resolve jurisdictional questions on a sound record.

What it does not do is what Suno actually wants: to ensure that no independent artist obtains a single document from Suno in any court for the foreseeable future. The Court should not let that happen.

## CONCLUSION

The Court should deny the motion to stay. In the alternative, the Court should (a) permit targeted jurisdictional discovery if it determines quantitative evidence is needed, (b) enter a preservation order, and (c) establish a phased discovery schedule rather than imposing a blanket freeze.

If the stay is granted, Suno achieves a nationwide litigation holiday: zero discovery obligations to any independent artist in any court, while continuing to operate a $2.45 billion platform built on the allegedly unlicensed use of those artists' work.

Dated: February 13, 2026              LOEVY & LOEVY

                                      /s/ Ross Kimbarovsky

                                      _____

                                      Ross Kimbarovsky (6229590)
                                      ross@loevy.com
                                      Jon Loevy (6218524)
                                      jon@loevy.com
                                      Michael Kanovitz (6275233)
                                      mike@loevy.com
                                      Matthew Topic (6290923)
                                      matt@loevy.com
                                      Aaron Tucek   (98624)
                                      aaron@loevy.com
                                      LOEVY & LOEVY

14

311 North Aberdeen, 3rd Floor
Chicago, IL 60607
312.243.5900 (phone)
312.243.5902 (fax)

*Attorneys for Plaintiffs David Woulard, Attack the Sound LLC, Stan Burjek, James Burjek, Berk Ergoz, Hamza Jilani, Maatkara Wilson, Arjun Singh, Magnus Fiennes, and Michael Mell.*

15

**CERTIFICATE OF SERVICE**

The undersigned certifies that on February 13, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF System, which shall send notification of such filing to all counsel of record.

/s/ Ross Kimbarovsky

_____

Ross Kimbarovsky