**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DAVID WOULARD, ATTACK THE SOUND LLC, an Illinois limited liability company, STAN BURJEK, JAMES BURJEK, BERK ERGOZ, HAMZA JILANI, MAATKARA WILSON, ARJUN SINGH, MAGNUS FIENNES, and MICHAEL MELL, each individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SUNO, INC. and UNKNOWN DEFENDANTS, <br><br> Defendants. | Case No. 25-cv-12684 <br><br> District Judge Andrea R. Wood <br><br> Magistrate Judge Heather K. McShain |

**DEFENDANT SUNO, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR LACK OF
PERSONAL JURISDICTION AND IMPROPER VENUE OR,
IN THE ALTERNATIVE, TO TRANSFER VENUE**

**TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................................1

II.  ARGUMENT........................................................................................................1

    A.  This Court Lacks Personal Jurisdiction Over Suno ..................................1

        1.  Plaintiffs Fail to Show Purposeful Direction or Availment.........................1

            a.  Subscription-related allegations do not establish purposeful availment...............................................................................................1

            b.  Suno's alleged market exploitation does not establish purposeful availment.......................................................................3

            c.  Output delivery does not establish purposeful availment ...............4

        2.  Plaintiffs Fail to Show Suit-Related Contacts .............................................6

        3.  Exercising Personal Jurisdiction Over Suno Would Not Comport With Traditional Notions of Fair Play and Substantial Justice....................6

        4.  Jurisdictional Discovery Will Not Cure the FAC's Deficiencies ................7

    B.  Venue Is Improper in This District..........................................................8

    C.  Dismissal or Stay is Warranted Pursuant to the First-to-File Rule........................10

    D.  Alternatively, This Case Should Be Transferred to the District of Massachusetts Under 28 U.S.C. § 1404(a) ...........................................................12

        1.  Private Interest Factors Collectively Favor Transfer.................................12

        2.  Public Interest Factors All Favor Transfer.................................................14

III.  CONCLUSION....................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ..................................................................................................4, 15

*Albany Condominium Association v. Republic Services, Inc.*,
2025 WL 2644577 (N.D. Ill. Sep. 15, 2025) (Wood, J.) ...........................................................7

*Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*,
80 F. Supp. 3d 870 (N.D. Ill. 2015) ..........................................................................................9

*Am. Online, Inc. v. Huang*,
106 F. Supp. 2d 848 (E.D. Va. 2000) ........................................................................................2

*Anchor Wall Sys., Inc. v. R & D Concrete Prods., Inc.*,
55 F. Supp. 2d 871 (N.D. Ill. 1999) ........................................................................................13

*Askin v. Quaker Oats Co.*,
2012 WL 517491 (N.D. Ill. Feb. 15, 2012) ............................................................................12

*Baker Dental Corp. v. Aurex Dental Inc.*,
2014 WL 4414520 (N.D. Ill. Sep. 5, 2014) ..............................................................................2

*Brownell v. Alcon Ent., LLC*,
2017 WL 11884028 (N.D. Ill. Dec. 19, 2017) (Wood, J.)......................................................12

*Bureau of Cons. Fin. Prot. v. Fifth Third Bank*, N.A.,
2021 WL 534658 (N.D. Ill. Feb. 12, 2021) (Wood, J.) .....................................................12, 14

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)..........................................................................................................1, 2, 7

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
230 F.3d 934 (7th Cir. 2000) .....................................................................................................8

*Concord Music Group, Inc. v. Anthropic PBC*,
738 F. Supp. 3d 973 (M.D. Tenn. 2024)....................................................................................4

*Dixon v. Gatzke*,
790 F. Supp. 3d 679 (N.D. Ill. 2025) ........................................................................................8

*Dzananovic v. Bumble, Inc.*,
2023 WL 4405833 (N.D. Ill. July 7, 2023) (Wood, J.)...........................................................3, 4

ii

*Ford Motor Company v. Montana Eighth Judicial District Court*,
    592 U.S. 351 (2021)................................................................................6

*George & Co. LLC v. Target Corp.*,
    2021 WL 2948910 (N.D. Ill. July 14, 2021)....................................14, 15

*Howell v. Bumble, Inc.*,
    2023 WL 6126492 (N.D. Ill. Sep. 19, 2023) ...........................................7

*IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*,
    437 F.3d 606 (7th Cir. 2006) ...............................................................13

*Ill. Comput. Rsch., LLC v. Harpercollins Publishers, Inc.*,
    2010 WL 4877501 (N.D. Ill. Nov. 22, 2010) ........................................13

*Illinois v. Hemi Group LLC*,
    622 F.3d 754 (7th Cir. 2010) ..................................................................3

*In re National Presto Industries, Inc.*,
    347 F.3d 662 (7th Cir. 2003)................................................................14

*Jaramillo v. DineEquity, Inc.*,
    664 F. Supp. 2d 908 (N.D. Ill. 2009) ...................................................15

*John Crane Inc. v. Simon Greenstone Panatier Bartlett, APC*,
    2017 WL 1093150 (N.D. Ill. Mar. 23, 2017)..........................................9

*Justice v. Suno, Inc.*,
    No. 25-cv-11739 (D. Mass. filed June 14, 2025)..............................1, 15

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
    787 F.3d 1237 (9th Cir. 2015) ..............................................................10

*Lou v. Belzberg*,
    834 F.2d 730 (9th Cir. 1987) ................................................................14

*Martino v. Orchard Enters., Inc.*,
    2020 WL 6287400 (N.D. Ill. Oct. 27, 2020)............................................9

*N. Grain Mktg., LLC v. Grieving*,
    743 F.3d 487 (7th Cir. 2014) ..................................................................2

*N. Tex. Equal Access Fund v. Thomas More Soc'y*,
    728 F. Supp. 3d 887 (N.D. Ill. 2024) .....................................................8

*NBA Props., Inc. v. HANWJH*,
    46 F.4th 614 (7th Cir. 2022) ..................................................................3

iii

*Nicholson v. Nationstar Mortg. LLC of Del.*,
  2018 WL 3344408 (N.D. Ill. July 6, 2018)...................................................................10, 11, 12

*Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*,
  338 F.3d 773 (7th Cir. 2003) .........................................................................................6

*Research Automation, Inc. v Schrader-Bridgeport International, Inc.*,
  626 F.3d 973 (7th Cir. 2010) ...................................................................................10, 11

*Rogers v. City of Hobart*,
  996 F.3d 812 (7th Cir. 2021) .........................................................................................1

*Rosen v. Spirit Airlines, Inc.*,
  152 F. Supp. 3d 1055 (N.D. Ill. 2015) ...........................................................................15

*Serlin v. Arthur Andersen & Co.*,
  3 F.3d 221 (7th Cir. 1993) ...........................................................................................11

*Shenzhen AJI Fashion Tech. Co. Ltd. v. WhaleCo Inc.*,
  2024 WL 2845974 (N.D. Ill. June 5, 2024) .................................................................7, 13

*Siswanto v. Airbus*,
  153 F. Supp. 3d 1024 (N.D. Ill. 2015) .............................................................................8

*Smith v. Bayer Corp.*,
  564 U.S. 299 (2011)...................................................................................................11

*Strategic Lending Solutions LLC v. United Defense Group, LLP*,
  2014 WL 5461583 (N.D. Ill. Oct. 28, 2014)....................................................................11

*Telemedicine Sols. LLC v. WoundRight Techs., LLC*,
  27 F. Supp. 3d 883 (N.D. Ill. 2014) ................................................................................3

*uBID, Inc. v. GoDaddy Group*,
  623 F.3d 421 (7th Cir. 2010) .....................................................................................3, 4

*UMG Recordings, Inc. v. Archive*,
  2023 WL 8520587 (S.D.N.Y. Dec. 8, 2023) ................................................................13, 15

*United States ex rel. Feingold v. AdminaStar Fed., Inc.*,
  324 F.3d 492 (7th Cir. 2003) .......................................................................................13

*Walden v. Fiore*,
  571 U.S. 277 (2014)......................................................................................................4

*Winters v. Soo Line R.R.*,
  2024 WL 3275398 (N.D. Ill. July 2, 2024)........................................................................5

**STATUTES**

28 U.S.C.
§ 1391(b)(1) ..............................................................................................................8
§ 1391(b)(2) ...........................................................................................................8, 9
§ 1391(b)(3) ..............................................................................................................8
§ 1400(a) ...................................................................................................................8
§ 1404(a) ...............................................................................................................1, 12

## I.     INTRODUCTION

This case does not belong in Illinois. Plaintiffs' Opposition (Dkt. 30) confirms what Suno's Opening Brief (Dkt. 25) made clear: there is no adequate nexus between Illinois and Plaintiffs' claims. Plaintiffs abandon general jurisdiction and fail to establish specific jurisdiction, resting on insufficient submissions regarding Suno's subscription business and user-initiated output delivery, and citing no long-term contractual relationship or targeted marketing to Illinois. Venue is likewise improper, as Plaintiffs' claims center on Suno's Massachusetts-based AI development, not tangential subscription processing. The first-to-file rule independently warrants dismissal given the substantially similar *Justice v. Suno, Inc.*, No. 25-cv-11739 (D. Mass. filed June 14, 2025), putative class action pending in Massachusetts. Alternatively, 28 U.S.C. § 1404(a) warrants transfer to Massachusetts. The Court should dismiss, stay, or transfer this case.

## II.     ARGUMENT

### A.     This Court Lacks Personal Jurisdiction Over Suno

To establish specific jurisdiction, Plaintiffs must plead facts showing: "(1) [Suno] has purposefully directed [its] activities at the forum state or purposefully availed [itself] of the privilege of conducting business in the state; (2) [Plaintiffs'] alleged injury arises out of or relates to [Suno's] forum-related activities; and (3) any exercise of personal jurisdiction … comport[s] with traditional notions of fair play and substantial justice." *Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021). Plaintiffs make no *prima facie* showing on any prong, let alone all three.

#### 1.     Plaintiffs Fail to Show Purposeful Direction or Availment

##### a.     Subscription-related allegations do not establish purposeful availment

Plaintiffs wrongly assert that Suno's Illinois users' subscriptions create "continuing, revenue-generating contractual relationships" sufficient under *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), to show purposeful availment. Dkt. 30 at 7. The defendant there "reached

out" to Burger King's home state of Florida to "negotiate[] with a Florida corporation for the purchase of a long-term franchise" and then enter a "carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts[,] … long-term and exacting regulation of his business from Burger King's Miami headquarters[,] … and manifold benefits that would derive from affiliation with a nationwide organization." *Burger King*, 471 U.S. at 479–80. Based on the "quality and nature" of the franchisee's relationship with the Florida corporation, the Supreme Court ruled that its extensive contacts with Florida were not "random, fortuitous, or attenuated." *Id.* at 480.

Applying *Burger King*, the Seventh Circuit has held that "contracting with an out-of-state party *alone* cannot establish automatically sufficient minimum contacts in the other party's home forum." *N. Grain Mktg., LLC v. Grieving*, 743 F.3d 487, 493 (7th Cir. 2014) (emphasis added). Rather, consistent with *Burger King*, courts evaluate the parties' "prior negotiations, contemplated future consequences, the terms of the contract, and the parties' course of actual dealing with each other." *Id.* Accordingly, exercising personal jurisdiction over an out-of-state defendant based on a contractual relationship is inappropriate where the in-state plaintiff initiated contact with the defendant and the contracts involve "discrete task[s]" rather than continuing obligations. *Id.* at 494–96; *see also Baker Dental Corp. v. Aurex Dental Inc.*, 2014 WL 4414520, at *3 & n.4 (N.D. Ill. Sep. 5, 2014) (rejecting the view that the discrete task of collecting payment was a sufficient continuing obligation, despite repeated commercial transactions between the parties).

Here, Plaintiffs ask this Court to exercise personal jurisdiction based on the simple fact that its website accepts and processes subscription payments initiated by the users themselves. Dkt. 30 at 7–8. But Suno's collection of subscription payments is not the sort of ongoing, commercial relationships envisioned by *Burger King* and its progeny. *See Am. Online, Inc. v. Huang,* 106 F.

2

Supp. 2d 848, 857 (E.D. Va. 2000) (domain name registration contracts do not create an "ongoing relationship of substance, any more than a magazine subscription creates an ongoing relationship between the publisher and subscriber").

        **b.**     **Suno's alleged market exploitation does not establish purposeful availment**

Plaintiffs next argue that Suno exploits the Illinois market through its subscription service. Dkt. 30 at 8–10. However, as Suno has explained, the operative complaint ("FAC") (Dkt. 17) lacks any allegations that Suno deliberately sought out Illinois users. Dkt. 25 at 11–14.

In *Dzananovic v. Bumble, Inc.*, 2023 WL 4405833, at *4 (N.D. Ill. July 7, 2023) (Wood, J.), this Court relied not merely on "thousands of paying users who [were] Illinois residents" but on Bumble's nationwide advertising campaign, extensive Chicago-targeted marketing, and collection of personally identifiable information for targeted marketing to find purposeful availment. Dkt. 25 at 12. Similarly, *uBID, Inc. v. GoDaddy Group*, 623 F.3d 421, 427–33 (7th Cir. 2010), turned on high-profile nationwide marketing and a "blanket of advertising in Illinois," including on billboards at Chicago-based sporting events. Dkt. 25 at 12–13.

Unlike in *Dzananovic* and *uBID*, the FAC makes no specific allegations that Suno purposefully targeted Illinois users through extensive in-forum and nationwide marketing such that it can be said that Suno "structur[ed] … its own activities so as to target" Illinois.[1] *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624 (7th Cir. 2022); *see also Telemedicine Sols. LLC v.*

---

[1] Plaintiffs briefly mention *Illinois v. Hemi Group LLC*, 622 F.3d 754 (7th Cir. 2010), to support their argument that Suno deliberately exploits the Illinois market. Dkt. 30 at 6–7, 10. That case is inapposite. The defendant in *Hemi* shipped physical products into Illinois, calculated shipping charges based on customers' zip codes, deliberately "excluded New York residents from its customer pool," and "expressly elected to do business with the residents of forty-nine states" by stating that it would ship its product to any state but New York. *Hemi*, 622 F.3d at 757–58. Absent here is any allegation that Suno affirmatively directs access of its platform to—or away from—any particular jurisdiction.

*WoundRight Techs., LLC,* 27 F. Supp. 3d 883, 900–01 (N.D. Ill. 2014). Plaintiffs' allegations boil down to Suno's mere operation of a website accessible by Illinois residents. That is insufficient to establish specific jurisdiction.[2]

### c. Output delivery does not establish purposeful availment

Plaintiffs contend, without support, that Suno's "repeated[] perform[ance] [of] the core service for Illinois users" and delivery of music outputs to those users establish purposeful availment. Dkt. 30 at 8. That contention fails, as another court held. *See Concord Music Group, Inc. v. Anthropic PBC*, 738 F. Supp. 3d 973, 988–89 (M.D. Tenn. 2024). Moreover, as the Seventh Circuit ruled, "[h]aving an 'interactive website' … should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible. To hold otherwise would offend 'traditional notions of fair play and substantial justice.'" *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014).

In *Concord*, while defendant's AI model was accessible in Tennessee and delivered lyric outputs to Tennessee users upon request, the court held such facts were insufficient to show purposeful availment, reasoning that the plaintiffs failed to show that the defendant "deliberately interacted with Tennessee residents in a meaningful way beyond 'random or fortuitous events' of users interacting with [defendant's AI product] … while in Tennessee." *Id.* at 988. As to allegedly infringing outputs, the court explained that the plaintiffs' argument was "simply another way of saying users can access [defendant's] Claude AI models while in Tennessee." *Id.* at 989. Contrary

---

[2] For the same reasons, nor does Suno's alleged awareness of its Illinois user base establish Suno's deliberate and continuous exploitation of the Illinois market. Dkt. 30 at 9–10. Plaintiffs' cited cases finding deliberate exploitation of the Illinois market did not turn on mere knowledge of an Illinois user base. *See uBid*, 623 F.3d at 428; *Dzananovic*, 2023 WL 4405833, at *4. *Walden v. Fiore*, 571 U.S. 277 (2014) is also of no help to Plaintiffs because the Supreme Court rejected the view that the defendant had sufficient contacts with the forum "simply because he allegedly directed his conduct at plaintiffs whom he knew had [forum] connections." *Id*. at 289.

to Plaintiffs' submission, Dkt. 30 at 13, the same result obtains here. Plaintiffs' allegations simply repackage their allegation that Suno's AI model is accessible to users in Illinois.

Plaintiffs also focus on Suno's operation of its geographically-neutral web platform where Illinois users can "submit prompts and requests from Illinois devices," "Suno's systems receive those requests at Suno-controlled endpoints," and then Suno "generate[s] and deliver[s] music outputs back to users in Illinois." Dkt. 30 at 8. Despite Plaintiffs' protestations to the contrary, Plaintiffs' allegations merely describe an interactive web platform that Illinois residents—just like residents in any other state—have the ability to use. That does not suffice to establish Suno's purposeful availment of Illinois. *See* Dkt. 25 at 10–11.

Curiously, the FAC points to Suno's failure to geoblock Illinois users from its website as a relevant jurisdictional contact, but Plaintiffs' Opposition then disclaims reliance on that theory. *Compare* Dkt. 17 ¶ 45(a7) *with* Dkt. 30 at 10. Similarly, the FAC alleges that Suno's web traffic is routed to Suno's servers outside of Illinois through Illinois-based servers operated by Cloudflare, and that this creates a jurisdictionally-relevant contact—but, again, the Opposition minimizes reliance on this theory. *Compare* Dkt. 17 ¶ 45(a17), (a52)–(a55) *with* Dkt. 30 at 10–11. Consequently, Plaintiffs have "abandon[ed]" these allegations as a sufficient basis for personal jurisdiction by failing to engage with them or Suno's rebuttals. *Cf. Winters v. Soo Line R.R.,* 2024 WL 3275398, at *7 (N.D. Ill. July 2, 2024) (holding that plaintiff abandoned claims by failing to develop legal arguments in response to contentions in defendant's motion). In any event, as demonstrated in Suno's Opening Brief, such allegations cannot establish purposeful availment. *See* Dkt. 25 at 9–10, 14–16.

### 2.     Plaintiffs Fail to Show Suit-Related Contacts

Plaintiffs argue that they satisfy the "relate to" prong under *Ford Motor Company v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021), because their copyright and state-law allegations "connect Suno's Illinois-directed commercialization and dissemination of the accused product to the claims being asserted." Dkt. 30 at 11, 14. They are wrong.

First, Plaintiffs ignore that the defendant in *Ford* conceded purposeful availment. *Ford*, 592 U.S. at 361. Suno has not.

Second, unlike in *Ford*, where the defendant "systematically served" the forum market through extensive in-forum marketing, including "billboards, TV and radio spots, print ads, and direct mail," the FAC lacks any allegations of in-forum marketing—extensive or otherwise.

Third, the gravamen of Plaintiffs' claims is Suno's acquisition, maintenance, and use of audio and lyric files to train its AI tool—and the process by which that tool generates original music. Dkt. 17 ¶¶ 1, 8–9, 70–123; Dkt. 25 at 19–21; *infra* at 10–11. Importantly, Suno's development, training, and operation of its AI models occur outside Illinois. Dkt. 25 at 19–20. Yet Plaintiffs' commercialization theory addresses only how users *access* Suno's service—attenuated contacts that establish a weak relationship (at best) between Suno, Illinois, and Plaintiffs' copyright and state-law claims. *Id.*

### 3.     Exercising Personal Jurisdiction Over Suno Would Not Comport With Traditional Notions of Fair Play and Substantial Justice

Finally, exercising personal jurisdiction over Suno would offend traditional notions of fair play and substantial justice. Several factors guide this inquiry, including the burden on the defendant, the forum state's interest, the plaintiff's interest in obtaining convenient and effective relief, and the interstate judicial system's interest in efficient resolution. *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 781 (7th Cir. 2003). Because Plaintiffs fail to establish

6

either purposeful availment or suit-related contacts, Suno need not "present a compelling case" that exercising jurisdiction would be unreasonable. *Burger King*, 471 U.S. at 477; *Howell v. Bumble, Inc.*, 2023 WL 6126492, at *3 (N.D. Ill. Sep. 19, 2023).

Nevertheless, jurisdiction is unreasonable here. Suno is headquartered in Massachusetts, where its witnesses and key evidence are located, and Massachusetts has the greater interest in regulating a company headquartered there. Dkt. 25 at 27–28, 30. The related pending actions in Massachusetts compound the unreasonable burdens on Suno of litigating here. *Id.* Similarly, the interstate judicial system's interest would not be served by litigating here given the substantially similar *Justice* suit in Massachusetts. *Id.* at 29–30. In contrast, Illinois's interest is less significant because only some named Plaintiffs are located here, *id.* at 29, and Plaintiffs can obtain the same relief in any federal court. *Cf. Shenzhen AJI Fashion Tech. Co. Ltd. v. WhaleCo Inc.*, 2024 WL 2845974, at *8 (N.D. Ill. June 5, 2024) (both transferee and transferor courts equally competent to hear federal law claims and apply Illinois law for potential Illinois law claims).

In sum, Plaintiffs fail to make the required *prima facie* showing for prongs of the specific jurisdiction test. Accordingly, this action should be dismissed for lack of personal jurisdiction.[3]

### 4. Jurisdictional Discovery Will Not Cure the FAC's Deficiencies

Plaintiffs request jurisdictional discovery, but they notably responded to Suno's motion without first seeking it and expressly admitted that they do not need it. Dkt. 30 at 15–16; Dkt. 31 at 12. In any event, the sole case Plaintiffs cite to support their request affirmed the district court's

---

[3] Plaintiffs mistakenly rely on *Albany Condominium Association v. Republic Services, Inc.*, 2025 WL 2644577 (N.D. Ill. Sep. 15, 2025) (Wood, J.), for the proposition that dismissal or transfer of the "case wholesale" is not appropriate if Suno disputes jurisdiction over "particular non-Illinois plaintiffs or claim permutations." Dkt. 30 at 14–15. *Albany* is inapposite because the defendants there moved to dismiss for lack of personal jurisdiction on only the Texas-based class claims, rather than all claims, in a putative class action of Illinois and Texas customers. 2025 WL 2644577, at *1, *3. As such, this Court dismissed only the Texas claims for lack of personal jurisdiction. *Id.* at *12.

denial of the plaintiff's request for jurisdictional discovery. *See Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 947 (7th Cir. 2000).

Further, Plaintiffs do not make the required *prima facie* showing of personal jurisdiction to warrant jurisdictional discovery. *See id.* at 946. Although courts have discretion to permit limited jurisdictional discovery, "a plaintiff seeking jurisdictional discovery must advance 'proof to a reasonable probability' of the facts necessary to establish federal jurisdiction." *Dixon v. Gatzke*, 790 F. Supp. 3d 679, 698 (N.D. Ill. 2025); *see also N. Tex. Equal Access Fund v. Thomas More Soc'y*, 728 F. Supp. 3d 887, 901 (N.D. Ill. 2024) (requiring plaintiffs to "adequately explain … how taking discovery would aid them in establishing any of the jurisdictional facts"). Plaintiffs have not made the requisite showing, and the FAC's jurisdictional deficiencies are fundamentally matters of law. Critically, the jurisdictional facts that Plaintiffs would seek—subscriber counts, revenue, and session/delivery output logs, Dkt. 30 at 16 n.4—would simply confirm that Suno operates an interactive web service accessible by users nationwide, including in Illinois. Such facts would not fix the fundamental flaw here: Plaintiffs cannot show that Suno intentionally targeted or exploited the Illinois market. *See supra* at 1–5. The Court should deny Plaintiffs' jurisdictional discovery request. *Cf. Siswanto v. Airbus*, 153 F. Supp. 3d 1024, 1032 (N.D. Ill. 2015) (denying jurisdictional discovery because requested categories of evidence "ha[d] already been raised and rejected" and were insufficient grounds for jurisdiction).

**B. Venue Is Improper in This District**

Venue is improper under 28 U.S.C. §§ 1391(b)(1), (3) and 1400(a) because Suno does not reside in Illinois and is not subject to personal jurisdiction in this District. Dkt. 25 at 6–18; *supra* at 1–7. Venue is equally improper under 28 U.S.C. § 1391(b)(2) because no substantial case-related events occurred here. Plaintiffs' allegations regarding commercialization and output

8

delivery provide only a tangential connection to this forum, and are inadequate to support venue here. The development, training, and operation of Suno's model—and the decisions directing those activities—do not take place in this District. Dkt. 25 at 19–20. And it is "not . . . the defendant's contacts with the forum, but the location of the events giving rise to the cause of action" that matter for venue. *John Crane Inc. v. Simon Greenstone Panatier Bartlett, APC*, 2017 WL 1093150, at *13 (N.D. Ill. Mar. 23, 2017).

Plaintiffs' allegations that Illinois users transmit prompts and inputs to Suno and that Suno then delivers outputs to those users in Illinois do not save the day. Dkt. 30 at 18. These allegations merely reframe the insufficient fact that users in Illinois interact with Suno's platform. Dkt. 25 at 19. Such conduct is "tangential" to Plaintiffs' state law claims, which center on Suno's alleged unlawful copying, collection, and commercial use of artists' biometrics, voices, and identities via its AI models. *Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, 80 F. Supp. 3d 870, 880 (N.D. Ill. 2015); *see* Dkt. 25 at 19. Although Plaintiffs attempt to place an Illinois-focused lens on these allegations, they plead no facts tending to show these activities—which ground their claims—took place in Illinois. *See Martino v. Orchard Enters., Inc.*, 2020 WL 6287400, at *1, *6 (N.D. Ill. Oct. 27, 2020). As courts in this District have recognized, such allegations are insufficient for proper venue under Section 1391(b)(2). *See John Crane*, 2017 WL 1093150, at *13 (fact that "some activities giving rise to" claim occurred in-district still insufficient to find venue proper); *Allstate*, 80 F. Supp. 3d at 878–79 ("Illinois events" were "not enough to overcome the strong connection" between the case and alternative proper venue). The Court should do the same here, particularly as Plaintiffs fail to offer any countervailing authority of their own.

Lastly, Plaintiffs' argument that Suno "pretend[s] Plaintiffs rely only on economic harm felt in Illinois" as a basis for venue, Dkt. 30 at 19, is wrong. In fact, Suno addressed Plaintiffs'

9

numerous venue allegations in its Opening Brief, including their economic harm allegations, Dkt. 17 ¶ 47(a34), (a36), (a50), but it never asserted that those allegations were Plaintiffs' sole basis for venue. Dkt. 25 at 18–21.

**C.      Dismissal or Stay is Warranted Pursuant to the First-to-File Rule**

Even setting aside personal jurisdiction and venue, the Court should dismiss or stay this case pursuant to the first-to-file rule because it substantially overlaps with the earlier-filed *Justice* putative class action.

Plaintiffs incorrectly contend that the first-to-file rule requires "precise overlap." Dkt. 30 at 20. That is not the law. "Substantial overlap" is the standard used in this District and across the country. *See Nicholson v. Nationstar Mortg. LLC of Del.*, 2018 WL 3344408, at *5 (N.D. Ill. July 6, 2018) (collecting cases); *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1241 (9th Cir. 2015) ("To determine whether two suits involve substantially similar issues, we look at whether there is 'substantial overlap' between the two suits").

Elsewhere, Plaintiffs suggest that the first-to-file rule requires the parties and issues in either case to be "nearly identical" or that the two cases have "replicated" facts. Dkt. 30 at 21. But that too is not the law. Although Plaintiffs selectively quote from *Research Automation, Inc. v Schrader-Bridgeport International, Inc.*, 626 F.3d 973 (7th Cir. 2010), for the proposition that the two cases must have "replicated" facts, the full context in which the term appears makes clear that replication is not a required standard. *Id.* at 978 ("[W]e have made clear that where the facts of that case are replicated—that is, where the parallel cases involve a declaratory judgment action and a mirror-image action seeking coercive relief—we ordinarily give priority to the coercive

10

action, regardless of which case was filed first.").[4] Plaintiffs' reliance on *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221 (7th Cir. 1993), to suggest that cases must be "nearly identical" is also misplaced, as that phrase does not appear in *Serlin* at all.

Further, Plaintiffs' arguments distinguishing between the parties, proposed classes, claims, and requested relief in the *Justice* case and this case fare no better.

***Parties.*** Plaintiffs argue that "the relevant 'parties' are the named plaintiffs," not absent class members. Dkt. 30 at 22. However, as *Nicholson* held, "the focus of the substantially similar inquiry is on the putative class members rather than the named plaintiffs themselves." 2018 WL 3344408, at *5. Plaintiffs also cite *Smith v. Bayer Corp.*, 564 U.S. 299 (2011), Dkt. 30 at 22, but that case says nothing about the first-to-file rule.

***Proposed Classes.*** Plaintiffs note minimal differences in the proposed classes and subclasses in *Justice* and here. Dkt. 30 at 22–23. But those differences do not defeat substantial overlap, which is present where "the class definitions themselves demonstrate that *at least some* of the same individuals would be included in both." *Nicholson*, 2018 WL 3344408, at *6 (emphasis added). That criterion is met here because both sets of plaintiffs seek to represent putative nationwide classes of musical composition and sound recording rightsholders. *Compare* Dkt. 17 ¶ 124 *with Justice* Am. Compl., ECF No. 27, ¶ 430; Dkt. 25 at 23–24.

***State-Law Claims.*** Plaintiffs assert that the state-law claims meaningfully differ on account of notice, consent, and retention obligations. Dkt. 30 at 24. However, substantial overlap turns on

---

[4] Plaintiffs also rely on *Strategic Lending Solutions LLC v. United Defense Group, LLP*, 2014 WL 5461583, at *8 (N.D. Ill. Oct. 28, 2014), for the same proposition. Dkt. 30 at 20. Although *Strategic Lending* does cite *Research Automation* in saying that "any analysis regarding the first-to-file only applies 'where the facts of the case are replicated,'" 2014 WL 5461583, at *8, the full quote from *Research Automation* indicates that the Seventh Circuit was noting that the facts of the specific case were replicated, not holding that the facts of the earlier-filed case must be replicated.

11

the substance of the claims and whether they depend on the same underlying core factual allegations, not on the specific statutory violations alleged in each case. *See Askin v. Quaker Oats Co.*, 2012 WL 517491, at *4 (N.D. Ill. Feb. 15, 2012); *Nicholson*, 2018 WL 3344408, at *7. Here, both sets of state law claims concern the same alleged exploitation and misappropriation of artists' unique identifiers through its generative AI tool. Dkt. 25 at 22–23.

*Relief.* Plaintiffs incorrectly contend that available relief substantially overlaps only when "the earlier action can provide the relief that would resolve the later dispute." Dkt. 30 at 25. But courts examine the types of relief requested rather than specific theories. *See Askin*, 2012 WL 517491, at *5; Dkt. 25 at 24. Ultimately, Plaintiffs' suggestion for the Court to ignore these similarities, forgo applying the first-to-file rule, and potentially coordinate with the *Justice* litigation, Dkt. 30 at 26, runs counter to the very purpose of the doctrine—the preservation of this Court's scarce time and resources. Dkt. 25 at 21–22.

**D.** **Alternatively, This Case Should Be Transferred to the District of Massachusetts Under 28 U.S.C. § 1404(a)**

**1.** **Private Interest Factors Collectively Favor Transfer**

*Situs of Material Events.* The core of this case is Suno's development, training, and operation of its generative AI models, and the strategic decisions directing those activities. Dkt. 25 at 26. In a nutshell, the critical facts are that Suno—the alleged infringer and wrongdoer—is headquartered in Massachusetts, which is also where the bulk of its leadership and engineering teams are located. *Id.* at 19, 26–28. Courts in this District regularly deem the location where corporate decisions are made, infringing services are developed, and defendant is headquartered as the situs of material events. *See Brownell v. Alcon Ent., LLC*, 2017 WL 11884028, at *2–4 (N.D. Ill. Dec. 19, 2017) (Wood, J.); *Bureau of Cons. Fin. Prot. v. Fifth Third Bank*, N.A., 2021 WL

534658, at *2 (N.D. Ill. Feb. 12, 2021) (Wood, J.); *Ill. Comput. Rsch., LLC v. Harpercollins Publishers, Inc.*, 2010 WL 4877501, at *2 (N.D. Ill. Nov. 22, 2010).

*Evidence.* Plaintiffs assert that the evidence in this case is overwhelmingly digital and criticize Suno for not presenting a sworn declaration explaining what evidence "is meaningfully location-bound." Dkt. 30 at 28. The law does not require Suno to do so. *See Anchor Wall Sys., Inc. v. R & D Concrete Prods., Inc.*, 55 F. Supp. 2d 871, 875 (N.D. Ill. 1999) (granting transfer to the District housing defendant's principal place of business where the sources of proof were primarily located, without considering additional offers of proof or affidavits).[5] And "where the defendant's documents are kept weigh in favor of transfer" in infringement cases. *UMG Recordings, Inc. v. Archive*, 2023 WL 8520587, at *2 (S.D.N.Y. Dec. 8, 2023). Even if most of the discoverable evidence was electronic, this factor still supports transfer because the remaining relevant evidence concerning Suno's AI models would be in Suno's possession, likely in Massachusetts, where its principal place of business is located. Dkt. 25 at 19, 27–28; *see Shenzhen*, 2024 WL 2845974, at *7 (this factor favored transfer because although most evidence was likely electronically available, any evidence in the defendant's possession was likely to be located in the district where defendant was located); *Archive*, 2023 WL 8520587, at *2.

*Witnesses.* Plaintiffs attack Suno's identification of party witnesses, yet decline to offer any non-party or party witnesses to which the Court could give countervailing weight. Dkt. 30 at 29. Importantly, as this Court has made clear, "party witnesses are still relevant," especially where

---

[5] Plaintiffs also suggest that Suno needed to submit sworn evidence to support its "Massachusetts-only situs narrative," arguing that Suno's representations in briefs are inadequate. Dkt. 30 at 28 n.6. Again, Plaintiffs' arguments lack any relevant legal basis, and their cited cases do not support that argument. *See IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606, 610–11 (7th Cir. 2006) (court did not state that a defendant must submit a sworn declaration to prevail on a motion to transfer or any motion, and case did not involve a motion to transfer); *United States ex rel. Feingold v. AdminaStar Fed., Inc.*, 324 F.3d 492, 494 (7th Cir. 2003) (same).

the "testimony of senior management will likely be an important part of litigation." *Bureau of Cons.*, 2021 WL 534658, at *3. That is the case here. Dkt. 25 at 27–28. And contrary to Plaintiffs' assertion, Suno identified such witnesses by name, described their general testimony, and explained why the District of Massachusetts is a more convenient forum for them. *See id.*

***Forum Choice.*** Plaintiffs argue that their forum choice "deserves real weight" because this forum has "meaningful ties to the dispute." Dkt. 30 at 29. However, the material events occurred in or were directed from Massachusetts. Dkt. 25 at 16–17, 19–20, 29; *see supra* at 7. Plaintiffs' forum choice thus is entitled to minimal deference, as Massachusetts has a "stronger relationship to the dispute" and Illinois "has no significant connection to the situs of material events." *George & Co. LLC v. Target Corp.*, 2021 WL 2948910, at *2 (N.D. Ill. July 14, 2021).[6] Moreover, "when an individual … represents a class, the named plaintiff's choice of forum is given less weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *see* Dkt. 25 at 29.

### 2. Public Interest Factors All Favor Transfer

***Related Litigation.*** Plaintiffs erroneously argue that Suno's "related litigation pitch" is inadequate because the *Justice* case does not replicate this case. Dkt. 30 at 30. But as noted above, such replication is not required. *See supra* at 10. In any event, the *Justice* case and this case substantially overlap. *See supra* at 10–12; Dkt. 25 at 4–6, 29–30. Nor should the Court consider Plaintiffs' unsupported suggestion to use "coordination tools" rather than transfer this case if "there is a discrete overlap." Dkt. 30 at 30. Coordination tools fail to resolve the issue that having two courts decide discovery disputes, class certification, and other case-management tasks would be duplicative and invite the risk of inconsistent rulings. Dkt. 25 at 21–22, 29–30. And Plaintiffs'

---

[6] Plaintiffs inexplicably cite *In re National Presto Industries, Inc.*, 347 F.3d 662 (7th Cir. 2003), for their argument that their forum choice deserves weight where the forum has meaningful ties to the dispute. Dkt. 30 at 29. But that case says nothing of the sort.

14

suggestion ignores that the "trend among Courts in this District is to grant transfer motions under the key geographic factors present here: the defendant is located in the transferee district, two similar class actions are pending in different federal districts and one of the class actions is pending in the transferee district." *Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1063 (N.D. Ill. 2015). There is no reason to chart a different course here.

**Docket Statistics.** Median time to trial is significantly shorter in the District of Massachusetts. Dkt. 25 at 30.

**Familiarity with the Law.** Plaintiffs do not engage with Suno's argument that the *UMG* and *Justice* litigations push this factor in favor of transfer. Dkt. 25 at 30. While both this District and the District of Massachusetts are equally equipped to hear Plaintiffs' federal and state-law claims, Judge Saylor's familiarity with the specific facts and issues arising from Suno's generative AI model—developed through presiding over both the *UMG* and *Justice* litigations—support transfer. *Id.* at 25; *see Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 917 (N.D. Ill. 2009) (noting that judge overseeing the earlier-filed action was more familiar with underlying facts).

**State Interest.** Because the putative class is national, there is no "compelling community interest that would be preserved by the selection of one venue over another," including Illinois. *George*, 2021 WL 2948910, at *6. Massachusetts has a greater interest due to the ongoing *Justice* and *UMG* cases in that District, and the location of Suno's headquarters there. *See* Dkt. 25 at 30.

### III.   CONCLUSION

Suno respectfully requests that the Court dismiss or stay this case or, in the alternative, transfer the case to the District of Massachusetts.

Date: March 3, 2026

Respectfully submitted,

 /s/   Gary Feinerman

Gary Feinerman (ARDC No. 6206906)
**LATHAM & WATKINS LLP**
330 N. Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
Email: gary.feinerman@lw.com

Andrew M. Gass (*pro hac vice*)
Brittany N. Lovejoy (*pro hac vice*)
Joseph R. Wetzel (*pro hac vice*)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: andrew.gass@lw.com
Email: britt.lovejoy@lw.com
Email: joe.wetzel@lw.com

*Attorneys for Defendant Suno, Inc.*

16

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 3, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF System, which shall send notification of such filing to all counsel of record.

/s/   Gary Feinerman
Gary Feinerman

17